## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| DEBORAH WEST, on behalf of herself and those similarly situated,<br><br>    Plaintiff,<br><br>vs.<br><br><br>BAM! PIZZA MANAGEMENT, INC.; BRIAN BAILEY; DOE CORPORATION 1-10; and JOHN DOE 1-10,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. _____
JURY DEMANDED
CLASS ACTION

### CLASS AND COLLECTIVE ACTION COMPLAINT

1.      Deborah West, on behalf of herself and similarly-situated individuals, bring this action against Defendants Bam! Pizza Management, Inc.; Brian Bailey; Doe Corporation 1-10; and John Doe 1-10 ("Defendants"). Plaintiff seeks appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiff and similarly-situated individuals with minimum wages as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., New Mexico Minimum Wage Act ("NMMWA"), N.M. Stat. Ann. § 50-4-21, *et. Seq,* and unjust enrichment.

2.      Defendants own multiple Domino's stores located in New Mexico, Texas, and Colorado ("Defendants' Domino's stores").

3.      Plaintiffs seek to represent the delivery drivers who have worked at the Defendants' Domino's stores.

4.      Defendants repeatedly and willfully violated the Fair Labor Standards Act and NMMWA by failing to adequately reimburse delivery drivers for their delivery-related expenses, thereby failing to pay delivery drivers the legally mandated minimum wages for all hours worked.

5.      All delivery drivers at the Defendants' Domino's stores, including Plaintiff, have been subject to the same or similar employment policies and practices with respect to wages and reimbursement for expenses.

6.      Plaintiff brings this action on behalf of herself and similarly situated current and former delivery drivers nationwide who elect to opt in pursuant to FLSA, 29 U.S.C. § 216(b) to remedy violations of the FLSA by Defendants.

7.      Plaintiff also brings this action on behalf of herself and similarly situated current and former delivery drivers in New Mexico, pursuant to Federal Rule of Civil Procedure 23, to remedy violations of the NMMWA, and for unjust enrichment.

8.      Defendants have been unjustly enriched by their delivery drivers when the delivery drivers use their personal vehicles for the benefit of Defendants.

### JURISDICTION AND VENUE

9.      Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims.

10.      Venue in this Court is proper under 28 U.S.C. § 1391(b) because Defendants reside in this district, and a substantial part of the events giving rise to the claim herein occurred in this district.

### PARTIES

### Plaintiffs
### Deborah West

11.      Plaintiff Deborah West is a resident of New Mexico.

12.      Plaintiff is an "employee" of the Defendants as defined in the FLSA and NMMWA.

13.      Plaintiff has given written consent to join this action.

### Defendants
### Bam! Pizza Management, Inc.

14.      Defendant Bam! Pizza Management, Inc. is a domestic corporation with its principal place of business at 1114 S. Union Ave, Roswell, NM 88203.

15.    Bam! Pizza Management, Inc. is the entity that operates the Defendants' Domino's stores.

16.    Upon information and belief, Bam! Pizza Management, Inc. owns over 100 stores in New Mexico, Texas, and Colorado.

17.    Bam! Pizza Management, Inc. is the entity that appeared on Plaintiff's paystubs for work she completed for Defendants' Domino's stores.

18.    Bam! Pizza Management, Inc. has or had substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

19.    Bam! Pizza Management, Inc. has or had direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

20.    At all relevant times, Bam! Pizza Management, Inc. maintains or maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

21.    Bam! Pizza Management, Inc. is or was an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

22.    At all relevant times, Bam! Pizza Management, Inc. has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

23.    Bam! Pizza Management, Inc.'s gross revenue exceeds $500,000 per year.

**Brian Bailey**

24.    Defendant Brian Bailey is the owner of Bam! Pizza Management, Inc. and the Defendants' Domino's stores.

25.    Brian Bailey is the President of Bam! Pizza Management, Inc.

26.    Brian Bailey operates over 100 stores in Texas, New Mexico, and Colorado.

3

27.    Brian Bailey is individually liable to the delivery drivers at the Defendants' Domino's stores under the definitions of "employer" set forth in the FLSA because he owns and operates the Defendants' Domino's stores, serves as a president and owner of Bam! Pizza Management, Inc., ultimately controls significant aspects of the Defendants' Domino's stores' day-to-day functions, and ultimately controls compensation and reimbursement of employees. 29 U.S.C. § 203(d).

28.    Brian Bailey is the franchisee of the Defendants' Domino's stores.

29.    At all relevant times, by virtue of his role as owner and president of the Defendants' Domino's stores, Brian Bailey has had financial control over the operations at each of the Defendants' Domino's stores.

30.    At all relevant times, by virtue of his role as owner and president of the Defendants' Domino's stores, Brian Bailey has a role in significant aspects of the Defendants' Domino's stores' day to day operations.

31.    At all relevant times, by virtue of his role as owner and president of the Defendants' Domino's stores, Brian Bailey has had control over the Defendants' Domino's stores' pay policies.

32.    At all relevant times, by virtue of his role as owner and president of the Defendants' Domino's stores, Brian Bailey has had power over personnel and payroll decisions at the Defendants' Domino's stores, including but not limited to influence of delivery driver pay.

33.    At all relevant times, by virtue of his role as owner and president of the Defendants' Domino's stores, Brian Bailey has had the power to hire, fire and discipline employees, including delivery drivers at the Defendants' Domino's stores.

34.    At all relevant times, by virtue of his role as owner and president of the Defendants' Domino's stores, Brian Bailey has had the power to stop any illegal pay practices that harmed delivery drivers at the Defendants' Domino's stores.

35.    At all relevant times, by virtue of his role as owner and president of the Defendants' Domino's stores, Brian Bailey has had the power to transfer the assets and liabilities of the Defendant entities.

36.    At all relevant times, by virtue of his role as owner and president of the Defendants' Domino's stores, Brian Bailey has had the power to declare bankruptcy on behalf of the Defendant entities.

37.    At all relevant times, by virtue of his role as owner and president of the Defendants' Domino's stores, Brian Bailey has had the power to enter into contracts on behalf of each of the Defendants' Domino's stores.

38.    At all relevant times, by virtue of his role as owner and president of the Defendants' Domino's stores, Brian Bailey has had the power to close, shut down, and/or sell each of the Defendants' Domino's stores.

39.    At all relevant times, by virtue of his role as owner and president of the Defendants' Domino's stores, Brian Bailey had authority over the overall direction of each of Defendants' Domino's stores and was ultimately responsible for their operations.

40.    The Defendants' Domino's stores function for Brian Bailey's profit. Brian Bailey had influence over how the Defendants' Domino's stores can run more profitably and efficiently.

**Doe Corporation 1-10**

41.    Upon information and belief, Defendants own, operate, and control other entities and/or corporations that also comprise part of the Defendants' Domino's stores, and qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Domino's stores as that term is defined by the FLSA.

42.    Upon information and belief, Brian Bailey owns and/or operates, in whole or in part, a number of other entities that make up part of the Defendants' Domino's stores operation.

43.    The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**John Doe 1-10**

44.     Upon information and belief, there are additional individuals who also qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Domino's stores as that term is defined by the FLSA.

45.     Upon information and belief, Brian Bailey has entered into co-owner relationships with a number of his managers and business partners, and those individuals might also qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Domino's stores as that term is defined by the FLSA.

46.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

FACTS

**Class-wide Factual Allegations**

47.     During all relevant times, Defendants have operated the Defendants' Domino's stores.

48.     Plaintiff, and the similarly situated persons Plaintiff seek to represent, are current and former delivery drivers at the Defendants' Domino's stores.

49.     All delivery drivers employed at the Defendants' Domino's stores over the last three years have had essentially the same job duties.

50.     When there are no deliveries to make, Defendants' delivery drivers are required to work inside the Defendants' Domino's stores cleaning up dishes, sweeping, making boxes, filling the ice container, and completing other duties inside the restaurant, as necessary.

51.     Plaintiffs and similarly situated delivery drivers have been paid minimum wage minus a tip credit for the hours they worked on the road for Defendants' Domino's stores.

52.     The job duties performed by delivery drivers inside the store are not related to their tip-producing duties while they are out on the road making deliveries.

53.     Delivery drivers do not complete their inside job duties contemporaneously with their delivery job duties.

54.     The delivery drivers at the Defendants' Domino's stores work "dual jobs."

55.     Defendants require delivery drivers at Defendants' Domino's stores to provide cars to use while completing deliveries for Defendants.

56.     Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

57.     Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing charges, licensing and registration costs, cell phone costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties.

58.     Pursuant to such requirements, Plaintiff and other similarly situated employees purchase gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, financing, licensing, and registration charges, and incur cell phone and data charges all for the primary benefit of Defendants.

59.     Defendants require delivery drivers at Defendants' Domino's stores to provide cell phones to use while completing deliveries for Defendants.

60.     Defendants require delivery drivers to maintain and pay for operable cell phones to use in delivering Defendants' pizza and other food items.

61.     The Defendants' Domino's stores do not reimburse the delivery drivers' cell phone expenses.

62.     The Defendants' Domino's stores do not track or record the delivery drivers' cell phone expenses.

63.     The Defendants' Domino's stores reimburse their delivery drivers based on a flat rate per delivery.

64.     Defendants' reimbursement payments have no connection to the actual expenses incurred by the delivery drivers.

65.     The Defendants' Domino's stores do not track or record the delivery drivers' actual expenses.

66.     The Defendants' Domino's stores do not collect receipts from their delivery drivers related to the expenses they incur while completing deliveries.

67.     The Defendants' Domino's stores do not reimburse their delivery drivers based on the actual expenses the delivery drivers incur.

68.     The Defendants' Domino's stores do not reimburse their delivery drivers for the actual expenses the delivery drivers incur.

69.     The Defendants' Domino's stores do not reimburse their delivery drivers at the IRS standard business mileage rate.

70.     The Defendants' Domino's stores did not reasonably approximate the delivery drivers' expenses.

71.     Plaintiff and similarly situated delivery drivers typically average 4-5 miles per round-trip delivery.

72.     The Defendants' Domino's stores' reimbursement payments result in reimbursements that are less than the IRS standard business mileage rate for each mile driven.

73.     According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

    a.  2019: 58 cents/mile
    b.  2020: 57.5 cents/mile
    c.  2021: 56 cents/mile
    d.  2022: 58.5 cents/mile

74.     The delivery drivers at the Defendants' Domino's stores have incurred even more in expenses than those contemplated by the IRS standard business mileage rate—*e.g.*, cell phone and data charges.

75.     The delivery drivers at Defendants' Domino's stores advance business expenses, interest free, to Defendants when they provide cars to use at work.

76.     Defendants benefit from the delivery drivers spending time off the clock repairing and maintaining their vehicles.

77.     Defendants benefit from the delivery drivers storing their vehicles when they are not being used to complete deliveries for Defendants.

78.     Defendants benefit from delivery drivers taking on the risk of using their vehicles to drive for Defendants' business.

79.     As a result of the automobile and other job-related expenses incurred by Plaintiff and other similarly situated delivery drivers, they were deprived of minimum wages guaranteed to them by the FLSA and New Mexico law.

80.     Defendants have applied the same or similar pay policies, practices, and procedures to all delivery drivers at the Defendants' Domino's stores.

81.     Because Defendants paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. *See* 29 C.F.R. § 531.35.

82.     Defendants have failed to properly take a tip credit from Plaintiff's wages and the wages of similarly situated employees because, after accounting for unreimbursed expenses, Defendants have paid delivery drivers a lower wage rate than they informed the delivery drivers they would be paid.

83.     Defendants have also failed to properly inform Plaintiff and similarly situated delivery drivers of the requirements for taking a tip credit. 29 C.F.R.§ 531.59.

84.     Defendants have willfully failed to pay federal and New Mexico state minimum wage to Plaintiff and similarly situated delivery drivers at the Defendants' Domino's stores, have taken unauthorized deductions from the delivery drivers' wages, have failed to pay the delivery drivers all wages due, and have been unjustly enriched by the delivery drivers' incurring automobile expenses for their benefit.

85.    Defendants have received a benefit by virtue of the delivery drivers using their own cars to complete deliveries – they do not have to incur the expense themselves.

86.    The delivery drivers have provided a benefit to Defendants in the form of saved automobile costs.

87.    It is unjust for Defendants to retain the benefit conferred on them by their delivery drivers by reimbursing only a portion of the business-related costs incurred by the delivery drivers.

**Plaintiff's Individual Factual Allegations**

88.    Plaintiff worked at the Domino's store located on W. Main Street in Farmington, New Mexico from 2019 to 2020 and then approximately July 2021 through February 2022.

89.    Plaintiff was paid minimum wage minus a tip credit for all hours worked while delivering.

90.    When Plaintiff was not delivering food, she worked inside the restaurant. Her work inside the restaurant includes stocking coolers, sweeping, and completing other duties inside the restaurant as necessary.

91.    Plaintiff worked dual jobs.

92.    Plaintiff's inside duties were not related to her delivery duties.

93.    Plaintiff was paid minimum wage for the hours she worked inside the store.

94.    Plaintiff was required to use her own car to deliver pizzas.

95.    Plaintiff was required to use her own cell phone when delivering pizzas.

96.    Plaintiff was reimbursed $1.00 per delivery.

97.    At the end of Plaintiff's employment, she was making $1.20 per delivery.

98.    Defendants' reimbursement policy results in Plaintiff usually receiving approximately $.267 per mile, on average.

99.    Plaintiff was required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

100.    Plaintiff was required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cell phone service, GPS service, automobile financing, licensing and registration costs, and other equipment necessary for delivery drivers to complete their job duties.

101.    Plaintiff has purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, automobile financing, licensing and registration costs, and incur cell phone and data charges all for the primary benefit of Defendants.

102.    Defendants did not track the actual expenses incurred by Plaintiff.

103.    Defendants did not ask Plaintiff to provide receipts of the expenses she incurred while delivering pizzas for Defendants.

104.    Defendants did not reimburse Plaintiff based on her actual delivery-related expenses.

105.    Plaintiff was not reimbursed at the IRS standard mileage rate for the miles she drove while completing deliveries.

106.    Defendants did not reimburse Plaintiff based on a reasonable approximation of her expenses.

107.    In 2021, for example, the IRS business mileage reimbursement has been $.56 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. At the IRS standard business mileage reimbursement rate, Defendants' policy under-reimbursed Plaintiff by $.293 per mile ($.56 - $.267). Considering Plaintiff's estimate of 4.5 miles per delivery, Defendants under-reimbursed her $1.32 per delivery ($.393 x 4.5 miles), and $3.30 per hour (2.5 deliveries per hour).

108.    Defendants failed to properly inform Plaintiff of the requirements for taking a tip credit.

109.     Defendants failed to properly take a tip credit from Plaintiff's wages because, after accounting for unreimbursed expenses, Defendants took more of a tip credit than they informed Plaintiff they would be taking.

110.     Defendants failed to pay Plaintiff minimum wage as required by law.

111.     Defendants engaged in a continuing course of conduct in failing to pay minimum wage as required by law.

### Collective Action Allegations

112.     Plaintiff brings the First Count on behalf of herself and all similarly situated current and former delivery drivers employed at the Defendants' Domino's stores owned, operated, and controlled by Defendants nationwide, during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

113.     At all relevant times, Plaintiff and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiff and the FLSA Collective minimum wage for all hours worked and failing to reimburse delivery drivers for automobile expenses and other job-related expenses. Plaintiff's claims are essentially the same as those of the FLSA Collective.

114.     Defendants' unlawful conduct is pursuant to a company policy or practice.

115.     Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked and to fully reimburse for "tools of the trade."

116.     Defendants are aware or should have been aware that they are not permitted to pay employees a tipped wage rate for hours worked in a non-tipped capacity.

117.     Defendants are aware or should have been aware that they were obligated to actually pay the tipped wage rate that they informed Plaintiff and other delivery drivers that they would pay.

118.    Defendants are aware or should have been aware that federal law requires them to meet certain requirements for taking a tip credit from the wages of their employees.

119.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

120.    The First Count is properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

121.    The FLSA Collective members are readily identifiable and ascertainable.

122.    In recognition of the services Plaintiff have rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

### Class Action Allegations

123.    Plaintiff brings the Second Count under Federal Rule of Civil Procedure 23, on behalf of herself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants at the Defendants' Domino's stores in the State of New Mexico between the date Defendants Domino's stores began operation to the date of final judgment in this matter ("New Mexico Wage Class").

124.    Plaintiff brings the Third Count under Federal Rule of Civil Procedure 23, on behalf of herself and a class of persons consisting of:

> All current and former delivery drivers employed at the Defendants' Domino's stores owned, operated, and controlled by Defendants in New Mexico, between the date four years prior to the filing of the original complaint and the date of final judgment in this matter (the "New Mexico Unjust Enrichment Class")(together with the New Mexico Wage Class, the "Rule 23 Classes")

125.    Excluded from the Rule 23 Classes are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Classes.

126.    The number and identity of the Rule 23 Classes are ascertainable from Defendants' records.

127.    The hours assigned and worked, the positions held, deliveries completed, and the rates of pay and reimbursements paid for each Rule 23 Class Member are determinable from Defendants' records.

128.    All of the records relevant to the claims of Rule 23 Class Members should be found in Defendants' records.

129.    For the purpose of notice and other purposes related to this action, their names and contact information are readily available from Defendants.

130.    Notice can be provided by means permissible under Rule 23.

131.    The New Mexico Wage Class member are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

132.    There are more than 50 Rule 23 Class Members in both the New Mexico Wage Class and New Mexico Unjust Enrichment Class.

133.    Plaintiff's claims are typical of those claims which could be alleged by any member of the Rule 23 Classes, and the relief sought is typical of the relief which would be sought by each member of the Rule 23 Classes in separate actions.

134.    Plaintiff and the members in the Rule 23 Classes are subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage and failing to reimburse for expenses.

135.    Plaintiff and the members in the Rule 23 Classes sustain similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

136.    Plaintiff is able to fairly and adequately protect the interests of the Rule 23 Classes and has no interests antagonistic to the members in the Rule 23 Classes.

137.    Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

138.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

139.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

140.    Common questions of law and fact exist as to the New Mexico Wage Class that predominate over any questions only affecting Plaintiff and the New Mexico Wage Class members individually and include, but are not limited to:

a.  Whether Plaintiff and the New Mexico Wage Class members are subject to a common expense reimbursement policy that result in wages to drop below legally allowable minimum wage;

b.  Whether Plaintiff and the New Mexico Wage Class are subject to a policy that require them to maintain and pay for safe, operable, and legally compliant automobiles to use in completing deliveries;

c.  Whether Plaintiff and the New Mexico Wage Class incur expenses for the benefit of Defendants in the course of completing deliveries;

d.  Whether Defendants reimburse Plaintiff and the New Mexico Wage Class members for their actual expenses;

e.  Whether Defendants reimburse Plaintiff and the New Mexico Wage Class members at the IRS standard business mileage rate for the miles they drove in making deliveries;

f.  Whether Defendants reimburse Plaintiff and the New Mexico Wage Class members based on a reasonable approximation of the expenses they incurred;

g. Whether Defendants properly reimburse Plaintiff and the New Mexico Wage Class members;

h. Whether Defendants engaged in a continuing course of conduct with regard to their pay and reimbursement practices.

i. Whether Plaintiff and the New Mexico Wage Class were properly informed of the requirements for taking a tip credit;

j. Whether Plaintiff and the New Mexico Wage Class are actually paid the wage rate they were promised by Defendants;

k. Whether Defendants engaged in a continuing course of conduct under N.M. Stat. Ann. § 50-4-32.

l. The nature and extent of class-wide injury and the measure of damages for those injuries.

141. Common questions of law and fact exist as to the New Mexico Unjust Enrichment Class that predominate over any questions only affecting Plaintiff and the New Mexico Unjust Enrichment Class members individually and include, but are not limited to:

a. Whether Plaintiff and the New Mexico Unjust Enrichment Class members were subject to a common policy that required them to provide cars to complete deliveries for Defendants;

b. Whether Plaintiff and the New Mexico Unjust Enrichment Class members were subject to a common automobile expense reimbursement policy;

c. Whether Plaintiff and the New Mexico Unjust Enrichment Class members were subject to a common policy that required them to provide cellphones to use when completing deliveries for Defendants;

d. Whether Plaintiff and the New Mexico Unjust Enrichment Class members were subject to a common cellphone expense reimbursement policy;

e. Whether Plaintiff and the New Mexico Unjust Enrichment Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

f.  Whether Defendants avoided business expenses they would have otherwise been required to cover but for Plaintiff and the New Mexico Unjust Enrichment Class providing cars and cellphones to use to make deliveries;

g.  How much it would have cost Defendants to operate their business but for Plaintiff and the New Mexico Unjust Enrichment Class providing cars and cellphones to use to make deliveries;

h.  Whether Plaintiff and the New Mexico Unjust Enrichment Class conferred a benefit on Defendants that Defendants were aware of;

i.  Whether Defendants accepted the benefits conferred on them by Plaintiff and the New Mexico Unjust Enrichment Class;

j.  Whether it would be unjust for Defendants to retain the benefit conferred on them by Plaintiff and the New Mexico Unjust Enrichment Class without compensating for it;

k.  The nature and extent of class-wide injury and the measure of damages for those injuries.

142.    In recognition of the services Plaintiff have rendered and will continue to render to the Rule 23 Classes, Plaintiff will request payment of a service award upon resolution of this action.

### CAUSES OF ACTION

### Count 1:  Failure to Pay Minimum Wages - Fair Labor Standards Act
### (On Behalf of Plaintiff and the FLSA Collective)

143.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

144.    Plaintiff and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

145.    Defendants failed to properly claim a tip credit from the wages of Plaintiff and the FLSA collective because Plaintiff and the FLSA collective were paid a wage rate lower than Defendants informed them that they would be paid.

146.    Defendants paid Plaintiff and the FLSA Collective at or close to minimum wage for all hours worked.

147.    Defendants required and continue to require Plaintiff and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket and failed to properly reimburse Plaintiff and the FLSA Collective for said expenses.

148.    Defendants required and continue to require Plaintiff and the FLSA Collective to work in a non-tipped capacity while being paid a tipped wage rate.

149.    By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

150.    Plaintiffs and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

151.    As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

### Count 2:  Failure to Pay Minimum Wages - §50-4-21, *et seq.* (On Behalf of Plaintiff and the New Mexico Wage Class)

152.    Plaintiff restates and incorporates the following allegations as if fully rewritten herein.

153.    Each Defendant has at all times been an "employer" of Plaintiff and the New Mexico Wage Class members within the meaning of the New Mexico minimum wage law. §50-4-21, *et seq*.

154.    Defendants failed to pay Plaintiff and the New Mexico Wage Class members all minimum wages owed.

155.    Defendants took unauthorized deductions from the wages of Plaintiff and the delivery drivers.

156.    Defendants conduct and practices, as described herein, were willful and intentional.

18

157.    Defendants conduct and practices, as described herein, constitute a continuing course of conduct.

158.    By reason of the unlawful acts alleged herein, Defendants are liable to Plaintiff, and the New Mexico Wage Class members for unpaid wages, liquidated damages, costs, reasonable attorneys' fees, and pre-judgment interest for all violations which occurred between the date Defendants stores began operation to the date of final judgment in this matter.

## Count 3:  Unjust Enrichment
### (On Behalf of Plaintiff and the New Mexico Unjust Enrichment Class)

159.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

160.    The delivery drivers have conferred a benefit on Defendants by using their own cars to work for Defendants.

161.    Defendants are aware of and have accepted the benefit conferred on them by delivery drives.

162.    It would be unjust for Defendants to be permitted to retain the benefit conferred on them by the delivery drivers without commensurate compensation.

163.    Plaintiff and the delivery drivers are entitled to equitable restitution of all unreimbursed expenses, unauthorized deductions, and unpaid wages.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Deborah West prays for all of the following relief:

A.    Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and their counsel to represent the collective action members.

B.    Unpaid minimum wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

C.      Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and New Mexico state law.

D.      Designation of Plaintiff as representative of the New Mexico Wage Class, New Mexico Unjust Enrichment Class, and counsel of record as Class Counsel.

E.      Declaratory judgment that the practices complained of herein are unlawful under the New Mexico Minimum Wage Act.

F.      An award of unpaid minimum wages and unreimbursed expenses due under the FLSA and New Mexico wage laws.

G.      An award of restitution for unjust enrichment.

H.      Liquidated damages under the FLSA.

I.      An award of prejudgment and post-judgment interest.

J.      An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

K.      Such other legal and equitable relief as the Court deems appropriate.

### DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

### CERTIFICATION REGARDING NON-MEMBER COUNSEL

Christopher M. Moody (Bar No. 1850), being a member of the bar of this Court, pursuant to D.N.M. LR-Civ. 83.3 certifies that non-member counsel Andrew R. Biller (Ohio Bar No. 0081452; Pennsylvania Bar No. 200794), Andrew P. Kimble (Ohio Bar No. 0093172) and Emily Hubbard (Ohio Bar No. 0096032; Kentucky Bar No. 97494) are members in good standing of the State Bars of Ohio, Pennsylvania and Kentucky, respectively, and that the requisite fees provided for in the above rule are being tendered to the Clerk of the Court concurrently herewith.

Respectfully submitted,

**MOODY & STANFORD, P.C.**

By: _/s/ Christopher Moody 2022.03.21_____
Christopher Moody (Bar # 1850)
4169 Montgomery Blvd., NE
Albuquerque, NM 87109
505-944-0033 (Phone)
505-944-0034 (Fax)
*moody@nmlaborlaw.com*

and

**BILLER & KIMBLE, LLC**
Andrew R. Biller *(Pro Hac Vice forthcoming)*
Andrew P. Kimble *(Pro Hac Vice forthcoming)*
Emily Hubbard *(Pro Hac Vice forthcoming)*
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
513-202-0710 (Phone)
614-340-4620 (Fax)
*abiller@billerkimble.com*
*akimble@billerkimble.com*
*ehubbard@billerkimble.com*
www.billerkimble.com

*Counsel for Plaintiff and the putative class*