IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| DEBORAH WEST, on behalf of herself<br>and those similarly situated,<br><br>   Plaintiff,<br><br>vs.<br><br><br>BAM! PIZZA MANAGEMENT, INC.; BRIAN BAILEY;<br>DOE CORPORATION 1-10; and JOHN DOE 1-10,<br><br>   Defendants. | Case No. **1:22-CV-00209**-LF-JHR<br>JURY DEMANDED<br>CLASS ACTION |

**MOTION FOR CONDITIONAL CERTIFICATION OF FLSA COLLECTIVE ACTION**

Pursuant to 29 U.S.C. § 216(b), Plaintiff Deborah West hereby moves this Court for an Order conditionally certifying this case as an FLSA collective action and authorizing her to send notice of the pendency of this action to her similarly situated co-workers. Specifically, Plaintiff seeks conditional certification of the following employees:

> All current and former delivery drivers employed at Defendants' Domino's stores between the date three years prior to filing of the original complaint and the date of the Court's Order approving notice.

The arguments in support of Plaintiff's Motion are more fully set forth in the attached memorandum.

                                                                  Respectfully submitted,

                                                                   MOODY & STANFORD, P.C.

                                                                   By: */s/ Christopher Moody 2022.03.22*
                                                                   Christopher Moody (Bar # 1850)
                                                                   4169 Montgomery Blvd., NE
                                                                   Albuquerque, NM 87109
                                                                   505-944-0033 (Phone)
                                                                   505-944-0034 (Fax)
                                                                   *moody@nmlaborlaw.com*

                                                                   and

**BILLER & KIMBLE, LLC**
Andrew R. Biller *(Pro Hac Vice forthcoming)*
Andrew P. Kimble *(Pro Hac Vice forthcoming)*
Emily Hubbard *(Pro Hac Vice forthcoming)*
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
513-202-0710 (Phone)
614-340-4620 (Fax)
*abiller@billerkimble.com*
*akimble@billerkimble.com*
*ehubbard@billerkimble.com*
[www.billerkimble.com](www.billerkimble.com)

*Counsel for Plaintiff and the putative class*

**Memorandum in Support of
Motion for Conditional Certification of FLSA Collective Action**

1. **Introduction**

This is a wage and hour lawsuit filed on behalf of pizza delivery drivers who work at Defendants' Domino's Pizza franchise stores. Plaintiff Deborah West alleges that Defendants' pizza delivery drivers are all employed according to the same terms: they receive minimum wage minus a tip credit for all hours worked while completing deliveries, they drive their own cars to deliver Defendants' pizzas, and they are not properly reimbursed for their delivery related expenses. Plaintiff claims that these employment terms result in a violation of the Fair Labor Standards Act. *See, e.g., Waters v. Pizza to You, L.L.C.*, No. 3:19-cv-372, 2021 WL 1839974, 2021 U.S. Dist. LEXIS 87604, at *28 (S.D. Ohio May 7, 2021); (granting summary judgment to delivery drivers raising the same claims at issue here); *Hatmaker v. PJ Ohio, LLC*, No. 3:17-cv-146, 2019 WL 5725043, 2019 U.S. Dist. LEXIS 191790, at *22 (S.D. Ohio Nov. 5, 2019) (same). Plaintiff asks the Court to conditionally certify this case as an FLSA collective action, and to authorize notice of this lawsuit be sent to all similarly situated delivery drivers who have worked at Defendants' stores.

2. **Factual and Legal Background**

To operate its pizza delivery business, Defendants need automobiles to deliver their pizzas. Instead of maintaining a fleet of cars themselves, Defendants require their minimum-wage delivery drivers to supply safe, functioning, insured cars to use at work.

Under the FLSA, the delivery drivers' cars and associated expenses are considered "tools of the trade". *Waters*, 2021 WL 1839974, 2021 U.S. Dist. LEXIS 87604, at *13. Employers cannot require employees to supply "tools of the trade" to be used at work when the cost of such tools drops the employees' wages below minimum wage. The Code of Federal Regulations explains:

> Whether in cash or in facilities, "wages" cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or "free and clear." The wage requirements of the Act will not be

> met where the employee "kicks-back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee. This is true whether the "kick-back" is made in cash or in other than cash. For example, if it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act. See also in this connection, § 531.32(c).

29 C.F.R. § 531.35.

Typically, under the FLSA, employers are required to reimburse for "tools of the trade" down to the penny and keep records of those expenses and reimbursement payments. "As a general principle, employers are not permitted to 'guess' or 'approximate' a minimum wage employee's expenses for purposes of reimbursing the expenses." *Waters*, 2021 WL 1839974, 2021 U.S. Dist. LEXIS 87604, at *6. "This would result in some employees receiving less than minimum wage, contrary to the FLSA mandate. Instead, as a general proposition, the FLSA requires employers to pay back the actual expenses incurred by the employees." *Id*. at *5–6.

"In the pizza delivery context, however, determining and maintaining records of each employee's actual expenses is a cumbersome task for the employer." *Id*. at *6. As a result, instead of requiring traditional compliance, the Department of Labor Field Operations Handbook explains that employers employing minimum wage delivery drivers have an alternative. "[E]ither (1) keep records of actual expenses and reimburse for them or (2) reimburse drivers at the IRS standard business mileage rate." *Id*. at *6. This standard achieves the purposes of the FLSA by providing employers and employees with clear rules to follow:

> The Department's rule for pizza delivery drivers results in clarity for both delivery drivers and their employers. Employers can choose to take on the task of tracking delivery drivers' actual expenses or pay a set per-mile reimbursement rate. A neutral arbiter—the IRS—creates, monitors, and updates the rate, and it favors neither employers nor employees. Both employers and employees can readily access the rate. Moreover, employers, employees, and courts can precisely determine whether an employer is complying with the employer's minimum wage obligations. This can be done at relatively low litigation cost, likely through a motion for judgment on the pleadings or at summary judgment.

2

at 25 (quoting *Hatmaker*, 2019 WL 5725043, 2019 U.S. Dist. LEXIS 191790, at *16–17).[1]

In this case, Plaintiff alleges that she and her fellow delivery drivers who work or worked for Defendants' Domino's Pizza franchise stores were each employed according to the same basic terms:

- o   First, the delivery drivers were paid a tipped minimum wage while making deliveries for Defendants.[2] Exhibit 1, Deborah West Declaration ("West Decl."), ¶¶ 6-9.

- o   Second, the delivery drivers provided cars to use at work. West Decl., ¶¶ 10–12.

- o   Third, Defendants do not keep track of and reimburse for the delivery drivers' actual automobile-related expenses. West Decl., ¶¶ 13–16.

- o   Fourth, Defendants do not reimburse delivery drivers at the IRS standard business mileage rate but instead reimbursed a per-delivery amount that ranged from $0.75-$1.25 per delivery and resulted in the drivers receiving less than the IRS rate. West Decl., ¶¶ 17.

### 3. Legal Standard

Section 216(b) of the FLSA empowers Plaintiff to maintain an action for unpaid wages on behalf of herself and similarly situated employees:

> An action to recover the liability prescribed [under the FLSA] may be maintained against one employer in any Federal or State court of competent jurisdiction by any one or more employees for and on behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to [a class]

---

[1] *See also, e.g., Brandenburg v. Cousin Vinny's Pizza,* No. 3:16-cv-516, 2018 WL 5800594, 2018 U.S. Dist. LEXIS 189878, at *11 (S.D. Ohio Nov. 5, 2018) ("Because the vehicles owned by the delivery drivers are considered 'tools of the trade,' 29 C.F.R. § 531.35, and required by Cousin Vinny's as a condition of being hired as a delivery driver, there needed to be an adequate reimbursement rate, using either the IRS mileage rate or actual reimbursement of cost, in order to avoid a decrease in the minimum wage and overtime paid."); *Zellagui v. MCD Pizza, Inc.,* 59 F.Supp.3d 712, 716 (E.D. Pa. 2014) ("When minimum wage law requires an employer to reimburse an employee for using the employee's vehicle for the benefit, the employer should reimburse the employee at the IRS per mile rate or keep detailed records of the employees' expenses to justify another reimbursement rate."); *Young v. Rolling in the Dough*, No. 1:17-c7825, 2020 WL 969616, 2020 U.S. Dist. LEXIS 35941, at *3  (N.D. Ill. Feb. 27, 2020) (quoting *Hatmaker*).

[2] The delivery drivers are actually paid less than minimum wage, *i.e.*, they receive minimum wage minus a tip credit. Because the drivers are paid minimum wage minus a tip credit, they are considered to be paid minimum wage, no matter how much they receive in tips. Defendants are only entitled to the "offset" in the amount of the difference between the wage rate paid and full minimum wage. *See* 29 U.S.C. § 203(m); 29 C.F.R. § 531.59; *Perrin v. Domino's International*, 114 F.Supp.3d 707, 729 (E.D. Mo. 2015) (holding that employer could not retroactively claim a larger tip credit even if they initially claimed less than the maximum tip credit).

>action unless he gives consent in writing to become such a party and such consent is filed in the court in which the action is brought.

29 U.S.C. § 216(b).

Before a similarly situated employee may become a party plaintiff to this lawsuit for purposes of their FLSA claims, he or she must file a written consent with the Court. *Id*. This distinct "opt-in" structure heightens the need for employees to "receiv[e] accurate and timely notice concerning the pendency of the collective action." *Hoffman La-Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). The statute therefore vests district courts with "discretion to implement 29 U.S.C. § 216(b)…by facilitating the notice to potential plaintiffs." *Id*. at 169.

The FLSA does not define "similarly situated" and federal courts have used varying standards to determine whether potential opt-in plaintiffs are "similarly situated". The Tenth Circuit recognizes three distinct approaches for determining who is similarly situated under § 216(b) of the FLSA: (1) the *ad hoc* approach, (2) the Rule 23 approach, and (3) the spurious approach. The court has noted the *ad hoc* approach is "[a]rguably . . . the best of the three approaches outlined because it is not tied to the Rule 23 standards." *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001).

Under the *ad hoc* approach, the court "determines, on an *ad hoc* case-by-case basis, whether plaintiffs are 'similarly situated.'" *Id.* at 1102 (citation omitted). This is done at two stages of the litigation. *Id.* at 1102-03. First, the court "makes an initial 'notice stage' determination of whether plaintiffs are 'similarly situated.'" *Id.* at 1102 (citation omitted). For the court to grant this initial certification, a plaintiff must make "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan"—nothing more is required. *Id.*

Then, "[a]t the conclusion of discovery (often prompted by a motion to decertify), the court then makes a second determination, utilizing a stricter standard of 'similarly situated.'" *Id.* (citation omitted). At this final certification stage, the court relies on three factors: "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to

4

defendant which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations." *Id*. at 1103 (citation omitted).

Because Plaintiff's Motion addresses the first stage, the Court's analysis should be limited solely to whether Plaintiff has made "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan" with respect to Defendants' reimbursement policies.

### 4. Argument

#### 4.1. Defendants' delivery drivers are similarly situated.

Plaintiff has made substantial allegations that she and the other delivery driver employees have been subjected to the same terms of employment and compensation. The delivery drivers complete essentially the same job duties. The delivery drivers are paid at or around minimum wage minus a tip credit for all hours worked on the road making deliveries. The delivery drivers drive their own cars for work, but Defendants do not reimburse them for their actual expenses or at the IRS standard business mileage rate. Plaintiff's declaration explains that:

- Plaintiff worked for Defendants at two different locations in New Mexico and was subject to the same employment terms, compensation terms, and reimbursements at both locations. *West Decl.* ¶ 20.
- Plaintiff knows that all of the other delivery drivers were paid a tipped wage rate for their hours worked on the road making deliveries. *West Decl.* ¶¶7-9.
- Plaintiff knows that all of the delivery drivers were subject to the same reimbursement policy because she was informed by the store's manager when she was hired that all drivers are paid a tipped minimum wage and that the reimbursement rate is the same across the board. *West Decl.* ¶¶7-9, ¶18.
- Plaintiff and other delivery drivers were required by Defendants to provide and maintain their own vehicles to use while completing food deliveries to Defendants' customers. Plaintiff knows this because as a driver she was only able to work a driver shift if she had a vehicle to use, and she witnessed a potential employee be denied

5

> employment because he did not personally own a vehicle for use delivering for Defendants. *West Decl.* ¶¶10-12.
>
> o Defendant did not collect records of the expenses that Plaintiff, or other delivery drivers, incurred while making deliveries for them. Defendant did not ask Plaintiff to provide any receipts or other records relating to the purchase of gas, automobile maintenance or repairs, registration costs, licensing costs, purchasing and financing costs, or other costs associated with driving her car at work. *West Decl.* ¶11.
>
> o Plaintiff knows that Defendants did not collect records of expenses incurred by other delivery drivers because she never saw Defendants request records of delivery expenses from other drivers, she knows that a co-worker had to personally pay for repairs to his vehicle after an accident ruined his suspension, and she was told by the hiring manager that the drivers were reimbursed the same delivery rate across the board. *West Decl.* ¶13, ¶16, and ¶18.
>
> o Defendants did not reimburse other delivery drivers for their actual expenses and instead reimbursed that at a set per-delivery reimbursement rate that is less than the IRS standard business mileage rate. *West Decl.* ¶17.
>
> o Plaintiff knows that she and the delivery drivers at Defendants' Domino's Pizza stores were reimbursed according to the same terms because the hiring manager informed her when she was hired that all drivers were reimbursed the same rate. *West Decl.* ¶17.

*See Hoffman Declaration*. This exceeds the "substantial allegations" Plaintiffs must make to prevail on this Motion.

Courts have consistently permitted notice to be sent to employees in similar pizza delivery cases. *See, e.g., Thomas v. Domino'sInt'l, Inc.*, No. 1:17-cv-411, 2019 WL 4743637, 2019 U.S. Dist. LEXIS 171728, at *16 (S.D. Ohio Sep. 29, 2019); *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2017 WL 3500411, 2017 U.S. Dist. LEXIS 129955, at *32 (S.D. Ohio Aug. 14, 2017); *Waters v. Pizza to You, LLC*, No. 3:19-cv-372, 2020 WL 1129357, 2020 U.S. Dist. LEXIS 39913, at

*8 (S.D. Ohio Mar. 9, 2020); *Young v. Rolling in the Dough*, No. 1:17-cv-7825, 2018 WL 1240480, 2018 U.S. Dist. LEXIS 38533, at *9 (N.D. Ill. Mar. 8, 2018); *Meetz v. Wis. Hospitality Grp. LLC,* No. 16-cv-1313, 2017 WL 3736776, 2017 U.S. Dist. LEXIS 138380, at 19 (E.D. Wisc. Aug. 29, 2017); *Redus v. CSPH, Inc.,* No. 3:15-cv-2364, 2017 WL 2079807, 2017 U.S. Dist. LEXIS 73301, at 23–24 (N.D. Tex.); *Sullivan v. PJ United, et al.,* No. 7:13-cv-01275, Dkt. 80 (N.D. Ala. Mar. 13, 2017); *Drollinger v. Network Global Logistics, Inc.,* No. 16-cv-00304, Dkt. 76 (D. Colo. Jan. 18, 2017); *Tegtmeier v. PJ Iowa, LC,* 208 F.Supp.3d 1012, at *3–21 (S.D. Iowa Sept. 21, 2016); *Bellaspica v. PJPA, LLC*, 3 F.Supp.3d 257, 260 (E.D. Pa. Mar. 11, 2014); *Smith v. Pizza Hut, Inc.*, No. 09-cv-01632, 2012 WL 1414325, 2012 U.S. Dist. LEXIS 56987, at *30 (D. Colo. Apr. 21, 2012); *Darrow v. WKRP Mgmt. LLC*, No. 09-cv-01613, 2012 WL 638119, 2012 U.S. Dist. LEXIS 24997, at *25 (D. Colo. Feb. 28, 2012); *Perrin v. Domino'sInt'l, Inc.*, No. 4:09-cv-1335, 2011 WL 4089251, 2011 U.S. Dist. LEXIS 104059, at *20 (E.D. Mo. Sept. 14, 2011); *Wass v. NPC Int'l., Inc.*, No. 09-cv-2254, 2011 WL 1118774, 2011 U.S. Dist. LEXIS 32761, at *40 (D. Kan. Mar. 28, 2011); *Bass v. PJCOMN Acq. Corp.*, No. 09-cv-01614, 2010 WL 3767132, 2010 U.S. Dist. LEXIS 144305, at *12–13 (D. Colo. Sept. 15, 2010); *Luiken v. Domino's Pizza, LLC*, No. 09-516 (DWF/AJB), 2010 WL 2545875, 2010 U.S. Dist. LEXIS 61020, at *11–12 (D. Minn. June 21, 2010).[3]

### 4.2. Court-authorized notice is appropriate in this case.

The Supreme Court instructs that notice should be "orderly, sensible, and not otherwise contrary to statutory commands." *Hoffman-LaRoche Inc.*, 493 U.S. at 170. The Court intentionally left significant discretion to oversee notice in the district courts' hands: "We confirm the existence of the trial court's discretion, *not the details of its exercise*." *Id*. (emphasis added).

---

[3] To further illustrate the point, courts also consistently grant contested class certification motions of similar claims under the more-stringent standard of Fed. R. Civ. P. 23. *See Brandenburg II*, 2018 WL 5800594, 2018 U.S. Dist. LEXIS 189878, at *20 (S.D. Ohio Nov. 5, 2018); *McFarlin v. The Word Enterprises, LLC*, No. 16-cv-12536, 2017 WL 4416451, 2017 U.S. Dist. LEXIS 164968, at *13 (E.D. Mich. Oct. 5, 2017); *Bass v. PJCOMN Acq. Corp.,* No. 09-cv-01614*,* 2011 WL 2149873, 2011 U.S. Dist. LEXIS 58352, at *18 (D. Colo. Jun. 1, 2011); *Perrin v. Domino'sInt'l, Inc.,* 2013 WL 6885334, 2013 U.S. Dist. LEXIS 181749, at *26 (E.D. Mo. Dec. 31, 2013); *Oregal v. PacPizza, LLC,* Case No. C12-01454 (Sup. Ct. of Contra Costa Cnty. May 8, 2014); *Behaein v. Pizza Hut, Inc.,* Case No. BC541415 (Sup. Ct. of L.A. Cnty. Jul. 15, 2015).

Plaintiff asks the Court to authorize the proposed notice attached as Exhibit 2 to be disseminated to the delivery drivers who have worked for Defendants at any time in the three years before the complaint through regular U.S. mail and e-mail. *See* Exhibit 2 (proposed notice); Exhibit 3 (proposed email). To facilitate sending the notice, Plaintiff requests that the Court direct Defendants to produce a computer-readable list of the names, last known addresses, telephone numbers, e-mail addresses, date of employment and job title for all persons employed as delivery drivers at Defendants' Domino's Pizza locations during the three years prior to the filing of this action within fourteen (14) days of the order granting Plaintiff's Motion.

**4.3.   The Opt-In Period should be sixty days.**

Plaintiff asks the Court to set an opt in period of sixty days from the date the Notice goes out in the mail.

Sixty days allows sufficient time for notices to be sent and for employees to consider whether they want to opt in. It also allows time for notices that are sent to the wrong address to be returned as undeliverable and re-sent to an updated address. Finally, it allows the parties and the Court to set a reasonable schedule for the rest of the case without unnecessary delay.

The opt in period, however, should not be considered a hard deadline. The purpose of sending notice is to provide each individual employee with an opportunity to assert their own claim as part of the group. As the Supreme Court explained, "'conditional certification' does not produce a class with an independent legal status or join additional parties to the action. The sole consequence of conditional certification is the sending of court-approved written notice to employees, see *Hoffmann–La Roche Inc., supra,* at 171–172, 110 S. Ct. 482, who in turn become parties to a collective action only by filing written consent with the court, § 216(b)." *Symczyk II*, 133 S. Ct. at 1530. In other words, the employees' claims are not dependent on any "certification," or on the named plaintiff. Each opt in plaintiff's claim stands on its own two feet. *See, e.g., Buckles v. EUBA Corp.*, No. 3:18-cv-355, 2019 WL 4645915, 2019 U.S. Dist. LEXIS 163399, at *9 (S.D. Ohio Sept. 24, 2019) (finding that opt in plaintiff's claims could continue even after named plaintiff's claims were compelled to arbitration); *Mickles v. Country Club Inc.*, 887 F.3d

8

1270, 1274–76 (11th Cir. 2018) (holding that opt in plaintiffs' became party plaintiffs by filing their consent form, and was not dependent on a finding of "conditional certification").

It makes sense, then, that the only "deadline" that should apply to an employee's right to assert their claim should be the statute of limitations that applies to them. If an employee returns their claim form after the close of the opt in period, they should be permitted to join the case so long as the case has not progressed so far that inclusion of the late opt in would somehow prejudice Defendants. If the individual is not permitted to be included in the case, they are free to assert their claims in a separate lawsuit. The intent of *Hoffman-LaRoche* is served by treating the opt in period as a "soft" deadline and permitting late opt ins to join the case so long as it will not prejudice Defendants.

### 4.4. Plaintiff reserves the right to seek authorization from the Court to send another round of Notice.

As Plaintiff understands it, Defendants have not yet corrected the compensation and reimbursement policies challenged by this lawsuit. Until Defendants correct their policies, new employees will be subject to the policy but will not have received notice of this lawsuit.

Accordingly, to the extent that Defendants' policy remains in place after the Court grants the present Motion, Plaintiff may seek permission at a later stage in the case to send notice to any newly-hired employees who are subject to this policy, but did not work for Defendants yet when the Court authorized the first round of notice. This will allow for the most efficient adjudication of these claims.

### 5. Conclusion

For the foregoing reasons, Plaintiff respectfully requests the Court to conditionally certify this case as an FLSA collective action, and to (1) authorize Plaintiff to send notice of this action to the delivery drivers who have worked at Defendants' Domino's Pizza stores dating back three years prior to the filing of the complaint, (2) approve the Plaintiff's proposed notices and methods of disseminating notice, (3) order Defendants to provide name and contact information for all

potential opt-in plaintiffs within 14 days of the court's order, and (4) authorize a 60-day opt-in period.

          Respectfully submitted,

          **MOODY & STANFORD, P.C.**

By: */s/ Christopher Moody 2022.03.22*
Christopher Moody (Bar # 1850)
4169 Montgomery Blvd., NE
Albuquerque, NM 87109
505-944-0033 (Phone)
505-944-0034 (Fax)
*moody@nmlaborlaw.com*

and

**BILLER & KIMBLE, LLC**
Andrew R. Biller *(Pro Hac Vice forthcoming)*
Andrew P. Kimble *(Pro Hac Vice forthcoming)*
Emily Hubbard *(Pro Hac Vice forthcoming)*
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
513-202-0710 (Phone)
614-340-4620 (Fax)
*abiller@billerkimble.com*
*akimble@billerkimble.com*
*ehubbard@billerkimble.com*
www.billerkimble.com

*Counsel for Plaintiff and the putative class*

**Certificate of Service**

      I hereby certify that a copy of the foregoing was filed electronically. To the extent any parties do not yet receive notice of filings through the electronic filing system, I certify that they will be served with this Motion in accordance with the Federal Rules of Civil Procedure, and that, after service is complete, I will submit a certificate of service.

      By: */s/ Christopher Moody 2022.03.22*
           Christopher Moody