**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

DEBORAH WEST, JOSEPH BELKA, AND
LYNNE BALDERSON, *on behalf of themselves
and those similarly situated*,

    Plaintiffs,

v.                                                    Case No. 1:22-cv-00209-SMD-JMR

BAM PIZZA MANAGEMENT, INC.; BRIAN
BAILEY; DOE CORPORATION 1-10; AND
JOHN DOE 1-10,

    Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendants BAM Pizza Management, Inc. ("BAM"), Brian Bailey ("Bailey"), Doe Corporations 1-10, and John Does 1-10 (collectively, "Defendants'") opposed motion, Doc. 240 ("Defs.' Mot. to Strike"), under Federal Rules of Civil Procedure 12(f) and 23 to deny class certification and/or strike Plaintiffs' state law class allegations under the New Mexico Minimum Wage Act ("NMMWA"), N.M. Stat. Ann. § 50-4-21, et. seq., the Colorado Wage Act ("CWA"), Colo. Rev. Stat. § 8-6-101, et. seq., and Texas unjust enrichment law.

For the reasons set forth below, the Court DENIES Defendants' motion.[1]

---

[1] This Court denies Defendants' motion regarding Plaintiffs' New Mexico and Colorado class allegations, and finds it unnecessary to rule at this time on Defendants' motion regarding Plaintiffs' Texas state law claims, given the following procedural history.

Plaintiffs' Amended Complaint, filed Feb. 26, 2024, asserted Texas state law unjust enrichment claims by named Plaintiff Lynne Balderson on behalf of herself and similarly situated current and former Domino's delivery drivers in Texas. *See, e.g.*, Doc. 208 ¶¶ 2, 8, 12, 21–23, 26, 36, 131–53, 237–54, 300–04. Subsequent to filing, Ms. Balderson died on August 17, 2023. *West v. BAM Pizza Mgmt., Inc.*, No. 1:22-CV-00209-SMD-JMR, 2025 WL 872308, at *1 (D.N.M. Mar.

1

**Relevant Procedural History and Background**

The following sets forth relevant procedural history, background, and facts relating to Defendants' instant motion. *See* Defs.' Mot. to Strike.

**I.      Procedural History**

On March 21, 2022, named Plaintiff Deborah West filed a complaint against Defendants, bringing individual and collective FLSA claims and individual and class NMMWA claims. Doc. 1 (Compl."). The complaint does not make allegations regarding an arbitration agreement. The next day, West filed a motion for conditional certification of the FLSA collective action. Doc. 7.

On May 26, 2022, Defendants filed a motion to compel arbitration, Doc. 29, attaching what Defendants argued was an arbitration agreement signed by West on July 15, 2021, although that Exhibit was undated. Doc. 29 ¶¶ 2–7, 13–26 14–21, 22–23. On May 31, 2022, Defendants responded to Plaintiff's Motion for Conditional Certification, arguing that it was premature because the claims were subject to arbitration. Doc. 32. After both motions were fully briefed, the Honorable David H. Urias held a hearing on Defendants' motion to compel arbitration on August 26, 2022. Doc. 50.

At that hearing, after oral argument, Judge Urias ruled that genuine fact issues exist regarding whether the Parties formed an arbitration agreement, thereby requiring resolution by the factfinder. *Id.* at 2. Judge Urias provided for limited discovery on the issue of contract formation,

---

19, 2025). This Court denied Plaintiffs' motion for an extension of time to file a substitution of party for Balderson under Federal Rule of Civil Procedure 25. *Id.* at *1–2. Plaintiffs moved to reconsider that Order. Doc. 273. This Court reconsidered its Order as to Balderson's FLSA claims, but not as to Balderson's Texas state law claims. Doc. 289. In briefing on this motion, Plaintiffs noted that Ms. Balderson died, Pls.' Resp. at 1 n.1, referred to the "named Plaintiffs" only as "Deborah West and Joseph Belka," *id.* at 1, 10, and did not address the factual allegations regarding whether Ms. Balderson agreed to arbitrate her claims. *See* Doc. 244-1 ¶¶ 11, 15, 17.

in the form of five requests for production and three depositions for each side. *Id.*

Judge Urias set a trial date on the issue of contract formation, initially for December 5, 2022, Doc. 50; Doc. 52, and then for January 6, 2023, with a pretrial conference date of December 16, 2023, Doc. 59. Defendants served one request for production on Plaintiff and deposed Plaintiff West, while Plaintiffs served five requests for production on Defendants, conducted a Rule 30(b)(6) deposition of BAM Pizza, and deposed Matthew Johnson. Doc. 80 ¶¶ 5–6. The Parties filed pretrial materials, i.e. exhibit lists, witness lists, proposed jury instructions, and objections, *see, e.g.*, Doc. 62; Doc. 63; Doc. 78, as well as supplemental briefing regarding the interplay of Plaintiffs' motion for FLSA conditional certification with Defendants' motion to compel arbitration, Doc. 51; Doc. 53.

On December 6, 2022, Defendants' then-counsel filed a motion to withdraw with Defendants' consent. Doc. 71. The next day, the Court held a hearing on the motion to withdraw, at which the Court declined to move the pretrial conference and trial dates, and reserved ruling on the motion to withdraw. Doc. 73.

On December 12, 2022, Plaintiff filed a Motion for Summary Judgment in which she argued that Defendants were unable to meet their burden to prove that West signed a binding arbitration agreement with Defendants, based on, *inter alia*, West's deposition testimony that she did not sign the exhibits placed in front of her. Doc. 77 at 8–10 (citing Doc. 77-4 ("West Dep.") at 26:17–27:1, 53:3-12, 54:9–56:5).

On December 15, 2022, the day before the pretrial conference, Defendants, through new counsel, filed a formal motion to continue the trial date, and proposed to hold a hearing on the motion instead of a pretrial conference. Doc. 80 ¶¶ 17, 19. Defendants stated that "former counsel

3

did not utilize all the requests for production and depositions authorized by the Court." *Id.* ¶ 15. Defendants stated their desire to seek third-party discovery "regarding Defendants' online onboarding process, which encompasses the arbitration agreement that all employees are required to sign electronically prior to beginning work at BAM Pizza Management, Inc.," which is "uniquely in the possession of third-parties," and requested leave to file amended witness and exhibit lists. *Id*. Plaintiffs opposed the motion. Doc. 81.

On December 16, 2022, the Court, *inter alia*, granted Defendants' counsel's motion to withdraw, denied Defendant's motion to continue the trial date, and scheduled an extra day for trial. Doc. 83; Doc. 86. Subsequently, Defendants withdrew their Motion to Compel Arbitration on December 26, 2022. Doc. 88, Judge Urias vacated the January 2023 jury trial on contract formation on December 29, 2022, Doc. 89, and Plaintiff also withdrew her Motion for Summary Judgment on December 29, 2022, Doc. 90.

On January 11, 2023, regarding Plaintiffs' motion for conditional certification of the FLSA collective action, Defendants filed a motion for leave to file a supplemental brief, arguing against sending notice to plaintiffs who had signed arbitration agreements. Doc. 93; Doc. 94. On January 20, 2023, the Court nevertheless granted Plaintiffs' motion for conditional certification of the FLSA collective action. Doc. 99; *see West v. BAM Pizza Mgmt., Inc.*, No. 22-CV-00209-DHU-JHR, 2023 WL 346309 (D.N.M. Jan. 20, 2023). The Court noted that Defendants' opposition was based on their arguments regarding an arbitration agreement, but Defendants had withdrawn their motion to compel arbitration. *West*, 2023 WL 346309, at *2. On January 25, 2023, Defendants filed a motion to reconsider that order in light of their motion for leave to file a supplemental brief. Doc. 102. The motions for leave to file a supplemental brief and to reconsider were fully briefed.

4

Doc. 117.

Meanwhile, on January 11, 2023, Defendants filed a motion to compel arbitration against four FLSA opt-in plaintiffs for whom Defendants produced information supporting that those four plaintiffs had entered into arbitration agreements. Doc. 95; Doc. 96. After Plaintiffs represented that those opt-in plaintiffs had signed those arbitration agreements, Doc. 101; Doc. 110, on February 10, 2023, the Court granted Defendants' motion to compel those four opt-in plaintiffs to arbitration and dismissed their claims without prejudice, Doc. 114.

While the motion to compel, Doc. 95, and motion to reconsider, Doc. 102, were pending, the magistrate judge twice found good cause to delay issuing a scheduling order, Doc. 97; Doc. 115. On June 30, 2023, the Parties jointly moved to set a scheduling conference. Doc. 157. At the scheduling conference on August 3, 2023, before a different magistrate judge, the Parties represented that the motions for leave to file a supplemental brief and to reconsider were moot. Doc. 173. Judge Urias denied those motions as moot that day. Doc. 175. The magistrate judge also stayed discovery and set a schedule for briefing on a different set of motions. Doc. 174. The magistrate judge invited either party to move for limited discovery if they believed necessary. Doc. 173.

On February 20, 2024, Judge Urias granted Plaintiffs' motion for leave to file an amended complaint. *See West v. BAM Pizza Mgmt.*, No. 22-CV-00209-DHU-JMR, 2024 WL 688571, at *4 (D.N.M. Feb. 20, 2024). The amended complaint added Joseph Belka as a named plaintiff bringing class claims under the CWA, Colo. Rev. Stat. § 8-6-101, et. seq., and Lynne Balderson as a named plaintiff bringing class claims under Texas unjust enrichment law. *Id.* at *1–3. Plaintiffs filed the amended complaint on February 26, 2024. Doc. 208. The amended complaint

does not make allegations regarding arbitration agreements.

On April 11, 2024, the Parties filed a joint motion to stay proceedings pending mediation. Doc. 220. The Court stayed proceedings, Doc. 221; Doc. 226; Doc. 231, denied the Parties' pending motions as moot, and invited them to refile should the Parties fail to resolve the case, Doc. 224. On November 18, 2024, the Parties reported they had reached an impasse. Doc. 232. On December 3, 2024, the magistrate judge ordered the Parties to refile motions by December 20, 2024, Doc. 235, ordered the Parties to formulate a discovery plan, Doc. 236, and set a Rule 16 scheduling conference for January 23, 2025. The Parties filed their Rule 26(f) report on January 16, 2025. Doc. 250. This matter was transferred to the undersigned District Judge on January 17, 2025. Doc. 251.

At the January 23, 2025, scheduling conference, the magistrate judge directed that she would hold a conference to set discovery parameters and deadlines after the District Judge ruled on the Parties' motions. Doc. 253; Doc. 254.

## II.    Instant Motion to Deny Class Certification and/or Strike Class Allegations

On December 20, 2024, Defendants filed, *inter alia*, the instant motion to deny class certification and/or strike Plaintiffs' state law class allegations. Defs.' Mot. to Strike; Doc. 244.[2] The motion is fully briefed. Doc. 258 ("Pls.' Resp."); Doc. 266 ("Defs.' Reply").

A. Defendants' Motion

Defendants argue that none of the three named Plaintiffs seeking to represent state law classes are subject to binding arbitration agreements. Defs.' Mot. to Strike at 2 (citing Doc. 244-1

---

[2] Subsequent to filing this motion, Defendants filed, as an errata to its motion, a declaration and attachments. Doc. 244. Plaintiffs have not objected to Defendants' filing of the declaration and attachments, and as such, they are accepted.

("Johnson Decl.") ¶¶ 10–12). Defendants also proffer evidence purporting to show that 98 percent of the putative class members sign arbitration agreements in Defendants' "regular business practice," and as such, argue that the named plaintiffs are not representative of the state law classes. Defs.' Mot. to Strike at 2 & n.1 (citing Johnson Decl. ¶¶ 5, 13).

Defendants' evidence on this motion is the declaration of Matthew Johnson, the Vice President of Human Resources of BAM Pizza, with attachments Defendants represent to be a uniform arbitration agreement for Domino's drivers and a spreadsheet showing how many putative class members in New Mexico, Colorado and Texas have or have not signed arbitration agreements. *See* Johnson Decl.; Doc. 244-2; Doc. 244-3.

The declaration represents that it is based on Johnson's personal knowledge and "review of business records, or summarized information gathered therefrom, made and kept in the regular course of business." Johnson Decl. ¶ 3. The declaration refers to the onboarding process for delivery drivers, *Id.* ¶¶ 5–6, 8–9, and states that some delivery drivers were provided a paper copy, while some were provided an electronic copy. *Id.* ¶ 7. As to Plaintiff Deborah West, the declaration does not provide specific facts, but states that she "has previously represented in this litigation that she did not sign the arbitration agreement provided to her." *Id.* ¶ 10.[3] As to Plaintiff Joseph Belka, the declaration states that "[b]ased upon my review of the Company records maintained in the ordinary course of business, Joseph Belka opted out of the arbitration agreement with the Company." *Id.* ¶ 12.

The spreadsheet, based on Johnson's "preliminary review of individual personnel records,"

---

[3] A prior declaration by Johnson, dated May 25, 2022, submitted in support of Defendants' motion to compel arbitration, stated that West had signed an arbitration agreement on July 15, 2021. Doc. 29 at 22–23.

7

purports to show that 7,418 current and former delivery drivers have entered into mutually binding arbitration agreements, representing "roughly 98%" of the total delivery driver population; and additionally, 44 New Mexico delivery drivers and 2 Colorado delivery drivers have not signed arbitration agreements. *Id.* ¶¶ 13–16, 18.

Based on their submitted evidence, Defendants request to deny class certification. Defs.' Mot. to Strike at 2–3. Regarding the employees who are subject to arbitration agreements, Defendants argue that the named plaintiffs are not representative of the state law classes, and cannot meet the Rule 23 requirements of typicality, adequacy, predominance, or superiority. Defs.' Mot. to Strike at 4–11. Regarding the employees who are not subject to arbitration agreements, Defendants argue that Plaintiffs cannot establish numerosity of the class under Rule 23(a)(1). *Id.* at 3, 12–14.

B. Plaintiffs' Response

Plaintiffs opposed the motion and requested to develop their arguments through discovery, to be resolved on motions for class certification supported by an adequate record. Pls.' Resp. at 20. In support, Plaintiffs point to evidence developed in the limited discovery on the issue of contract formation. *Id.* at 4–7.

For example, Plaintiffs argue that discovery to date indicates that Defendants have inadequate audit trails for arbitration agreements, in part because the agreements are maintained as editable PDF files on an accessible server, and as such, Defendants cannot authenticate their employees' e-signatures of arbitration agreements. *Id.* at 5–6, 17–18.

Plaintiffs argue that their depositions of BAM Pizza and Johnson indicated three stages of onboarding processes with respect to arbitration agreements. *Id.* at 5. According to Plaintiffs,

until 2018, BAM used hard copy onboarding documents including arbitration agreements. *Id.* at 5 (citing Doc. 258-1 ("BAM Dep.") at 57:16-21). In 2018, BAM's new employees completed onboarding paperwork through IBM's Kenexa system, with a built-in e-signature function. *Id.* at 5 (citing BAM Dep. 47:14–48:6). Plaintiffs argue that the Kenexa platform does not create any audit trail for e-signatures, *id.* at 6 (citing BAM Dep. 68:24–69:4). Plaintiffs argue that all the arbitration agreements so far produced in this lawsuit were allegedly e-signed in Kenexa. *Id.* at 6 (citing BAM Dep. 68:24–69:4). After September 2021, IBM ended support for Kenexa, and BAM switched to a SmartRecruiters program. *Id.* at 5-6 (citing Doc. 258-2 ("Johnson Dep.") at 27:8–28:9). Plaintiffs argue that SmartRecruiters allows new employees to click past the arbitration agreement and their onboarding paperwork still can be marked as complete. *Id.* at 6 (citing BAM Dep. 42:4-23). Plaintiffs argue that BAM's human resources must check every SmartRecruiters onboarding packet manually to ensure all documents have been signed. *Id.*

Plaintiffs further argue that the depositions indicate that the onboarding packet is stored as an editable PDF file on a "public server" accessible by both BAM's HR department and a third-party IT support company. *Id.* at 6 (citing BAM Dep. 25:22–26:9, 67:2–68:13; Johnson Dep. 125:2-17).

Regarding Plaintiff West, Plaintiffs point out that three versions of an arbitration agreement purporting to be West's had been introduced—an undated, electronically signed arbitration agreement, attached to Defendants' motion to compel arbitration, Doc. 29 at 14, and two versions electronically signed and dated December 18, 2018 and July 15, 2021, produced in limited discovery. Doc. 88-1; Pls.' Resp. at 5. Plaintiffs argue that BAM's 30(b)(6) testimony indicates that "only one of these two versions could be genuine, but [BAM] could not say which." Pls.'

Resp. at 5. Plaintiffs note that West previously denied signing an agreement. *Id*.

More generally, Plaintiffs argue that Defendants' prior failure to produce an authentic, signed arbitration agreement for West indicates a broader failure to meet their burden to produce thousands of authentic, signed arbitration agreements for the putative class. Pls.' Resp. at 4, 17–18.

As to Johnson's declaration, Plaintiffs argue that "raises more questions than it answers." *Id.* at 6–7. Plaintiffs argue that Johnson's declaration and attached spreadsheet, showing that 7,418 potential class members in New Mexico, Colorado and Texas have signed arbitration agreements and 70 have not, Johnson Decl. ¶¶ 13–18,[4] is inconsistent with a prior declaration submitted by Defendant Brian Bailey in support of Defendants' motion for leave to file a supplemental brief in opposition to Plaintiffs' motion for FLSA collective certification, Doc. 93; Doc. 94; Doc. 94-1; Doc. 94-4. Bailey's declaration provided a review of a random sample of 1,000 drivers across BAM's stores, and found that 19 lacked arbitration agreements. Doc. 94-1 ¶ 11; Doc. 94-3.[5] Plaintiffs argue that this indicates that Bailey found double the number of employees lacking arbitration agreements as Johnson did, and theorize that the reason is BAM's new processes allowing employees to proceed without signing the arbitration agreement. Pls.' Resp. at 7 (citing BAM Dep. 42:4-23).

---

[4] Johnson's declaration is split out by state, but does not list dates of signing arbitration agreements. Johnson Decl. ¶¶ 16–18.

[5] Bailey's declaration states that it represents delivery drivers employed from March 1, 2019 through December 29, 2022, and the attached spreadsheet lists dates of signing, but is not split out by state. Doc. 94-1 ¶ 10; Doc. 94-3.

C. Defendants' Reply

Defendants, in their reply, do not specifically rebut Plaintiffs' evidence that Defendants cannot authenticate the arbitration agreements, and rather state that "it is unclear what further foundation Plaintiffs believe is required for Defendants to show that its employees are subject to arbitration agreements, especially at this early stage of the proceedings." Doc. 266 at 7. Defendants again point to Johnson's declaration based on his personal knowledge of BAM's pattern and practice. *Id.* at 7–8 (citing Johnson Decl. ¶¶ 3–4, 6, 9, 11–19).

As to the spreadsheets provided by Johnson and Bailey, Defendants argue that Plaintiffs' interpretation of those spreadsheets as conflicting is not "sufficiently statistically significant." Defs.' Reply at 8.[6]

**Legal Standards**

"Rule 23 does not prohibit a defendant from asserting a 'preemptive' motion to deny class certification." *Murphy v. Aaron's, Inc.*, No. 19-CV-00601-CMA-KLM, 2020 WL 2079188, at *4 (D. Colo. Apr. 30, 2020) (citing *Wornicki v. Brokerpriceopinion.com*, No. 13-cv-03258-PAB-KMT, 2015 WL 1403814, at *4 (D. Colo. Mar. 23, 2015)); *see also Romero v. Titlemax of N.M., Inc.*, 762 F. App'x 560, 565 (10th Cir. 2019). Such motions may be brought as a motion to strike under Federal Rules of Civil Procedure Rule 12(f). *See, e.g.*, *Faulhaber v. Petzl Am., Inc.*, 656 F. Supp. 3d 1257, 1272 & n.10 (D. Colo. 2023); *Tullie v. Quick Cash, Inc.*, No. 14-CV-0491 SMV/SCY, 2014 WL 12782961, at *2 (D.N.M. Dec. 2, 2014) ("A motion to strike class allegations is 'procedurally permissible' at the pleading stage." (quoting *Hull v. Viega, Inc.*, No. 12-2086-

---

[6] Defendants state that "Plaintiffs provide their own estimation," Defs.' Reply at 8, but this estimation is based on the statements of Johnson and Defendant Bailey, Pls.' Resp. at 6–7.

11

JAR-DJW, 2013 WL 759376, at *5 (D. Kan. Feb. 27, 2013) (discussing standards under Rule 12(f))).

In making the determination of whether striking of class allegations is appropriate, "courts apply the same standards applied at the certification stage, asking whether a complaint's allegations satisfy Federal Rule of Civil Procedure 23's requirements." *Faulhaber,* 656 F. Supp. 3d at 1271 (citing *Young v. Standard Fire Ins. Co.*, No. 21-35777, 2023 WL 21465, at *1 (9th Cir. Jan. 3, 2023) ("A decision to grant a motion to strike class allegations . . . is the functional equivalent of denying a motion to certify a case as a class action." (quotations omitted)).

Courts in the Tenth Circuit "have held motions to strike class allegations to a high standard of proof." *Adams-Chevalier v. Spurlock*, No. 16-CV-02691-WYD-STV, 2017 WL 5665149, at *6 (D. Colo. Sept. 25, 2017) (quoting *Wornicki*, 2015 WL 1403814, at *4). "A court may strike class allegations at the pleading stage only where a defendant demonstrates from the face of the complaint that the proposed class cannot be certified as a matter of law." *Tullie*, 2014 WL 12782961, at *2. Generally, a motion to strike is a drastic remedy and is "disfavored by the courts." *Id.* (quoting *Francis v. Mead Johnson & Co.*, No. 1:10-CV-00701-JLK, 2010 WL 3733023, at *1 (D. Colo. Sept. 16, 2010)). A motion to strike class allegations is "even more disfavored" than other requests to strike because it asks a court to "terminate the class aspects of litigation, solely on the basis of what is alleged in the complaint," and before a plaintiff may complete discovery. *Id.*; *see also Spurlock*, 2017 WL 5665149, at *6 (explaining that the court would "only grant defendants' motion if they are able to show conclusively that plaintiffs will be unable to establish facts that would make class treatment appropriate" (quoting *Wornicki*, 2015 WL 1403814, at *4)).

## Discussion

The Court denies Defendants' motion as premature. As Judge Urias preliminarily ruled in August 2022, genuine fact issues remain regarding whether the Parties formed arbitration agreements. Doc. 50.

Those issues of genuine fact include, fundamentally, whether Defendants can prove that arbitration agreements were signed by either the named plaintiffs or putative class members. Plaintiffs point to case law indicating that defendants bear the burden to prove the existence of a valid arbitration agreement, and "where the plaintiff is alleged to have electronically signed an arbitration agreement, courts have required proof of authenticity." Pls.' Resp. at 17; *Smith v. Para Energy Grp., LLC*, No. 23-CV-01756-PAB-KAS, 2023 WL 8811012, at *3 (D. Colo. Dec. 20, 2023) (quoting *Beattie v. TTEC Healthcare Sols., Inc.*, No. 18-cv-03098-RM-SKC, 2019 WL 2189481, at *2 (D. Colo. May 21, 2019)). While Defendants point to case law indicating that Plaintiffs bear the ultimate burden for class certification under Rule 23, *see Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*, 725 F.3d 1213, 1217 (10th Cir. 2013), Defendants bear the high standard of proof on this motion to strike class allegations. *Spurlock*, 2017 WL 5665149, at *6.

On this incomplete record, Defendants have not met their burden to conclusively demonstrate the authenticity of the signed arbitration agreements that have been and will be at issue in this case. Notably, this Court is not aware that the third-party discovery regarding Defendants' online onboarding processes that Defendants sought in December 2022 has been conducted. Doc. 80 ¶ 15. Defendants point to Johnson's declaration regarding his knowledge of BAM's patterns and practices of onboarding employees as sufficient authentication. Defs.' Mot.

to Strike at 2 n.1; Defs.' Reply at 7–8 (citing Doc. 244-3 ¶¶ 3–6)). But whether BAM's patterns and practices can validly authenticate the arbitration agreements in BAM's possession remains factually at issue, and Johnson's recent declaration has not been tested by the adversarial discovery process.

Relatedly, it remains unresolved whether the named plaintiffs West and Belka signed arbitration agreements, and to what extent the putative class members for New Mexico and Texas signed arbitration agreements. These genuine issues of material fact suffuse the parties' arguments regarding the Rule 23 requirements of typicality, adequacy, predominance, and superiority for putative class members who have signed arbitration agreements,[7] and numerosity for putative class members who have not signed arbitration agreements.[8]

Specifically, as to named Plaintiff West, a genuine issue of material fact remains as to whether she signed an arbitration agreement or not. West denies that she signed, Doc. 77 at 8–10, the Parties declined to conclusively litigate the issue in January 2023, and Johnson does not make factual assertions on this motion regarding whether West signed or not. Johnson Decl. ¶ 10. As to Belka, Defendant's contentions on this motion are untested by the adversarial discovery process.

---

[7] *See* Defs.' Mot. to Strike at 5–11; Pls.' Resp. at 11–14; Defs.' Reply at 2–5, 8–9; *see also Nagel v. DFL Pizza, LLC*, No. 21-cv-00946, 2024 WL 5095298, at *5 (D. Colo. Dec. 4, 2024) (granting Defendants' motion to strike class allegations by Domino's delivery drivers because the named plaintiff had not signed an arbitration agreement, and thus the plaintiff did not meet requirements of, e.g., typicality, adequacy, predominance, and superiority).

[8] *See* Defs.' Mot. to Strike at 12-14; Pls.' Resp. at 11; *see also Braver v. Northstar Alarm Servs.*, LLC, 329 F.R.D. 320, 328 (W.D. Okla. 2018) (cited by Plaintiffs for the proposition that there is "no magic number" and classes of "more than forty" are usually big enough); *Bustillos v. Bd. of Cnty. Com'rs of Hidalgo Cnty.*, 310 F.R.D. 631, 669–70 (D.N.M. 2015) (cited by Defendants for the proposition that a court can deny class certification and find no numerosity where putative class was "potentially fewer than fifty employees").

*See id.* ¶ 12 (Johnson asserts that Belka opted out of the arbitration agreement, based upon Johnson's review of records "maintained in the ordinary course of business"). Relatedly, Judge Urias granted Defendants' motion to compel arbitration for four FLSA opt-in plaintiffs, for whom Plaintiffs conceded signed arbitration agreements. Doc. 114. As to how many putative class members signed or did not sign arbitration agreements, both Johnson's spreadsheet attached to his declaration on this motion, Doc. 244-3, and Defendant Bailey's spreadsheet attached to his declaration on a prior motion, Doc. 94-4, are untested by the adversarial discovery process, and Plaintiffs call into question Defendants' differing numerical assertions as well as Defendants' ability to authenticate the agreements.

Defendants point to *Nagel v. DFL Pizza, LLC*, to support that a Court can grant defendants' motion to deny class certification to Domino's delivery drivers under Rule 23 requirements based on the existence of arbitration agreements. Defs.' Mot. to Strike at 5–7 (citing *Nagel*, 2024 WL 5095298, at *4–5). But *Nagel* was in a different procedural posture than this case. The *Nagel* Court's decision rested on "significant, *unrebutted* evidence" by defendants. 2024 WL 5095298, at *4 (emphasis added). Here, Plaintiffs have rebutted Defendants' submissions with evidence regarding arbitrability from the limited discovery to date, resulting in genuine issues of material fact that remain unresolved. *Cf. Umbenhower v. Copart, Inc.*, No. 03-2476-JWL, 2004 WL 2660649, at *6 (D. Kan. Nov. 19, 2004) (accepting the authenticity of an alleged arbitration agreement without requiring defendants to submit evidence where plaintiff failed to provide any evidence disputing the agreement's authenticity).[9]

---

[9] Additionally, unlike here, in *Umbenhower*, plaintiff had "not averred that the signature on the document submitted by defendants is not her signature." *Umbenhower*, 2004 WL 2660649, at *6.

Because of these genuine issues of material fact, it is unnecessary at this point to consider the other issues the Parties raise on this briefing.[10]

In sum, the genuine issues of material fact that existed in January 2023, when the Parties declined to move forward with trial on arbitrability, remain today, and discovery has not moved forward, despite additional state law class claims in the amended complaint. Significant time has passed since initiation of a case that, as Defendants state, remains in the "early stage of the proceedings." Defs.' Reply at 7. Regardless of the procedural reasons, this case should move forward to a resolution of the genuine issues of material fact, whichever Party may benefit from that resolution.

## Conclusion

For the above reasons, Defendants' motion is DENIED.

_____
**SARAH M. DAVENPORT**
**UNITED STATES DISTRICT JUDGE**

---

[10] These issues include Defendants' argument that named plaintiffs lack contractual "standing" to challenge arbitration agreements, assuming the named plaintiffs did not sign arbitration agreements and the putative class members did, *see* Defs.' Mot. to Strike at 5–9, Pls.' Resp. at 2–3, 9–11; Defs.' Reply at 2–4; Plaintiffs' argument that a "poison pill" clause, Pls.' Resp. at 15, in the arbitration agreements has been activated, invalidating those agreements, *see* Pls.' Resp. at 15–16; Defs.' Reply at 9–10; and Plaintiffs' argument that Defendants have waived their right to arbitrate. *See* Pls.' Resp. at 18–20; Defs.' Reply at 5–7.