## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

DEBORAH WEST, on behalf of herself
and others similarly situated,

       Plaintiff,

v.                                                                    No. 1:22-cv-209-SMD-JMR

BAM! PIZZA MANAGEMENT, INC., et al.

       Defendants.

### ORDER DENYING DEFENDANT'S MOTION TO DISMISS

**THIS MATTER** is before the Court on Defendant Bam! Pizza's motion for summary judgment.[1]  Doc. 238 ("Def.'s Mot. for SJ").  Plaintiff Deborah West ("Plaintiff")[2] filed her response, Doc. 248 ("Pl.'s Resp.") and Defendant replied, Doc. 256 ("Def.'s Reply").  On review of the record and the relevant law, the Court hereby **DENIES** Defendant's motion.

### BACKGROUND

I.      Undisputed Material Facts

The following recitation of facts is based on Defendant's statement of undisputed material facts ("UMF"), Def.'s Mot. for SJ at 3 ("Def.'s UMF"), Plaintiff's response to Defendant's UMF, Pl.'s Resp. at 4–6 ("Pl.'s Resp. to Def.'s UMF"), and Defendant's reply, Def.'s Reply at 2–3.

Plaintiff worked as a delivery driver for Defendant BAM! Pizza from December 19, 2018, to January 30, 2020.  Def.'s UMF ¶ 1; Pl.'s Resp. to Def.'s UMF ¶ 1–3.  Plaintiff was compensated

---

[1] Although this lawsuit includes multiple defendants, Defendant Bam! Pizza filed the motion for summary judgment and is accordingly referred to in the singular throughout this order. *See* Def.'s Mot. for SJ at 1.

[2] As noted in this Court's previous order, Doc. 295, this suit has multiple named plaintiffs, but there is only one representative for each state-based subclass. Doc. 208 ("Pls.' Am. Compl.") ¶¶ 6–9.  Plaintiff Deborah West represents the subclass of New Mexico workers and brings Counts 2–3 on their behalf.  *See* Pls.' Am. Compl. ¶¶ 194–95.  Thus, except for the amended complaint filed on behalf of all plaintiffs, the Court will refer to "Plaintiff" in the singular.

on an hourly basis, at New Mexico's minimum wage rate, during this period.  Def.'s UMF ¶¶ 2, 4; Pl.'s Resp. to Def.'s UMF ¶ 1.  Defendant reimbursed Plaintiff some amount per delivery, though the Parties dispute whether such reimbursement was sufficient to cover Plaintiff's expenses.  Def.'s UMF ¶ 3; Pl.'s UMF ¶ 2.

II.    Procedural Background

Plaintiff alleges that Defendant's delivery-reimbursement rate was insufficient to cover the attendant costs of her job, such as gas, insurance, and car maintenance.  Pls.' Am. Compl. ¶¶ 113–129.  Plaintiff asserts that the cost of these expenses caused her wages to fall below the legal minimum.  *Id.* ¶ 129. Plaintiff now seeks to recover, on behalf of herself and others similarly situated, the difference between her actual wage (with the cost of her vehicle-related expenses deducted) and the legally required minimum wage under the Fair Labor Standards Act ("FLSA") and the New Mexico Minimum Wage Act ("NMMWA").  *See* Pls.' Am. Compl. ¶¶ 194–95 (first citing 29 U.S.C. § 206; and then citing N.M. Stat. Ann. § 50-4-22 (2024)).  Defendant moved for summary judgment on the NMMWA claims.  Def.'s Mot. for SJ at 1.

**LEGAL STANDARD**

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Butler v. Daimler Trucks N. Am., LLC*, 74 F.4th 1131, 1140 (10th Cir. 2023).  Here, Defendant have moved for summary judgment prior to discovery, Pl.'s Resp. at 4, and the facts are not substantively in dispute.  Accordingly, to prevail, Defendant must show that Plaintiff's claim fails as a matter of law.  *Cf. Teleco, Inc. v. Sw. Bell Telephone Co.*, 392 F. Supp. 692, 697 (W.D. Okla. 1974); *see, e.g.*, *Rancho Del Oso Pardo, Inc. v. N.M. Game Comm'n*, CIV 20-427 SCY/KK, 2021 WL 873355, at *4 (D.N.M. Mar. 9, 2021) (reviewing summary judgment standard and

explaining that "[b]ecause the parties do not dispute the material facts, the Court must decide whether the movants (Plaintiffs) are entitled to judgment as a matter of law").

## DISCUSSION

The central raised question by Defendant's motion is whether the New Mexico Minimum Wage Act provides a cause of action for employees who allege that their employer's insufficient reimbursement of expenses drove their wages below the state-minimum.  Def.'s Mot. for SJ at 2. Before discussing the propriety of Plaintiff's NMMWA claim, the Court takes a moment to discuss how these types of claims typically proceed under federal law as an analog for Plaintiff's state law theory.

The FLSA and NMMWA each set a minimum wage for hourly workers.  The FLSA states that "[e]very employer shall pay to each of his employees… wages at the following rates."  29 U.S.C. § 206(a).  In parallel, the NNMWA states that employers "shall pay to an employee a minimum wage[.]"  N.M. Stat. Ann. § 40-4-2022(A) (2024).  Neither the FLSA nor the NMMWA's statutory language addresses whether an employer must reimburse employees who use their vehicles in the course of their employment for the cost of gas, repairs, and normal wear and tear. FLSA's implementing regulations, however, state that wages must be paid "free and clear," meaning that employers cannot deduct "kickbacks" from an employee's wages.  29 C.F.R. § 531.35 (2024).  For example, employers violate the FLSA if they require employees to purchase "tools of the trade" when the cost of such tools "cuts into the minimum or overtime wages required."  *Id.*

Because of the regulations' prohibition on kickbacks, it is well-established that the FLSA provides Plaintiff with the right to sue for insufficient reimbursement of vehicle-related expenses. As the Eleventh Circuit explained, "there is no legal difference between deducting a cost directly from the worker's wages and shifting a cost, which they could not deduct, for the employee to

bear. . . . This rule cannot be avoided by simply requiring employees to make such purchases on their own, either in advance or during the employment." *Arriaga v. Fla. Pac. Farms, LLC*, 305 F.3d 1228, 1236 (11th Cir. 2002); *see also Ayres v. 127 Rest. Corp.*, 12 F. Supp. 2d 305, 310 (S.D.N.Y. 1998) ("Both New York law and federal law require employers to compensate employees for the purchase and maintenance of required uniforms if the employees' expenditures for these purposes would reduce their wages to below minimum wage"); *Parker v. Battle Creek Pizza, Inc.*, 95 F.4th 1009, 1015 (6th Cir. 2024). Federal courts have certified numerous FLSA class actions of delivery drivers under this theory. *See, e.g.*, *Perrin v. Papa John's Int'l, Inc.*, 818 F. Supp. 2d 1146, 1149 (E.D. Mo. 2011) (certifying FLSA class action where "reasonably approximated vehicle expenses" may have reduced wages "to a rate below the minimum wage"); *Waters v. Pizza to You, LLC*, No. 3:19-cv-372, 2021 WL 229040, at *3–4 (S.D. Ohio Jan. 22, 2021) (same); *Tierney v. Halls Ferry Pizza*, No. 4:21CV828 JAR, 2023 WL 5428623, at *8 (E.D. Mo. Aug. 23, 2023) (same); *Cornish v. Deli Mgmt., Inc.*, No. WMN-16-672, 2016 WL 5934077, at *4 (D. Md. Oct. 12, 2016) (same).

The New Mexico legislature has not promulgated a regulation comparable to Section 531.35 and New Mexico courts have not adopted *Arriaga*'s reasoning. Defendant thus posits that "Plaintiff's theory of liability is not cognizable under New Mexico law because the NMMWA is entirely silent on business reimbursements." Def.'s Mot. for SJ at 5. Defendant also objects to using the FLSA to analyze the NMMWA. *Id.* at 7. "While Plaintiff may wish to transform her theory under federal law to automatically apply in New Mexico, that is not possible under the NMMWA or its implementing regulations because . . . there is not a single provision of the NMMWA, or its regulations, that recognizes Plaintiff's claim." *Id.* at 8. In sum, Defendant believes that Plaintiff's suit is infeasible under the NMMWA because she has not identified any

"unauthorized deductions" taken from her paystubs, *id.* at 8, nor proven that the NMMWA mandates "reimbursement of business expenses," *id.* at 9.

Plaintiff counters that the NMMWA's text "necessarily prohibits an employer from circumventing the wage requirement by demanding employees pay something back to the employer or, as here, purchase tools on behalf of the employer." Pl.'s Resp. at 7. Plaintiff reasons that even if the NMMWA's text is ambiguous as to whether employers must reimburse employees, up to the minimum wage, for business expenses, the New Mexico Department of Workforce Solutions' Instruction Manual (the "Manual") affirms her interpretation. *Id.* at 11. Lastly, Plaintiff argues that the FLSA and its accompanying regulations, 29 C.F.R. § 531 *et seq.*, can be used as guidance where there is an absence of New Mexico precedent. *Id.* at 15. "Because the statutes and federal authority both address the subject at issue here, i.e. whether an employer must pay wages in full, the Court may rely on relevant federal interpretations to remove any doubt as to the cognizability of Plaintiff's claims under law." *Id.*

As explained below, the Court finds that Plaintiff's theory of recovery is cognizable under the NMMWA and denies Defendant's motion for summary judgment, as well as its request that this question be certified to the New Mexico Supreme Court.

I.    Plaintiff Alleges a Right to be Paid the New Mexico Minimum Wage and Does Not Seek Reimbursement for All Delivery-Related Expenses.

To determine whether Plaintiff's claim is actionable under the NMMWA, the Court must first clarify what it is exactly that Plaintiff is alleging. Throughout their motion, Defendant imprecisely refers to Plaintiff's theory of liability in three different ways. At times, Defendant characterizes it as a claim for sub-minimum wages. Def.'s Mot. for SJ at 2 ("Plaintiff Deborah West alleged that Defendant failed to adequately reimburse her for delivery-related expenses and consequently failed to pay her minimum wage."). At other points, Defendant refers to Plaintiff's

claim as one for unlawful deductions, *id.* at 4 (arguing that Plaintiff's claim fails because "Plaintiff cannot identify any 'unauthorized deductions' from her pay … that caused her wages to fall below the minimum wage"), and, more than once, Defendant insinuates that Plaintiff's claim is for *all* unreimbursed business expenses, *see, e.g.*, *id.* at 4, 5 (arguing that Plaintiff's claim fails because "the NMMWA does not mandate reimbursement of business expenses" nor "explicitly require employers to reimburse employees for job-related expenses"). Though these three theories of liability—sub-minimum wages, unlawful deductions, and unreimbursed business expenses—can overlap, they are district from one another and cannot be used interchangeably. The Court digresses briefly to elucidate which category Plaintiff's claim falls into. Because not every state, nor federal law, recognizes all three causes of action, cases from a variety of jurisdictions are used as illustration.

First, and most well-recognized, are claims alleging sub-minimum wages from work-related costs. Under the FLSA, and many state laws, an employer violates the law if they force an employee to bear business expenses that drive their pay below the minimum wage. *See* 29 C.F.R. § 531.35; *Hussein v. Jun-Yan, LLC*, 502 F. Supp. 3d 1366, 1372 (E.D. Wis. 2020) ("The FLSA is violated where the cost of 'tools of the trade,' provided by the employee and used or specifically required in the course of the employee's work, cuts into the minimum or overtime wages required to be paid to him."); *see also Mumin v. Uber Techs., Inc.*, 239 F. Supp. 3d 507, 534 (E.D.N.Y. 2017) (explaining parallel doctrine under New York law). An employer can commit this type of violation either through direct deductions, where they withhold the expense from an employee's paycheck, *see, e.g.*, *Garcia v. Frog Island Seafood, Inc.*, 644 F. Supp. 2d 696, 709 (E.D.N.C. 2009) ("A review of Defendants' payroll records reveals instances in which the nine-dollar deduction for the cost of a replacement knife during a particular week reduced a worker's wages for that

6

workweek below the minimum wage."), or through "cost-shifting," where the employer forces an employee to pay the expense out of pocket and fails to reimburse them, *see Mayhue's Super Liquor Stores*, 464 F.2d 1196, 1199 (5th Cir. 1972).  If the cost does not result in a sub-minimum wage then the employer can lawfully shift it to the employee.  *Id.* (explaining that if an employee bears the cost of purchasing a uniform, "it may not reduce the employee's wage below the minimum wage"); *see, e.g.*, *Mumin*, 239 F. Supp. 3d at 534 ("Under New York law, an employer is not required to reimburse an employee for 'tools of the trade' expenses unless failure to do so causes the employee's pay to fall below the minimum wage.").

The second category of claims are those alleging unlawful deductions, which assert that the withholding of certain types of costs from an employee's pay is illegal, regardless of whether it drives the employee's wages below the legal minimum.  For instance, in some states, it is illegal for an employer to deduct a cash shortage from a cashier's paycheck where there is no evidence that the cashier is responsible for the stolen funds.  *See, e.g.*, Wash. Admin. Code § 296-126-025(3)(c) (2006); Wage Order 1-2001, Cal. Code Regs. tit. 8, § 11000; Ill. Admin. Code tit. 56, §§ 300.730–40.  These actions are brought under unlawful deduction statutes, rather than minimum wage statutes.  *See Roman v. Jan-Pro Franchising Int'l, Inc.*, 342 F.R.D. 274, 311 (N.D. Cal. 2022) ("Employers may not make deductions from wages except in narrowly defined circumstances provided by statute. . . . California courts have found deductions to cover advertising and management expenses unlawful." (cleaned up)); *Marshall v. Pollin Hotels II, LLC*, 170 F. Supp. 3d 1290, 1302 (D. Or. 2016) (discussing Oregon statute prohibiting unlawful deductions); *Martins v. 3PD, Inc.*, Civil Action No. 11-11313-DPW, 2013 WL 1320454, at *1 (D. Mass. Mar. 28, 2013) ("Under Massachusetts law, an employer may not deduct certain expenses from its payment to employees, such as expenses for workers' compensation and administrative costs.").  The FLSA

does not recognize unlawful deduction claims without an accompanying wage violation, because it pertains "only to the payment of minimum wages and overtime." *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 116 (2d Cir. 2013).

Lastly, claims for unreimbursed business expenses encompass a slightly broader class of costs, depending on the exact statute, and have different evidentiary requirements than do suits for unlawful deductions. By way of example, California requires employers to reimburse employees for "all necessary expenses incurred in performing their duties." *Alvarado v. Wal-Mart Assocs., Inc.*, Case No. 2:20-CV-10926-AB, 2021 WL 6104234, at *5 (C.D. Cal. Nov. 3, 2021) (citing Cal. Labor Code § 2802(a)). *But see Chan v. Big Geyser, Inc.*, 1:17-CV-06473 (ALC), 2018 WL 4168967, at *7 (S.D.N.Y. Aug. 30, 2018) ("[C]ourts in this district have held that under New York law, employers do not have to reimburse employees for business expenses . . . so long as not doing so does not reduce the employee's wages below the minimum wage." (internal quotations omitted)). Courts at times refer to both "unreimbursed expenses" and "unlawful deductions" when discussing sub-minimum wages suits since they have the same practical effect—they reduce an employee's wages by requiring them to bear a cost on the part of their employer. *See Arriaga*, 305 F.3d at 1236. These claims do, however, have different evidentiary requirements. An unlawful deduction claim typically requires the employee to submit their paystubs to prove that the employer withheld the expense. *See, e.g.*, Iowa Code § 91A.5 (2025) (prohibiting an employer from "withhold[ing] or divert[ing] any portion of an employee's wage," subject to certain exceptions); *Morris v. Conagra Foods*, *Inc.*, 435 F. Supp. 2d 887, 911 (N.D. Iowa 2005) (finding that plaintiff failed to state a claim for violation of Iowa Code § 91A.5 because the complaint "glosses over the fact that wages were never actually withheld from [the plaintiff's] paycheck"); *Marshall*, 170 F. Supp. at 1302 ("To succeed on an unlawful wage deductions claim [under Oregon

law], the plaintiff must establish that the defendant made a deduction from the plaintiff's wages, that the deduction was not authorized . . . , and that the defendant thereby failed to pay all of the plaintiff's wages when due."); *Fersel v. Paramount Med. Servs.*, 588 F. Supp. 3d 304, 321 (E.D.N.Y. 2022) ("In order to state a claim for a violation of NYLL § 193, a plaintiff must allege a specific deduction from wages and not merely a failure to pay wages."). Contrastingly, a statute creating a right of action for unreimbursed expenses permits an employee to submit evidence of payments to third parties for which the employer failed to reimburse them. *Amaya v. Apex Merch. Grp., LLC*, Civ. No. 2:16-00050 WBS CKD, 2016 WL 1643585, at *3 (E.D. Cal. Apr. 26, 2016).

Recognizing that an employee's right to recover businesses expenses is typically tied to their right to be paid a minimum wage, courts have dismissed claims for "unreimbursed expenses" brought under unlawful deduction statutes rather than minimum wage laws. For example, in *Tegtmeier*, the court dismissed a plaintiff's claim for "unreimbursed expenses" because it was not a minimum wage claim, but a claim for "improper deductions from wages." *Tegtmeier v. PJ Iowa, LLC*, 189 F. Supp. 3d 811, 824 (S.D. Iowa 2016) (noting the distinction between a claim for unreimbursed expenses and the "general principle that improperly reimbursed business expenses may, under certain circumstances, result in a violation of minimum wage laws"). Similarly, in *Smith*, the District of Colorado dismissed a claim for unlawful deductions where plaintiffs did not allege a failure to pay the minimum wage. *Smith v. Mini Mart, Inc.*, Civil Action No. 17-cv-00671-PAB-MEH, 2018 WL 10932965, at *4 (D. Colo. Mar. 26, 2018). As the court explained "[P]laintiffs claim that the expenses they incurred checking gasoline prices and making bank deposits 'effectively' reduced plaintiffs' wages. Such an argument can have relevance to a claim that expenses caused an employee's hourly wages to fall below the minimum wage, but plaintiffs

cite no authority holding that an employer violates the [Colorado Wage Claim Act][3] that form the basis for their claim without actually deducting money from the amounts paid to employees." *Id.* at *4.

      a. Plaintiff's claim is for sub-minimum wages.

Plaintiff's complaint states that Defendant's expense reimbursement policy caused her wages to "drop below legally allowable minimum wage." Pls.' Am. Compl. ¶ 212. Specifically, "Defendants did not reimburse West based on her actual delivery-related expenses" and, as a result, "Defendants failed to pay West minimum wage as required by law." *Id.* ¶¶ 123, 129. Properly read, Plaintiff's claim seeks to recover full minimum wages. Defendant's repeated portrayal of Plaintiff's claim as "deficient" because "the NMMWA does not mandate reimbursement of business expenses" ignores this distinction and misconstrues the complaint. Def.'s Mot. for SJ at 4. Plaintiff does not assert that the NMMWA entitles her to reimbursement for *all* business expenses; she asserts that the NMMWA entitles her to the minimum wage and that an employer does not pay such a wage when it shifts costs onto the employee. *Cf.* Pl.'s Resp. at 7 ("Under Defendants' argument, expenses that a worker bears for the employer have no effect on the employees' wage.").

Defendant's suggestion that Plaintiff must show that her employer deducted these expenses from her paystub is likewise mistaken. Def.'s Reply at 5 nn.2 & 7. Defendant analogizes to *Smith* to argue that an employer only violates the wage law if they "actually deduct[] money from the amounts paid to employees," Def.'s Reply at 5 n.2. As discussed above, *Smith* dismissed a

---

[3] The Colorado Wage Claim Act ("CWCA"), Colo. Rev. Stat. Ann. § 8-4-101, is distinct from the Colorado Minimum Wage of Workers Act ("CMWWA"), § 8-6-101. The first sets standards for timely payment of wages, lawful payroll deductions, and permissible methods of payment. §§ 8-4-102, 105, and 106. The second statute sets a minimum wage for all hourly workers and creates a right for employees to "recover in a civil action the unpaid balance of the full amount of such minimum wage." § 8-6-118. *Smith* dismissed claims brought under the CWCA; it did not dismiss claims brought under the CMWWA. *See Smith*, 2018 WL 10932965, at *1 ("Plaintiffs' third claim alleges that defendant violated the Colorado Wage Claim Act[.]").

reimbursement claim brought under the state's unlawful deduction statute instead of its minimum wage law. *Smith* did not conclude that under-reimbursement suits are inactionable under Colorado's minimum wage law. *Smith*, 2018 WL 10932965, at \*4. In fact, *Smith* explained that evidence of under-reimbursement "can have relevance to a claim that expenses caused an employee's hourly wages to *fall below the minimum wage*." *Id.* (emphasis added). Numerous courts, including this one, have echoed that Colorado's minimum wage statute recognizes insufficient reimbursement as a viable theory. *West v. Bam! Pizza Mgmt.*, 1:22-CV-0209-DHU-JMR, 2024 WL 688571, at \*2 (D.N.M. Feb. 20, 2024) ("The Court finds these new Colorado claims viable, not futile. Courts have found that there is 'no legal difference between deducting a cost directly from a worker's wages and shifting a cost, which they could not deduct, for the employer to bear.'" (citing *Arriaga*, 305 F.3d at 1236)); *Koral v. Inflated Dough, Inc.*, Civil Action No. 13-cv-02216-WYD-KMT, 2014 WL 4904400, at \* 4 (D. Colo. Sept. 29, 2014) ("Based on the totality of the well-pleaded allegations, construing them in the light most favorable to the plaintiff, I find that the Amended Complaint is sufficient to lead to a plausible inference that the under-reimbursement… supports the existence of a federal and Colorado minimum wage violation."); *Darrow v. WKRP Mgmt., LLC*, Civil Action No. 09-cv-01613-CMA-BNB, 2011 WL 2174496, at \*5 (D. Colo. June 3, 2011) ("Therefore, the facts stated in the Amended Complaint raise the plausible inference that (1) Defendants failed to reasonably approximate Plaintiff's vehicle-related expenses, and (2) Plaintiff's wage was reduced to below the federal and Colorado minimum wages for the 2009 time period."). Accordingly, Defendant's demand that Plaintiff provide paystubs confuses the distinction between a claim for an unlawful deduction and one for insufficient wages. Just like the plaintiffs in *Koral*, *Darrow*, and innumerable other class actions premised on the same theory, Plaintiff's claim seeks to recoup delivery-related expenses to bring her wages up to the

legal minimum. She need not submit evidence of payroll deductions, nor identify a statute entitling

her to reimbursement of all business expenses, to do so. *Cf. Lopez v. Fun Eats & Drinks*, No. 3:18-

cv-1091-X, 2021 WL 3502361, at *6 (N.D. Tex. July 16, 2021) ("It does not matter that Defendant

did not deduct the cost of uniforms directly from Plaintiffs' paychecks; by forcing Plaintiffs to

purchase the jerseys themselves, Defendant forced Plaintiffs to kick-back a portion of their

wages."); *see also Hussein*, 502 F. Supp. at 1372; *Waters v. Pizza to You*, 538 F. Supp. 3d 785 (S.D.

Ohio 2021); *Zellagui v. MCD Pizza Inc.*, 59 F. Supp. 3d 712 (E.D Pa. 2014); *Lofton v. EYM Pizza*

*of Ill., LLC*, 725 F. Supp. 3d 857 (N.D. Ill. 2024); *Tyler v. JP Operations, LLC*, 342 F. Supp. 3d

837 (S.D. Ind. 2018).

II.    The NMMWA Provides a Cause of Action for Plaintiff's Claim.

The Court now considers whether the NMMWA enables an employee to sue their employer

if the insufficient reimbursement of delivery-related expenses leads to sub-minimum wages.

Because the Plaintiff's NMMWA claim is before the Court on supplemental jurisdiction, the Court

applies the "substantive laws of the forum state" and is bound by on-point decisions of the state

Supreme Court. *N.Y. Life Ins. Co. v. K N Energy, Inc.*, 80 F.3d 405, 409 (10th Cir. 1996). If there

is no controlling decision from the New Mexico Supreme Court, the Court aims to predict how it

would rule. *Wade v. EMASCO Ins. Co.*, 483 F.3d 657, 666 (10th Cir. 2007). In completing this

analysis, the Court "may seek guidance from decision rendered by lower courts in [New Mexico],

appellate decisions in other states with similar legal principles, district court decisions interpreting

the law of the state in question, and the general weight and trend of authority in the relevant area

of law[.]" *Id.* (internal citations omitted).

Defendant argues that "no New Mexico statute, rule, regulation, or caselaw requires an

employer to reimburse an employee for vehicle-related expenses incurred in the performance of

their job[.]" Def.'s Mot. for SJ at 5. As established above, Defendant's contention that Plaintiff cannot sue under the NMMWA because the claim seeks "reimbursement of business expenses," rather than recovery of unpaid wages, is unavailing. *Id.* at 8-9. The Court will now address Defendant's assertion that unreimbursed expenses do not violate New Mexico's minimum wage law and that the NMMWA's silence on kickbacks dooms Plaintiff's claim. *Id.* at 5.

a. The NMMWA's plain text prohibits kickbacks resulting in sub-minimum wages.

In interpreting a statute, a court's "principal goal" is to "give effect to the Legislature's intent." *In re Grace H.*, 335 P.3d 746, 752 (N.M. 2014). The Court "first turns to the plain meaning of the words at issue," *id.*, considering the "context in which [a statute] was enacted." *Pirtle v. Legis. Council Comm. of N.M. Legislature*, 492 P.3d 586, 592 (N.M. 2021). "Statutes are to be read in a way that facilitates their operation and the achievement of their goals." *Miller v. N.M. Dep't of Transp.*, 741 P.2d 1374, 1376 (N.M. 1987), *superseded by statute on other grounds as recognized by Martinez v. N.M. Dep't of Transp.*, 296 P.3d 468 (N.M. 2013). In particular, the NMMWA is a "statute with a remedial purpose" and "must be construed liberally to accomplish that purpose." *N.M. Dep't of Lab. v. Echostar Commc'ns Corp.*, 134 P.3d 780, 782 (N.M. Ct. App. 2006) (citing *N.M. Dep't of Lab. v. A.C. Elec., Inc.*, 965 P.2d 363 (N.M. Ct. App. 1998)).

On its face, the NMMWA does not address whether business expenses that result in sub-minimum wages are actionable, but the statute's plain text indicates they are. The NNMWA states that "[e]xcept as provided in Subsection C of this section, an employer shall pay to an employee a minimum wage rate." N.M. Stat. Ann. § 50-4-22(A) (2024). The NMMWA then authorizes actions "by any one or more employees for and on behalf of the employee or employees and for other employees similarly situated" to recover "unpaid or under paid minimum wages plus interest[.]" N.M. Stat. Ann. § 50-4-26 (2024). Defendant argues that Plaintiff has "no explanation"

for how this language "leads to a conclusion that BAM was required to reimburse Plaintiff for job-related expenses under New Mexico law, much less at a particular rate, or somehow account for alleged un or under-reimbursed expenses." Def.'s Mot. for SJ at 4, 8. The Court disagrees. New Mexico mandates that employers "shall pay" their employees a minimum wage. N.M. Stat. Ann. § 50-4-22; *State v. Lujan*, 560 P.2d 167, 169 (N.M. 1977) ("The words 'shall' and 'must' generally indicate that the provisions of a statute are mandatory and not discretionary."). As other courts have explained, cost-shifting schemes permit employers to evade this requirement and impede the remedial purpose of minimum wage laws. For instance, in *Waters*, the court certified a class seeking recovery under the FLSA and Ohio's minimum wage law even though Ohio's law, like New Mexico's, does not discuss reimbursement for employment-related expenses. *Waters v. Pizza for You*, No. 3:19-cv-372, 2021 WL 229040, at *3 (S.D. Ohio May 7, 2021). The court explained that "[u]nder the FLSA and Ohio law, wage requirements become meaningless if employers can force employees to 'kick back' money to the employer." *Id.* at *3. The court reached this conclusion based on the text of the statute alone. *Id.* ("Ohio law requires that all employees be paid 'the wages earned by them.'" (citing Ohio Rev. Code Ann. § 4113.15(a) (2021)).

Similarly, in *Rivera*, employees brought under-reimbursement minimum wage claims under the FLSA and Nevada's minimum wage law. *Rivera v. Peri & Sons Farms, Inc.*, 805 F. Supp. 2d 1042, 1050 (D. Nev. 2011). Though the Nevada Supreme Court had not decided whether the state minimum wage law supported this theory of liability, the district court "believe[d] it would adopt it." *Id.* at 1050. The court noted that "federal and state minimum wage laws exist for the same purpose: to ensure minimum compensation for each hour worked." *Id.* "When an employee is required to provide a benefit to an employer as a condition of employment, the hourly

compensation is effectively reduced." *Id.* The Ninth Circuit affirmed that "the Nevada Supreme Court would probably interpret Nevada law to follow federal law on this issue." *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 900 (9th Cir. 2013); *see also Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2018 WL 5800594, at *7 (S.D. Ohio Nov. 6, 2018) (certifying class of pizza delivery drivers who alleged employer failed to pay minimum wages under Ohio Minimum Fair Wages Standard Act); *Graham v. Word Enters. Perry, LLC*, No. 18-cv-0167, 2018 WL 3036313, at *6 (E.D. Mich. June 19, 2018) (denying motion to dismiss for similar claim under Michigan Workforce Opportunity Act); *cf. 303 Beauty Bar LLC v. Div. of Lab. Standards & Stat.*, 568 P.3d 43, 46 (Colo. App. 2025) ("[A] contract that reduces those wages by shifting the employer's costs of doing business to the employee would 'contravene the legislature's manifest intent to prevent contractual waiver or modification of an employer's mandatory obligations' under the Wage Act."). The Court therefore finds that the NMMWA imposes a mandate which, considering the law's remedial purpose, authorizes claims for under-reimbursed business expenses that result in sub-minimum wages.

      b. New Mexico's Department of Workforce Solutions' Manual supports Plaintiff's reading of the NMMWA.

Still, if there were any doubt as to whether New Mexico's mandatory minimum wage prevents an employer from under-reimbursing business expenses, the New Mexico Department of Workforce Solutions ("DWS")'s Investigations Manual resolves it. DWS employees rely on the Manual in investigating and enforcing New Mexico labor law. N.M. Dep't of Workforce Sols., *Investigations Manual*, ii (2019). Although the Manual is not binding on New Mexico courts, it is viewed as a source of persuasive authority. *See, e.g.*, *Wagner v. Air Methods Corp.*, 539 F. Supp. 3d 1157, 1170 (D. Colo. 2021) (finding that Manual's "incorporation of the sleep time rule is persuasive"); *Davis v. Steward Energy II, LLC*, No. 20-966 KG/JHR, 2021 WL 1946406, at *4

(D.N.M. May 14, 2021) (citing to the Manual as one source of support for court's definition of "piecework").

In pertinent part, the Manual states that "[k]ick-backs are deductions" and "cannot bring take-home pay below the minimum wage." Manual at 13, 16. A "kick-back" is defined as "a situation in which an employer pays wages to the employee but then requires the employee to pay back money to the employer or a third party for the benefit of the employer." *Id.* at 13. Examples of such "deductions" or "kickbacks" include the cost of uniforms, tools, or work-related equipment provided by the employer, breakage or loss of equipment or tools, and insurance premiums for vehicle damage. *Id.* at 17.

Defendant objects to the use of the Manual as persuasive guidance in the first instance because it does not "create new law or precedent." Def.'s Mot. for SJ at 7 n.3 (arguing that reliance on the Manual is "misplaced"). It is this Court's responsibility to "predict how the Supreme Court of New Mexico would rule." *Reno v. Bd. of Cnty. Comm'rs*, 577 F. Supp. 3d 1204, 1219 n.5 (D.N.M. 2022) (explaining standard for interpreting state law when exercising supplemental jurisdiction). Given that the Manual offers the sole insight into how New Mexico courts would address this issue, it would be imprudent for the Court to disregard it simply because it is not binding. The Court is also unpersuaded by Defendant's suggestion that because the Manual was published "nearly six years ago," its authority is diminished. Def.'s Reply at 5. Indeed, it would be impractical to require agencies to constantly reaffirm their guidance rather than assume that the rule of law remains stable unless otherwise stated. *Cf. Seggerman Farms, Inc. v. C.I.R.*, 308 F.3d 803, 807 (7th Cir. 2002) ("There is simply no merit to the proposition that precedent somehow becomes less binding solely with the passage of time."). The Court therefore finds that the Manual affirms the NMMWA's clear, remedial purpose in ensuring that all employees receive the minimum

16

wage and unequivocally states that the NMMWA authorizes claims for sub-minimum wages resulting from "kickbacks."  *Cf. Rivera*, 805 F. Supp. 2d at 1050.

III.    Plaintiff's Alleged Under-Reimbursed Delivery-Related Expenses Were Kickbacks.

What remains is whether Plaintiff's alleged delivery-related expenses constituted "kickbacks."  Per the Manual, the delivery expenses are kickbacks if they (1) primarily benefit the employer and (2) are paid to the employer or a third party.  Manual at 13.

a.    FLSA precedent offers appropriate guidance for evaluating Plaintiff's claim.

New Mexico courts have not defined "business expenses" nor issued any cases interpreting the term "kickbacks."  The Court will thus look to federal case law in analyzing Plaintiff's claim.  This approach accords with the New Mexico Supreme Court's instruction that when the FLSA and NMMWA "cover the same subject matter, we attempt to harmonize and construe them together in a way that facilitates their operation and the achievement of their goals."  *A.C. Elec., Inc.*, 965 P.2d at 368.  Further, the Manual states that its standard for unlawful deductions "*adopts the rationale from the FLSA* for allowing such deductions to bring wages below the minimum wage."  Manual at 16 (emphasis added).  The Manual elaborates that:

> For a variety of reasons, there are many sources of law interpreting the FLSA than the MWA. The federal agency that enforces the FLSA, the Wage and Hour Division of the U.S. Department of Labor, has promulgated regulations explaining how the FLSA applies to nearly every factual scenario that may arise in a wage payment dispute. District court and appellate decisions in FLSA lawsuits are also a robust source of information about how to interpret and apply the FLSA. By contrast, there is only a small body of case law interpreting the MWA, and New Mexico regulations interpreting the MWA are silent on many issues … Consistent with the authorities outlined in this section, LRD uses FLSA regulations and other FLSA precedents to interpret several provisions of the MWA or Wage Payment Act ("WPA") in this manual.

Manual at ii-iii.

New Mexico state courts and federal courts in the Tenth Circuit have affirmed the FLSA's

relevance in interpreting the NMMWA. "When interpreting the NMMWA, the Supreme Court of New Mexico has considered law interpreting FLSA to be persuasive." *Payne v. Tri-State CareFlight, LLC*, 332 F.R.D. 611, 688 (D.N.M. 2019); *see, e.g.*, *Valentine v. Bank of Albuquerque*, 697 P.2d 489 (N.M. 1985). In fact, the New Mexico Administrative Code explicitly permits the New Mexico Labor Relations Department to rely on FLSA precedent when making decisions. N.M. Code R. § 11.1.4.118 (2025) ("In making a decision, the [Labor Relations Department] may rely upon definitions used within and decisions relating to the FLSA.").

With such extensive approval of the FLSA as guidance, Defendant's protestation that FLSA cases are "unhelpful" precedent, and their corresponding reliance on *Segura*, is unconvincing. Def.'s Mot. for SJ at 6; Def.'s Reply at 7–8 (citing *Segura v. J.W. Drilling, Inc.*, 355 P.3d 845 (N.M. Ct. App. 2015)). Defendant emphasizes that, although the Manual incorporates portions of the CFR, it does not cite to federal the anti-kickback regulation, 29 C.F.R. § 531.35. Def.'s Reply at 6. Section 531.35 has a slightly different definition of "kickback" than the Manual's. *Compare* 29 C.F.R. § 531.25 (prohibiting employers from forcing an employee to "kickback directly or indirectly to the employer or to another person for the employers benefit the whole or part of the wage delivered"), *with* Manual at 13 (prohibiting employers from forcing an employer "to pay back money to the employer or a third party for the benefit of the employer"). This linguistic variation is incomparable to *Segura*. In *Segura*, the plaintiffs sought compensation under the NMMWA for time spent commuting to and from a worksite. The state trial court had dismissed the plaintiffs' claims, justifying its decision using the Portal-to-Portal Act, a federal statute which prohibits recovery for commuting. *Segura*, 355 P.3d at 849 (citing 29 U.S.C. § 254(a)). On appeal, the court reversed because "the exclusions in the Portal-to-Portal Act are completely absent from the MWA" and, consequently, "the interpretations of the Portal-to-Portal Act in case law are

unhelpful." *Id.* at 848.

The Portal-to-Portal Act simply has no analog in New Mexico law, whereas the FLSA and NMMWA have significant overlap; both are remedial,[4] use mandatory language for the payment of wages,[5] and have accompanying guidance that prohibits unlawful deductions.[6]   Most importantly, and in stark contrast to *Segura*, the Manual incorporates the FLSA's reasoning and regulations throughout the unlawful deduction section.  Manual at 16.  Though the Court reaches no conclusion as to whether the Manual's omission of Section 531.35 was intentional, its absence ultimately has no bearing on the Court's decision.  The New Mexico Supreme Court's emphasis on "harmonizing" the NMMWA and FLSA takes precedent over the minutia of the Manual's citations.  Moreover, whatever differences exist between the FLSA's and the NMMWA's definition of kickbacks, Plaintiff's claim is actionable because it falls within the scope of the Manual's definition of "kickback."

> b.  Requiring employees to bear the cost of delivery-related expenses for the benefit of the employer result in a kickback.

The Court now considers the merits of Plaintiff's claim under the NMWA.  To review, payments an employee makes either to the employer or to a third party are kickbacks if those payments primarily benefit the employer and are illegal if they "bring take-home pay below the minimum wage."  Manual at 13, 16.  Expenses that are primarily for the benefit of the employer

---

[4] *Compare Echostar Commc'ns Corp.*, 134 P.3d at 782 (describing the NMMWA as remedial), *with Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 173 (1989) ("The broad remedial goal of the [FLSA] should be enforced to the full extent of its terms"); *see also Self v. United Parcel Serv., Inc.*, 970 P.2d 582, 588 (N.M. 1998) ("The Minimum Wage Act conveys rights in the form of minimum standards that the legislature intended all state workers to enjoy[.]"); *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 214 (2016) (The federal statute in question is the Fair Labor Standards Act . . . enacted in 1938 to "protect all covered workers from substandard wages and oppressive working hours.").

[5] *Compare* 29 U.S.C. 206(e) ("Every employer shall pay to each of his employees… wages at the following rates."), *with* N.M. Stat. Ann. § 40-4-2022(A) (stating that employers "shall pay to an employee a minimum wage"); *see also Self*, 970 P.2d at 588 (explaining that the NMMWA "imposes [an] obligation" and conveys rights which are "nonnegotiable"); *Citicorp Indus. Credit, Inc. v. Brock*, 483 U.S. 27, 32 (1987) ("The FLSA mandates the payment of minimum wage and overtime compensation to covered employees.").

[6] *Compare* 29 C.F.R. § 531.3 et seq., *with* Manual at 13, 16.

includes "tools of the trade."  *Id.* at 15 (citing 29 C.F.R. § 513.3(d)(2)(i)); *see also Shultz v. Hinojosa*, 432 F.2d 259, 266 (5th Cir. 1970) ("The regulations issued pursuant to authority of Section 3(m) have, ever since the [FLSA's] inception, provided that 'tools of the trade are not "facilities" which an employer may count toward the payment of "wages" required by the statute.'" (cited by Manual at 17 n.6)).  Because the Manual does not define "tools of the trade," the Court looks to courts' interpretation of that term under the FLSA to inform its analysis here.  *See Gandy v. RWLS, LLC*, 308 F. Supp. 3d 1220, 1226 (D.N.M. 2018).

The FLSA prohibits an employer from crediting the cost of "tools of the trade" toward the payment of wages,  and courts consistently designate delivery vehicles as "tools of the trade."  *See, e.g.*, *Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 258 (S.D.N.Y. 2008) ("[T]here is substantial legal authority for the proposition that mechanisms for transportation—typically motor vehicles—can be tools of the trade."); *Benton v. Deli Mgmt., Inc.*, 396 F. Supp. 3d 1261, 1273 (N.D. Ga. 2019) ("Plaintiffs' vehicles are a 'tool of the trade' when they are used for Jason's Deli business."); *Hussein*, 502 F. Supp. 3d at 1372 ("In this context, vehicle expenses incurred by delivery drivers are 'tools of the trade' for the benefit of their employers[.]"); *Graham*, 2018 WL 3036313, at *4 ("An example of such an expense are tools of the trade that the employee must provide which is required to perform the job, such as a personal car that an employee operates to make pizza deliveries."); *Bradford v. Team Pizza, Inc.*, No. 1:20-cv-60, 2021 U.S. Dist. LEXIS 99413, at *19 (S.D. Ohio May 26, 2021)  ("Included in the list of facilities which are considered to be primarily for the benefit or convenience of the employer are "[t]ools of the trade and other materials and services incidental to carrying on the employer's business," 29 C.F.R. § 531.3(d)(2), such as the personal vehicles of employees in the pizza delivery business in this case."); *Brandenburg*, 2018 WL 5800594, at *4 (same).

Here, Plaintiff's vehicle was a tool of the trade because it was incidental to her work for Defendant and, without it, she would have been unable to complete the necessary functions of her work.  The Court is unconvinced by Defendant's recasting of Plaintiff's alleged costs as "indirect kickbacks," Def.'s Mot. for SJ at 1, that fall outside of the Manual's definition of "deduction."  To support this reading, Defendant insists that a kickback must be "direct," meaning that it "involves the subtraction of a monetary amount from the employee's paycheck."  Def.'s Reply at 5.  This rationale is irreconcilable with the Manual's explicit recognition of kickbacks made to a "third party."  Manual at 13.  Plaintiff's alleged expenses were a kickback to Defendant because she paid third parties for gas, insurance, and auto care, for the primary benefit of Defendant.  Summary judgment is therefore inappropriate because whether Defendant's reimbursement rate was sufficient to ensure compliance with minimum wage laws requires further factual investigation. *Garcia v. Koning Rests. Int'l, L.C.*, No. 12-CV-23629-HUCK, 2013 WL 8150984, at *7 (S.D. Fla. May 10, 2013) (granting summary judgment on similar claim where Defendant provided "unrefuted evidence showing that its total reimbursements actually exceed Plaintiff's claimed gas expenses of $60 to $72 per week").  Although Defendant's compensation scheme may eventually prove to be sufficient, that cannot be determined prior to discovery.  *Blose v. Jarinc, Ltd.*, No. 1:18-cv-02184-RM-SKC, 2020 WL 5513383, at *2 (D. Colo. Sept. 14, 2020) ("Accordingly, the Court follows the precedents from this and other districts and holds that, as a matter of law, an employer may reasonably approximate vehicle expenses when reimbursing its employees.  The question of whether Defendant' method of approximating Plaintiffs' expenses is in fact reasonable remains to be answered in this litigation.").

The Court therefore concludes that (1) the NMMWA provides a cause of action for kickbacks that drive an employee's pay below the legal minimum and (2) under-reimbursed

delivery expenses provide a kickback to an employer.  Defendant's motion for summary judgment is DENIED.

IV.    The Court Will Not Certify This Question to the New Mexico Supreme Court.

Defendant asked the Court, as an alternative to ruling on their summary judgment motion, to certify this issue for consideration before the New Mexico Supreme Court.  Def.'s Mot. for SJ at 11.  The New Mexico Supreme Court will answer questions of law certified by a federal court if "(1) the answer may be determinative of an issue in pending litigation in the certifying court and (2) the question is one of which answer is not provided by a controlling (a) appellate opinion of the New Mexico Supreme Court or the New Mexico Court of Appeals; or (b) constitutional provision or statute of this state."  N.M. R. App. P. 12-607(A)(1).  The Tenth Circuit has instructed courts to not "trouble our sister state courts every time an arguably unsettled question of state law comes across our desks.  When we see a reasonably clear and principled course, we will seek to follow it ourselves."  *Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007).  It is only when "important and close questions of state policy arise" that certification is appropriate to "save time, energy, and resources and help build a cooperative judicial federalism."  *United States v. Reese*, 505 F. App'x 733, 734 (10th Cir. 2012) (internal citation omitted).

In light of the federal cases approving class actions under state minimum wage laws, the consistent use of FLSA precedent in New Mexico state courts, and the Investigation Manual's guidance on kickbacks, Defendant's concern that Plaintiff's claim will force the Court to "resolve a number of policy questions as to the scope of reimbursement requirements" and "fashion[] new legislation" is uncompelling.  Def.'s Mot. for SJ at 11–12.  The authorities cited in this order chart a "reasonably clear and principled course" for resolving Plaintiff's NMMWA claims without state court intervention.  *Pino*, 507 F.3d at 1236.  The Court DENIES Defendant's request for

certification to the New Mexico Supreme Court.

**CONCLUSION**

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment as to

Plaintiff's wage claim under the New Mexico Minimum Wage Act is **DENIED**.

_____

**SARAH M. DAVENPORT**
**UNITD STATES DISTRICT JUDGE**

23