## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

DEBORAH WEST,

      Plaintiff,

v.                                                                    No. 1:22-cv-00209-SMD-JMR

BAM! Pizza Management, Inc., et al.,

      Defendants.

## ORDER DENYING DEFENDANTS' MOTION FOR INTERLOCUTORY APPEAL

THIS MATTER is before the Court on Defendants' motion for interlocutory appeal, Doc. 300 ("Defs.' Mot. for Interlocutory App."). The Court previously denied Defendants' motion for summary judgment, Doc. 299 (the "Order"), and held that the New Mexico Supreme Court would permit Plaintiff's Rule 23 class action, alleging that Defendants' failure to properly reimburse delivery drivers for vehicle-related expenses resulted in sub-minimum wages, to proceed under the New Mexico Minimum Wage Act ("NMMWA"), N.M. Stat. Ann. § 50-4-22. Defendants now challenge the Order under 28 U.S.C. § 1292(b), seeking an interlocutory appeal to the Tenth Circuit. Defs.' Mot. for Interlocutory App. at 1. The central question they ask to certify is "[w]hether the NMMWA provides Plaintiff and putative members of a New Mexico class with a viable theory of liability" for their under-reimbursement (or "kickback") claims. *Id.* at 4. Plaintiff responded, Doc. 301 ("Pl.'s Resp."), opposing Defendants' motion and Defendants replied, Doc. 303 ("Defs.' Reply"). For the reasons discussed below, and after reviewing the relevant law and filings, Defendants' motion is **DENIED**.

## BACKGROUND

The Court incorporates its previous summary of the relevant facts and procedural background. *See* Order at 1–2.

1

**LEGAL STANDARD**

District courts have "first line discretion to allow interlocutory appeals," *Swint v. Chambers Cnty., Comm'n*, 514 U.S. 35, 47 (1995). To warrant interlocutory appeal under § 1292(b), all three of the following factors must be met: (1) the issue must involve a controlling question of law; (2) as to which there is substantial ground for difference of opinion; and (3) answering that question would materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b). The moving party bears the burden of establishing each element. *White v. Nix*, 43 F.3d 374, 376 (8th Cir. 1994).

Although § 1292(b) provides a path to appellate review before the final disposition of a case, it is employed "sparingly" *Camacho v. Puerto Rico Ports Auth.*, 369 F.3d 570, 573 (1st Cir. 2004). Interlocutory appeals "tend to disrupt and delay the underlying proceedings," *Carpenter v. Boeing Co.*, 456 F.3d 1183, 1189 (10th Cir. 2006), and can have a "debilitating effect on judicial administration," *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 170 (1974). These concerns are no less pressing in § 1292(b) appeals. *See Koehler v. Bank of Bermuda, Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996); *Utah ex rel. Utah State Dep't of Health v. Kennecott Corp.*, 14 F.3d 1489, 1495 (10th Cir. 1994). Section 1292(b) is thus "not intended to make denials of summary judgment routinely appealable." *Ahrenholz v. Bd. of Trustees of Univ. of Ill.*, 219 F.3d 674, 676 (7th Cir. 2000). Rather, courts permit § 1292(b) appeals in those "extraordinary cases" where "extended and expensive proceedings probably can be avoided by immediate final decision of controlling questions encountered early in the action." *Id.* (quoting S. Rep. 2434, 85th Cong., 2d Sess. 1 (1958)); *see also Koehler*, 101 F.3d at 865 (explaining that § 1292(b) was intended as a "rare exception to the final judgment rule that generally prohibits piecemeal appeals").

Upon careful consideration of the parties' arguments, the Court finds that interlocutory appeal is not appropriate in this case. Defendants have met their burden as to the first factor, but have failed to demonstrate that a "substantial ground for difference of opinion" exists and that an appeal would materially advance the termination of this litigation. The Court therefore denies Defendants' request for interlocutory appeal.

I.    Whether the New Mexico Minimum Wage Act Recognizes Plaintiff's Claim for Under-Reimbursement of Delivery-Related Expenses is a Controlling Question of Law.

A "question of law" goes to "the meaning of a statutory or constitutional provision, regulation, or common law doctrine rather than to whether the party opposing summary judgment had raised a genuine issue of material fact." *Ahrenholz*, 219 F.3d at 676. If the court must "delve beyond the surface of the record" and engage in factual analysis to resolve the appeal, it is not a "question of law." *Dorato*, 163 F. Supp. 3d at 879 (citing *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004)). The question must also be controlling, meaning that answering it would "materially affect the outcome of the case." *In re City of Memphis*, 293 F.3d 345, 351 (6th Cir. 2002).

The Court and the parties agree that Defendants have met their burden as to the first factor. *See* Pl.'s Resp. at 4; Defs.' Reply at 1. Defendants' motion for summary judgment alleged that Plaintiff's NMMWA claim failed as a matter of law. Because this presents an issue of pure statutory construction, and involves no factual analysis, it is a question of law. *Ahrenholz,* 219 F.3d at 676–77 ("We think they used 'question of law' in much the same way a lay person might, as referring to a 'pure' question of law rather than merely to an issue that might be free from a factual contest."). The question is also controlling because it determines which laws the class may proceed under and the amount of relief available. *Dorato*, 163 F. Supp. 3d at 879.

II.    Defendants Have Not Shown that a Substantial Ground for Difference of Opinion
Exists.

A substantial ground for difference of opinion may arise in four distinct scenarios: (1) the

trial court ruled in a manner contrary to all courts of appeals which have reached the issue; (2) the

circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the

point; (3) the case presents a complicated issue of foreign law; or (4) novel and difficult questions

of first impression are presented.  *Couch v. Telescope, Inc.*, 611 F.3d 629, 633 (9th Cir. 2010)

(citing 2 Fed. Proc., L. Ed. § 3:212 (2010)).  Defendants concede that "[t]here is no ruling from a

court of appeal or dispute among the circuits to discuss," Defs.' Reply at 2, and instead urge that

the novelty of this case justifies appeal, Defs.' Mot. for Interlocutory App. at 3–6.

Novelty, however, is not enough. Defendants must demonstrate that the question is

"difficult," *Couch*, 611 F.3d at 633, and articulate a strong legal argument "in opposition to the

challenged ruling" to prove the issue is "truly one on which there is a substantial ground for

dispute."  *Id.* at 634 (quoting *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996) ("[T]he mere presence

of a disputed issue that is a question of first impression, standing alone, is insufficient to

demonstrate a substantial ground for difference of opinion.")) (per curiam); *Dorato v. Smith*, 163

F. Supp. 3d 837, 880 (D.N.M. 2015) (same); *Max Daetwyler Corp. v. Meyer*, 575 F. Supp. 280,

283 (E.D. Pa. 1983) (same).  This requirement applies with equal force to unanswered questions

of state law.  *Couch*, 611 F.3d at 634 ("Nor does the fact that no California court has addressed the

precise questions at issue satisfy the requirement of a substantial ground for disagreement, as the

district court properly recognized."); *see, e.g.*, *Trotter v. Perdue Farms, LLC*, 168 F. Supp. 2d 277,

288 (D. Del. 2001) (denying interlocutory appeal even though question presented an "issue of first

impression" because the "great weight of authority on analogous state law claims" supported

court's holding).  Because the second factor is concerned with whether courts would reach

differing conclusions on the same issue, "counsel's contention that one precedent rather than another is controlling," or "disagreement, even if vehement," does not warrant appeal.  2 Fed. Proc. L. Ed. § 3:217 (2025); *Dorato*, 163 F. Supp. 3d at 880.

      A.   There is no genuine ground for dispute over the Court's citations, the plain text of Plaintiff's complaint, or the plaint text of the Manual.

The Court begins by disposing of Defendants' more far-fetched arguments.  First, Defendants question the "relevance" of this Court's observation that "numerous other courts" have certified FLSA class actions[1] alleging a minimum wage violation resulting from the under-reimbursement of expenses.  Defs.' Mot. for Interlocutory App. at 7; Order at 4.  Defendants are specifically concerned about these citations because "the standard for class certification is separate and apart from the standard for summary judgment."  Defs.' Mot. for Interlocutory App. at 7.  The Court did not cite these cases in stating the standard for, nor in ruling on, summary judgment; they were cited for the principle that kickback claims are "well-established" under the FLSA.  Order at 3.  Seeing as Defendants do not dispute that fact, there is no doubt as to the "relevance" of cases affirming it.

Next, the Court rejects Defendants' submission that a court might "reasonably determine that Plaintiff's NMMWA claims are more properly characterized as claims to recover unlawful deductions under the Wage Payment Act, which has not been pled."  Defs.' Mot. for Interlocutory App. at 6.  A plaintiff is the master of their complaint and is "always free to choose the statutory

---

[1] Defendants seek to clarify that "the FLSA would also not be certified as a class action, but as a collective action." Defs.' Mot. for Interlocutory App. at 6 n.2.  This Court is well-aware of this distinction, *see Lyles v. T & Ds Lube Doctors LLC*, No. 2:24-cv-00728-SMD-KRS, 2025 WL 1736807, at *7 (D.N.M. June 23, 2025) (J., Davenport) (discussing differences between Rule 23 class actions and FLSA collective actions), and uses the word "class" for "ease of understanding" when discussing suits alleging both an FLSA collective and a Rule 23 class action.  The Court directs Defendants to the Tenth Circuit's note in *Thiessen* to assuage any further concerns about this practice: "Many courts and commentators, however, have used the vernacular of the Rule 23 class action for simplification and ease of understanding when discussing representative cases brought pursuant to § 16(b) of the FLSA."  *Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1102 n.3 (10th Cir. 2001).

provisions under which they will bring their claims." *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 216 n.7 (2d Cir. 2013); *Margheim v. Buljko*, 855 F.3d 1077, 1087 (10th Cir. 2017) (noting that a plaintiff is entitled "to pursue the theory of liability he deems best" and defendants cannot decide "the basis of his claim"). No "reasonable court" would entertain Defendants' impetration to rewrite Plaintiff's complaint based on Defendants' own legal theories. *See* Pl.'s Resp. at 6 (reiterating that "Plaintiffs have not pled claims to recover unlawful deductions under the Wage Payment Act"); *see also Pirotte v. HCP Prairie Vill. KS OPCO LLC*, 580 F. Supp. 3d 1012, 1025 (D. Kan. 2022) ("[P]laintiff is the master of his Complaint . . . and reshaping his allegations so they suit defendants' arguments ignores that governing principle."). Any conflicting precedent or "difficult questions" that would arise under New Mexico's Wage Payment Act are impertinent to the present motion.

Lastly, the Court dismisses Defendants' objections to its reading of the Department of Workforce Solutions Investigations' Manual (the "Manual"). *See* Order at 15. Defendants posit that a "reasonable court" might disagree with the Court's Order because "the Manual does not address reimbursement [under the NMMWA; only mentions [sic] kickbacks in its interpretation of the Wage Payment Act." Defs.' Mot. for Interlocutory App. at 8. Defendants correctly observe that the Manual's definition of "kickback" is located within its section on the Wage Payment Act. *See* N.M. Dep't of Workforce Sols., *Investigations Manual*, 21 (2025); Defs.' Mot. for Interlocutory App. at 8. That paragraph recognizes that "kick-backs are deductions." *Manual* at 21. The Manual then states that, under the New Mexico Minimum Wage Act, "[d]eductions cannot bring take-home pay below the minimum wage." *Id.* at 25. Reading on, the text explains that a mutually authorized deduction, which is primarily for the benefit of the employer, may be "permissible under the WPA," but is "curbed by Section 50-4-22(A) of the MWA and cannot bring

the employee's pay below minimum wage." *Id.* Put differently, kickbacks cannot bring an employee's pay below minimum wage. Although courts may differ in how much weight they give the Manual, the plain meaning of its text is clear.

      B. Defendants have not demonstrated that *Segura* creates a substantial ground for difference of opinion on the use of FLSA precedent to construe the NMMWA.

The Court now moves to the gravamen of Defendants' argument—that a court could interpret *Segura v. J.W. Drilling*, 355 P.3d 845 (N.M. Ct. App. 2015) to mean that "it is inappropriate to extrapolate from FLSA regulations and interpreting case law to predict how a New Mexico court would interpret the silence of the NMMWA." Defs.' Mot. for Interlocutory App. at 4. The Court already rejected this contention. *See* Order at 18; Defs.' Mot. for Interlocutory App. at 4 (acknowledging that *Segura* was "previously briefed" in Defendants' motion for summary judgment). Nonetheless, Defendants aver that (1) there is an absence of controlling authority on whether the NMMWA permits Plaintiff's claim and (2) *Segura* evinces "conflicting approaches to resolving the silence." Defs.' Mot. for Interlocutory App. at 3, 4. The Court will not rehash the entirety of its prior reasoning, but reiterates a few points to illustrate why courts are unlikely to adopt Defendants' reading.

In analogizing to *Segura*, Defendants erroneously equate statutes with regulations. *Segura* held that "when the language of the MWA and FLSA differ, we treat federal case law differently." 355 P.3d at 848; *see also N.M. Dep't of Lab. v. Echostar Commc'ns Corp.*, 134 P.3d 780, 783 (N.M. Ct. App. 2006) (declining to follow federal interpretations of "regular rate of pay" when interpreting the same under the NMWMA, in part because the "authorities relied upon addressed a differently worded statute"). The Court never disputed this principle—it simply found it irrelevant. Still, Defendants urge that, just like in *Segura*, "the kickback regulations relied upon by Plaintiff <u>also</u> have no analog under the NMMWA or its regulations." Defs.' Mot. for

Interlocutory App. at 6. But courts do not begin their analysis by comparing state and federal regulations; they begin with the statutes' language and then, if they mirror one another, consider related regulations and caselaw. *E.g.*, *Garcia v. Am. Furniture Co.*, 689 P.2d 934, 937 (N.M. Ct. App. 1984). The FLSA and NMMWA contain nearly identical minimum wage provisions. *Compare* 29 U.SC. § 206(a)(1), *with* N.M. Stat. Ann. § 50-4-22(A); *cf. Segura*, 355 P.3d at 849 ("The problem for us with [using DOL's interpretation] is that it is based on *explicit language in the federal statute* . . . there simply is no similar language in the MWA." (emphasis added)). *Segura* recognizes the use of federal authority when that is the case. 355 P.3d at 848. However, because *Segura* did not confront parallel statutory provisions, it offers no direction on how to apply federal regulations when the FLSA and NMMWA overlap.

Luckily, other cases do. The NMMWA often lacks regulations elaborating on its terms.[2] New Mexico courts look to the Code of Federal Regulations ("CFR"), FLSA precedent, and other federal authority to fill in these gaps. For example, in *Sinclaire*, the New Mexico Court of Appeals considered how to define "workweek" under the NMMWA, noting that it was not "crystal clear." *Sinclaire v. Elderhostel, Inc.*, 287 P.3d 978, 980 (N.M. Ct. App. 2012). Over plaintiff's objection, the court incorporated the term as set out in the CFR. *Id.* (citing 29 C.F.R. § 778.105 (2011)). Similarly, the court in *Corman* determined that the FLSA shared "a provision similar to the NMMWA's 'commission' exception." *Corman v. JWS of N.M., Inc.*, 356 F. Supp. 3d 1148, 1187 (D.N.M. 2018). The court relied on "persuasive authority considering the FLSA," including federal regulations, to construe that exception. *Id.* (citing 29 C.F.R. § 779.416(c)). *Armijo* found that the NMMWA "does not the define the term similarly situated." *Armijo v. Wal-Mart Stores, Inc.*, 168 P.3d 129, 144 (N.M. Ct. App. 2007). It then turned to the FLSA's "similar provision

---

[2] *See* Manual at ii ("New Mexico regulations interpreting the MWA are silent on many issues . . . However, New Mexico regulations interpreting the MWA grant the LRD discretion to use FLSA precedents to interpret the MWA.").

allowing for similarly situated employees to maintain a collective action" and "look[ed] to federal cases construing § 216(b) of the FLSA for guidance." *Id.*; *see also Garcia*, 689 P.2d at 937; *Arnold v. Schlumberger Tech. Corp.*, No. 10CV346 MCA/LAM, 2010 WL 9007208, at *7 (D.N.M. Oct. 29, 2010) ("The Court . . . will look for guidance to federal cases construing the term 'accrue,' as that term is used in the Federal Labor Standards Act, a practice approved by the state courts of New Mexico.").

The rule that these cases, and *Segura* itself, evince is that the pertinent question is whether the FLSA and NMMWA share similar statutory language. If they diverge, the FLSA is an inept guide. If they overlap, the FLSA is persuasive. *See* Manual at iii ("[S]everal New Mexico appellate decisions, [] hold that FLSA regulations and precedents may be used as persuasive authority to interpret requirements of the MWA that are similar or identical to the FLSA."); *id.* at 24 (explaining that deductions under the NMMWA "adopts the rationale from the FLSA for allowing such deductions to bring wages below the minimum wage").

The Ninth Circuit's decision in *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 900 (9th Cir. 2013) affirms this distinction. There, the plaintiffs had alleged "that [defendant] failed to pay the Nevada minimum wage under the same kickback theory on which they relied for their FLSA claims." *Id.* Though Nevada courts had not considered this theory of liability, the district court found that Nevada would likely extend the federal anti-kickback rule to its minimum wage law. *See Rivera v. Peri & Sons Farms, Inc.*, 805 F. Supp. 2d 1042, 1050 (D. Nev. 2011). On appeal, defendants challenged the trial court's approach and argued "that the Nevada courts would not interpret state law to follow federal law on this issue." *Id.* Concordant with this Court's reasoning, the Ninth Circuit found that the cases defendant cited in support of this proposition "merely indicate[d] that the Nevada courts do not interpret state law in accordance with federal law when

9

the relevant statutes contain materially different language." *Id.* at 900–01 (first citing *Boucher v. Shaw*, 196 P.3d 959, 963 n.27 (Nev. 2008); and then citing *Dancer v. Golden Coin, Ltd.*, 176 P.3d 271, 274 (Nev. 2008) (departing from federal law on question of including tips in minimum wage calculation because "the state and federal statutes used significantly different language")). Those cases were immaterial because, like here, Nevada's wage law was "not textually inconsistent with federal law." *Id.* at 901. The Ninth Circuit then upheld the lower court's decision that the Nevada Supreme Court would adopt the kickback theory. *Id.* at 900; *see* Order at 15 (discussing *Rivera*).

In analyzing the strength of Defendants' argument, the Court cannot ignore, as Defendants have chosen to, the aforementioned precedent undermining Defendants' reliance on *Segura*. *Max Daetwyler*, 575 F. Supp. at 283 ("It is the duty of the district judge faced with a motion for certification to analyze the strength of the arguments in opposition to the challenged ruling."); *Martinez v. Allstate Ins. Co.*, No. CIV 96-1031 MV/JHG, 2000 WL 36739834, at *4 (D.N.M. June 1, 2000) (same). Defendants never address New Mexico's habitual use of FLSA precedent in construing the NMMWA, nor do they explain why this case hews more closely to *Segura* than a case like *Sinclaire*.[3] Defendants also fail to reconcile their position with the New Mexico Supreme Court's instruction that "statutes covering the same subject matter should be harmonized and construed together when possible, in a way that facilitates their operation and the achievement of their goal." *State ex rel. Schwartz v. Sanchez*, 936 P.2d 334, 335 (N.M. 1997); *see, e.g.*, *N.M. Dep't of Lab. v. A.C. Elec., Inc.*, 965 P.2d 363, 368 (N.M. Ct. App. 1998) (applying *Sanchez* and harmonizing the NMMWA with the FLSA); *Sinclaire*, 287 P.3d at 981 ("[T]here is nothing in the MWA or our case law that would preclude our interpreting the MWA as being consistent with the

---

[3] Defendants characterize the *Rivera* district court's recognition of federal kickback theory under state law as "dicta." Defs.' Reply at 4. Defendants never address Ninth Circuit's discussion of that "dicta" nor its affirmation that Nevada courts would likely follow federal law on this issue.

FLSA.").  This omission is significant, as *Segura* is not binding precedent, *Am. Cas. Co. v. Health Care Indem., Inc.*, 520 F.2d 1131, 1139 (10th Cir. 2008) ("[A] decision by a state intermediate appellate court is not binding on us with respect to matters of state law."), but *Sanchez* is, *id.* at 1138 ("We are, of course, bound by declarations of state law in decisions of the state's highest court.").  In sum, Defendants have only shown their avid disagreement with the Court's choice to rely on FLSA precedent—not a substantial ground for difference of opinion among the courts. *Lynn v. Monarch Recovery Mgmt., Inc.*, 953 F. Supp. 2d 612, 626 (D. Md. 2013) "[F]or purposes of § 1292(b), the litigants' positions are irrelevant—otherwise, every contested decision would be appropriate for immediate interlocutory appeal.  What matters is whether the movant has shown substantial ground for difference of opinions among the courts.").

> C. Defendants have not identified any cases conflicting with the Court's determination that under-reimbursement of delivery-related expenses may violate an employee's right to the minimum wage.

The Court next considers if there is room for disagreement over whether delivery-related expenses can drive an employee's wages below the legal minimum.  It finds there is not. Defendants do not cite any cases that contradict that conclusion.  Instead, they assert "that interpretations of other states' laws do not speak to how the New Mexico Supreme Court would interpret New Mexico state law."  Defs.' Mot. for Interlocutory App. at 4.  It is worth noting that New Mexico courts themselves rely on "interpretations of other states' laws" when construing the NMMWA's provisions.  *See, e.g.*, *A.C. Elec., Inc.*, 965 P.2d at 367 (looking to Maine Supreme Court's definition of the term "require" in interpreting NMMWA's overtime provision); *Echostar*, 134 P.3d at 782 (citing to Alaska and California cases in establishing the purpose of the NMMWA).  More importantly, Defendants' position disregards how district courts are mandated to address novel issues of state law.  It is this Court's duty to predict how the New Mexico Supreme

Court would rule when confronted with an unanswered question of state law, *Wade v. EMCASCO*, 483 F.3d 657, 666 (10th Cir. 2007). That obligation requires it to consider "decisions rendered by lower courts in the relevant state, appellate decisions in other states with similar legal principles, district court decisions interpreting the law of the state in question, and the general weight and trend of authority in the relevant area of law." *Id.*

Here, the general weight and trend of authority overwhelmingly favors Plaintiff. Every court to consider minimum wage claims for under-reimbursed expenses has reached the same conclusion. *See, e.g.*, *Rivera*, 805 F. Supp. 2d at 1050; *Zellagui v. MCD Pizza, Inc.*, 59 F. Supp. 3d 712, 715 (E.D. Pa. 2014) (recognizing that under state and federal law employers must "reimburse hourly-paid employees who drive for work to cover the vehicle-related expenses they incur so their hourly wages do not fall below the minimum when those expenses are taken into account"); *Perrin v. Papa John's Int'l, Inc.*, 114 F. Supp. 3d 707, 721 (E.D. Mo. 2015) (finding material questions of fact precluded summary judgment in action alleging violation of FLSA and five state minimum wage laws by "failing reasonably to approximate the delivery drivers' automotive expenses for reimbursement purposes"); *Gaxiola v. Williams Seafood of Arapahoe, Inc.*, 776 F. Supp. 2d 117, 132 (E.D.N.C. 2011) ("[W]hether the issue of wages is analyzed under the FLSA or [North Carolina Wage and Hour Act], 'there is no legal difference between deducting a cost directly from the workers' wages and shifting a cost, which they could not deduct, for the employee to bear.'" (quoting *Garcia v. Frog Island Seafood*, No. 2:06-CV-46-F, Class Cert. Order at 7–8 (E.D.N.C. 2009)); *Lofton v. EYM Pizza of Ill., LLC*, 725 F. Supp. 3d 857, 862 (N.D. Ill. 2024) (recognizing that, under Illinois minimum wage law and federal law, "the cost associated with delivering food for an employer is a 'kickback' to the employer that must be fully reimbursed, lest a minimum wage violation be triggered"); *Waters v. Pizza to You, LLC*, No. 3:19-CV-372,

2021 WL 229040, at *3 (S.D. Ohio Jan. 22, 2021) ("Under the FLSA and Ohio law, wage requirements become meaningless if employers can force employees to 'kick back' money to the employer.").

Defendants brush aside these cases on the premise that "this motion does not concern differing opinions, but the lack of opinions." Defs.' Reply at 5. The Court understands that Plaintiff's kickback theory is "novel" in the sense that New Mexico courts have not addressed it. The Court also understands that Defendants consider FLSA precedent, out-of-state laws, New Mexico administrative guidance, and other New Mexico cases to be inaccurate indicators of how the New Mexico Supreme Court would rule. Yet Defendants' isolationist approach does not mean a question of first impression is "difficult," nor does it alleviate them of their responsibility to articulate a compelling alternative to the Court's interpretation of the NMMWA. *Union Cnty., Iowa v. Piper Jaffray & Co.*, 525 F.3d 643, 647 (8th Cir. 2008) (explaining "a dearth of cases" does not constitute "substantial ground for difference of opinion"); *Couch*, 611 F.3d at 633. And what Defendants offer in exchange for the authorities they dismiss—a singular, non-binding case from the New Mexico court of appeals—does not suffice. *Cf. Couch*, 611 F.3d at 634 ("The presence of a single, non-binding, advisory opinion by a division of the California Attorney General's office is not a "substantial" ground for disagreement as to the controlling law."). Given that Defendants have not provided a single case that contradicts the Court's decision, the Court sees no "substantial ground" for debate over whether under-reimbursed expenses can result in sub-minimum wages. *Id.* at 633 ("Significantly, defendants have not provided a single case that conflicts with the district court's construction or application of [the statute]."); *see also XTO Energy, Inc. v. ATD, LLC*, 189 F. Supp. 3d 1174, 1205 (D.N.M. 2016) (denying certification under § 1292(b) where movant failed to "point to an on-point case, from any court, with which the Court

had to disagree"); *IBT Emp. Grp. Welfare Fund v. Compass Mins. Int'l, Inc.*, 723 F. Supp. 3d 1053, 1057 (D. Kan. 2024) (denying § 1292(b) certification because movant had not "cited any judicial opinions that directly contradict the court's rulings" and court therefore had "little issue with remaining 'convinced that its analysis is correct'" (citation omitted)); *Trotter*, 168 F. Supp. 2d at 288 (same).

Lastly, as a matter of pure logic, the Court struggles to understand how Defendants' interpretation of the law would comport with employers' duty to pay employees the minimum wage. The conceit of the NMMWA is to provide a living wage for workers throughout the state. *Self v. United Parcel Serv., Inc.*, 970 P.2d 582, 588 (N.M. 1998) ("The Minimum Wage Act conveys rights in the form of minimum standards that the legislature intended all state workers to enjoy."). The Court must read its terms "in a way that facilitates [its] operation and the achievement of [its] goals." *Miller v. N.M. Dep't of Transp.*, 741 P.2d 1374, 1376 (N.M. 1987), *superseded by statute on other grounds*, N.M. Stat. Ann. § 41-4-3(E)(1), *as recognized in*, *Martinez v. N.M. Dep't of Transp.*, 296 P.3d 468 (N.M 2013). Defendants fail to illuminate how the unfettered shifting of business expenses to employees would not frustrate, if not completely obliterate, that purpose. *See Mayhue's Super Liquor Stores, Inc. v. Hodgson*, 464 F.2d 1196, 1199 (5th Cir. 1972) (finding that agreement which shifted expenses to employees "amount[ed] to nothing more than an agreement to waive the minimum wage requirements" of the FLSA); *Arriaga v. Fla. Pac. Farms, LLC*, 305 F.3d 1228, 1236 (11th Cir. 2002); *Rivera*, 805 F. Supp. 2d. at 1050 (extending federal kickback theory to Nevada state wage claims because "federal and state minimum wage laws exist for the same purpose"). Defendants' proposal would also produce a sizeable gap in relief. New Mexico's minimum wage is more than one and a half times

the federal rate.[4]  Under Defendants' scheme, employers could burden workers with nearly five

dollars of expenses per hour and escape liability so long as they did not leave a paper trail.  *See*

Defs.' Mot. for Summary Judgment, Doc. 238, at 7 (arguing that Plaintiff's claim fails "in the face

of her paystubs").  Such an arrangement is repugnant to the New Mexico legislature's decision to

raise state wages above the federal level.  *See Self*, 970 P.2d at 585 n.2 ("[T]he Minimum Wage

Act provides nonnegotiable minimum standards."); *cf. Echostar*, 134 P.3d at 782 (refusing to

construe the NMMWA in a way that would "lessen the financial impact on employers the more

hours that employees are required to work").

Defendants have not stated an interpretation of the NMMWA that aligns with either

precedent or policy.  The Court therefore finds that the second factor is not met.

III. Interlocutory Appeal Will Not Materially Advance the Termination of Litigation.

The final consideration—whether interlocutory appeal will materially advance the

termination of litigation—weighs decisively against Defendants.    The Tenth Circuit has

recognized that advancing litigation is one of § 1292(b)'s primary purposes.  *Kennecott Corp.*, 14

F.3d at 1495.  An appeal materially advances litigation if it (1) eliminates the need for trial, (2)

eliminates complex issues so as to simplify the trial, or (3) eliminates issues to make discovery

easier and less costly.  *XTO Energy, Inc.*, 189 F. Supp. 3d at 1195 (citations and quotations

omitted).  Contrastingly, "[w]hen litigation will be conducted in substantially the same manner

regardless of the court's decision, the appeal cannot be said to materially advance the ultimate

termination of the litigation."  *Id.*  This prong ultimately turns on "pragmatic" concerns "assessed

by reviewing the procedural and substantive status of the case with respect to the progress or

completion of discovery, the disposition of pretrial motions, the extent of the parties' preparation

---

[4] As of January 1, 2023, the New Mexico minimum wage is twelve dollars per hour.  N.M. Stat. Ann. § 50-4-22(A)(5).
The federal minimum wage is seven dollars and twenty-five cents per hour.  29 U.S.C. § 206(a)(1)(C).

for trial and the nature and scope of the requested relief." *Keller v. Bd. of Educ.*, No. CV 00-1667 MV/LFG, 2002 WL 35650124, at *2 (D.N.M. Jan. 28, 2002).

Defendants contend that an appeal would advance this suit because "the result could facilitate settlement discussions," due to (1) the difference between the FLSA and NMMWA's statutes of limitations and (2) the NMMWA providing for treble damages otherwise unavailable. Defs.' Mot. for Interlocutory App. at 7–8. Plaintiff counters that interlocutory appeal would not aid in the conclusion of this suit because she "also asserts wage and rest break claims under Colorado law and unjust enrichment under New Mexico, Colorado, and Texas law." Pl.'s Resp. at 8. "And, because both the FLSA, Colorado statutory claims, and NMMWA claims are all predicated on Defendants' failure to adequately reimburse the Plaintiffs' business expenses, the litigation will be conducted in the same manner regardless of the court's decision." *Id.* The consequence of appeal would thus be to "delay, rather than expedite, the ultimate termination of the litigation." *Id.* at 9. Defendants reply that they need not "prove litigation will be 'expedited by an interlocutory appeal.'" Defs.' Reply at 6. Instead, they believe the third factor is met where appeal "would determine the appropriate law to apply at trial or whether a statute applies at all." *Id.*

The Court finds no tension between Plaintiff and Defendants' proposed standards. Rather, it agrees with Defendants that determining which law applies may fulfill the third factor *if* that resolution materially advances the litigation. *Villarreal v. Caremark LLC*, 85 F. Supp. 3d 1063, 1072 (D. Ariz. 2015) ("If the present appeal promises to advance the time for trial or to shorten the time required for trial, appeal is appropriate."). Defendants err, however, to the extent that they discredit the idea that appeal must "expedite" the litigation. Defs.' Reply at 6. An essential function of a § 1292(b) appeal is to in some way "accelerate" "simplify" or "expedite" the case.

*Kennecott Corp.*, 14 F.3d at 1495; *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004) (explaining that third factor is met where appeal "would serve to avoid a trial or otherwise substantially shorten the litigation"); *Ryan v. Flowserve Corp.*, 444 F. Supp. 2d 718, 723 (N.D. Tex. 2006) ("Stated another way, § 1292(b) is designed to minimize burdens "by accelerating or . . . simplifying trial court proceedings."); *Wang v. Zymergen Inc.*, 759 F. Supp. 3d 1002, 1011 (N.D. Cal. 2024) ("The ultimate question is whether permitting an interlocutory appeal would minimize the total burdens of litigation on parties and the judicial system by accelerating or at least simplifying trial court proceedings." (citation omitted)); *U.S. ex rel. Pogue v. Diabetes Treatments Ctrs. of Am.*, 576 F. Supp. 2d 128, 133 (D.D.C. 2008) (denying certification because "delaying proceedings pending review would not expedite ultimate termination of this litigation").

Defendants' own cases evince this principle. First, in *Ray*, the court found that appeal would "determine the appropriate law to apply at trial and for any remittitur of damages or eliminate the need for trial by facilitating settlement opportunities." *Ray v. United States*, No. CV 19-0705 KG/JFR, 2021 WL 4654323, at *1 (D.N.M. Oct. 7, 2021); Defs.' Reply at 7. The central issue before the court was "whether New Mexico law or Acoma tribal law constitutes the "law of the place" within the meaning of the [Federal Torts Claims Act]." *Ray*, 2021 WL 4654323, at *1. Answering that question would determine the applicable law as to the *entirety* of the case and could potentially "eliminate the need for trial." *Id.* at *2. In stark contrast, the need for trial will remain in this case regardless of how the NMMWA claim is resolved.

Second, in *Los Lobos*, the court denied defendants motion to dismiss the entirety of plaintiff's suit pursuant to New Mexico's Anti-SLAPP statute. *Los Lobos Renewable Power, LLC v. Americulture, Inc.*, No. 15-CV-0547-MV-LAM, 2016 WL 8261743, at *2 (D.N.M. Mar. 22, 2016); Defs.' Mot. for Interlocutory App. at 7 (citing *Los Lobos*). The case presented "an

17

important question of law about which the circuits are divided" (a factor notably absent here) and the applicability of the Anti-SLAPP statute was "dispositive." *Los Lobos*, 2016 WL 8261743, at *2. Again, resolving the Anti-SLAPP issue advanced litigation because it could terminate the entire suit. *See Boone v. Illinois Dep't of Corr.*, 71 F.4th 622, 625 (7th Cir. 2023); *Hart v. The Boeing Co.*, No. 09 CV-01066-REB-MEH, 2010 WL 2635449, at *2 (D. Colo. June 28, 2010) (finding "material advancement" factor met where interlocutory appeal "would terminate, *fully and finally*, [the] lawsuit" (emphasis added)).

Returning the present case, the Court finds that appeal would only further delay already protracted litigation. Plaintiff brings class actions under Texas, Colorado, New Mexico, and federal law. A decision in Defendants' favor on the NMMWA would not eliminate the need for trial, since the other claims are unaffected by the NMMWA claims, nor would appeal simplify the issues presented, since the jury would still need to determine whether Plaintiffs' vehicle expenses resulted in sub-minimum wages. For the same reason, discovery is identical regardless of the outcome of appeal. Defendants will be tasked with producing employment records, delivery data, and proof of reimbursement. Plaintiff will be tasked with producing cost-of-delivery data, paystubs, and evidence of vehicle expenses. As one district court facing parallel FLSA and state law claims reasoned, "[b]ecause the FLSA seeks relief on the same set of facts, the continued existence of the FLSA claim would not significantly diminish the number of facts to be proven at trial or reduce the number of persons who would be entitled to notice." *Trotter*, 168 F. Supp. 2d at 288. Interlocutory appeal was therefore "unlikely to result in any sufficient efficiencies in the trial process," even where the state wage law "permit[ted] double, treble, or punitive damages." *Id.* at 289. Ultimately, the difference between the NMMWA claims and the FLSA claims is one of pure arithmetic, subtracting costs from the New Mexico state minimum wage versus the federal

minimum wage.  *See* Defs.' Mot. for Interlocutory App. at 7 ("[A]n appeal could resolve the parties' differing opinions on what damages are available in the first place—necessarily impacting their valuation of this case.").  This litigation will "be conducted in substantially the same manner regardless of the court's decision," *XTO Energy, Inc.*, 189 F. Supp. 3d at 1195, and an appeal will in no way avoid "expensive and protracted proceedings," *Kennecott Corp.*, 14 F.3d at 1495.

Defendants' speculation about improved settlement discussions following appeal does not persuade the Court otherwise.  Defendants agree that the Court must weigh whether appeal would eliminate the need for trial, simplify trial, or make discovery easier and less costly.  Defs.' Reply at 6.  Presumably Defendants' hopes for fruitful settlement discussions is meant to support the first consideration, eliminating trial, but "[i]nterlocutory appeal is not a settlement-inducing device." *Guidotti v. Legal Helpers Debt Resol., L.L.C.*, No. CV 11-1219 (JBS/KMW), 2017 WL 89556, at *3 (D.N.J. Jan. 9, 2017).  Other courts have denied § 1292(b) certification where "a party's motion relies exclusively on the speculative prospect of facilitating settlement."  *Bezek v. First Nat'l Bank of Pa.*, 2023 WL 2571508, at *5 (D. Md. Mar. 20, 2023); *Cooper Indus., Inc. v. Agway, Inc.*, 987 F. Supp. 92, 101 (N.D.N.Y. 1997) ("[I]mpairment of settlement negotiations does not provide a basis for certification."); *Hunt v. Bloom Energy Corp.*, No. 19-CV-02935-HSG, 2022 WL 1122835, at *4 (N.D. Cal. Apr. 14, 2022) ("[T]he Court does not find [plaintiff's] unwillingness to settle before an appeal a relevant basis to justify an interlocutory appeal under § 1292(b).").

Even if improved settlement prospects warranted appeal, the connection between that outcome and the NMMWA issue is tenuous at best.  The NMMWA claim is one of many brought by Plaintiffs and its resolution does not impact the majority of Defendants' potential liability. *Trotter*, 168 F. Supp. 2d at 288–89.  Although Defendants highlight that the NMMWA authorizes treble damages where the FLSA does not to justify appeal, these concerns are premature.  Plaintiff

has not yet proven liability and may never be able to recover damages. *Silverthorne Seismic, L.L.C. v. Sterling Seismic Servs., Ltd.*, 125 F.4th 593, 601 (5th Cir. 2025) (finding interlocutory appeal would not materially advance litigation because "the parties may not even reach the damages issue because [plaintiff] has not yet proven liability"). Moreover, in the three years since this suit was initiated, decreasing Defendants' liability has not yielded more productive settlement discussions. The Court already dismissed a portion of Plaintiff's Colorado claims, Doc. 295, and, still, the parties have been unable to reach a settlement. If anything, appeal would hinder settlement discussions, as it would increase litigation costs and fees for both sides. In the meantime, discovery would proceed, unchanged, saving no time, resources, or money in litigating these claims.

The Court therefore finds that Defendants have failed to meet their burden under § 1292(b). Certification is denied. *Kennecott Corp.*, 14 F.3d at 1495 ("The requirement of district court certification is equally imperative, however, as a procedural screen to avoid a flood of fruitless petitions invoked contrary to the purpose of § 1292(b).").

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' request that the Court amend its Order to certify it for interlocutory appeal pursuant to § 1292(b), Doc. 300, is **DENIED**.

_____

**SARAH M. DAVENPORT**
**UNITED STATES DISTRICT JUDGE**