IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DEBORAH WEST, on behalf of herself
and those similarly situated,

    Plaintiff,

v.                                                    No. 1:22-cv-209-SMD-JMR

BAM! PIZZA MANAGEMENT, INC., et al.,

    Defendants.

## ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

**THIS MATTER** is before the Court on Defendants BAM! Pizza Management and Brian Bailey and Plaintiff Deborah Wests' cross-motions for partial summary judgment on the legal standard for vehicle expense reimbursement under the Fair Labor Standards Act. *See* Doc. 264 ("Defs.' Mot. for Partial SJ"); Doc. 265 ("Pl.'s Mot. for Partial SJ"). Each party filed a response and reply to the other's motion. *See* Doc. 267 ("Pl.'s Resp. to Defs.' Mot. for SJ"); Doc. 268 ("Defs.' Resp. to Pl.'s Mot. for SJ"); Doc. 274 ("Defs.' Reply"); Doc. 275 ("Pl.'s Reply").

### BACKGROUND

This case arises from Defendants' alleged failure to comply with state and federal minimum wage laws in the employment of its pizza delivery drivers who used their personal vehicles to conduct deliveries. Plaintiff's complaint asserts that the reimbursement rate Defendants paid its pizza delivery drivers was less than the actual cost of delivery and that, as a result of this deficiency, employees received sub-minimum wages in violation of the FLSA. *See* Doc. 208. The parties now seek a ruling on what the FLSA demands of employers in reimbursing expenses, i.e. whether they must track and reimburse employees "to the penny" or can instead rely on a "reasonable

approximation." The parties also dispute whether the FLSA's recordkeeping provision requires employers to document delivery-related expenses at all. *See* 29 U.S.C. § 211(c). Related to their disagreement over an employer's recordkeeping duties, the parties split on the Plaintiff's burden of proof.

The Court will clarify employers' obligations under § 211(c) and the burden-shifting framework often applied in FLSA cases where there are insufficient employer records to definitively prove a violation. It will not, however, delve into the parties' propositions of how discovery could be conducted if that is the case. Discovery has not yet begun and making any determinations at this stage would be premature. The Court also finds that whether Defendants must reimburse delivery drivers at the IRS rate is not at issue and therefore does not address that question on the merits. Defendants reject the proposition that "BAM was *required* to reimburse [pizza delivery drivers'] expenses at the IRS standard business mileage rate." Defs.' Mot. for Partial SJ at 2. However, as explained in Plaintiff's response, "Plaintiff is not arguing that [BAM must pay the IRS rate], and did not argue it when this question was originally briefed." Pl.'s Resp. to Defs.' Mot. for SJ at 3. The Court declines to address Defendants' further contentions on the matter, Defs.' Reply at 10–12.[1]

The Court now considers (1) whether an employer may reasonably approximate costs when reimbursing employees under the FLSA for delivery-related expenses and (2) whether an employer must record employees' delivery-related costs as part of their duties under § 211(c).

---

[1] It is worth noting that the IRS rate has been found to be presumptively sufficient for purposes of reimbursement and could be used to calculate damages if there is a gap in expense records. All the Court finds at this time is that Defendants are not legally mandated to use it. *Perrin v. Papa John's Int'l, Inc.*, 114 F. Supp. 3d 707, 721 (E.D. Mo. 2015) ("[T]he IRS standard business mileage rate *may* be a reasonable approximation of employee vehicle expenses. These authorities do not suggest that the IRS rate is the *only* reasonable approximation of such expenses.").

2

# DISCUSSION

I.     Defendants Must Calculate Employee's Actual Delivery-Related Expenses and Cannot Rely on a "Reasonable Approximation" to Establish Minimum Wage Compliance.

"In 1938, Congress passed, and President Franklin Roosevelt signed the Fair Labor Standards Act." *E.M.D. Sales, Inc. v. Carrera*, 604 U.S. 45, 45 (2025). Section 206 of that Act states that "[e]very employer shall pay to each of his employees" a minimum wage." 29 U.S.C. § 206(a). President Roosevelt described the minimum wage as one of those "rudimentary standards" for which the government has demanded "general and widespread observance." S. Rep. No. 884, at 3 (1937) (letter from President Franklin D. Roosevelt to Congress). Courts have upheld § 206's inaugural purpose—to "protect all covered workers from substandard wages and oppressive working hours"—for decades. *Encino v. Motorcars, LLC v. Navarro*, 579 U.S. 211, 214 (2016); *see also Williams v. Jacksonville Terminal Co.*, 315 U.S. 386, 390–91 (1942); *Walling v. Portland Terminal Co.*, 330 U.S. 148, 150 (1947) ("The Fair Labor Standards Act fixes the minimum wage that employers must pay all employees who work in activities covered by the Act."); *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981). The Department of Labor also understood that the minimum wage would be rendered meaningless if employers could shift costs to employees without consequence. To protect employees from this type of nefarious scheme, the Department of Labor enacted 29 C.F.R. § 531.35. That provision clarifies that an employee's wages "cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or 'free and clear.'" *Id.* Employers violate § 531.35 if they force employees to bear work-related costs, which primarily benefit the employer, and those costs drive an employee's net take-home pay below the legal minimum. Thus, if an employer requires an employee to purchase certain items (often referred to as "tools of the trade") as a condition of employment, the employer must reimburse the employee

3

up to the minimum wage. *Id.*

This Court previously held that the personal vehicles pizza delivery drivers use to complete deliveries on the Defendants' behalf qualify as tools of the trade. *See* Doc. 299 at 4. The parties now ask the Court to address a related question—whether the FLSA permits an employer to "reasonably approximate" an employee's delivery-related expenses for purposes of reimbursement. Numerous district courts have considered the same issue and found themselves vexed by how exacting an employer's calculation must be in establishing whether a minimum wage violation has occurred. *See e.g.*, *Hussein v. Jun-Yan, LLC*, 502 F. Supp. 2d 1336, 1372 (E.D. Wis. 2020); *Waters v. Pizza to You, LLC*, 538 F. Supp. 3d 785, 791 (S.D. Ohio 2021); *Guang Ming Lin v. Benihana Nat'l Corp.*, 755 F. Supp. 2d 504, 511 (S.D.N.Y. 2010); *Benton v. Deli Mgmt.*, 396 F. Supp. 3d 1261, 1273 (N.D. Ga. 2019). This disagreement is largely driven by practical concerns over how to measure delivery expenses when the employee utilizes a "mixed-use" vehicle, i.e. a vehicle that is used for both personal and employment-related purposes. While certain costs, such as gas, can be tied to the miles driven while completing deliveries, other expenses, such as depreciation, insurance payments, and maintenance costs, are difficult to cleanly attribute to the employer or the employee. The majority approach among district courts, and the one Defendants advocate for applying in this case, relaxes the § 531.35 standard and permits an employer to use a "reasonable approximation" of expenses. Defs.' Mot. for Partial SJ at 8.

The Sixth Circuit rejected this approach in *Parker v. Battle Creek Pizza*, 95 F.4th 1009 (6th Cir. 2024).[2] *See* Contrary to the defendants' position, the court found that the minimum wage is

---

[2] The Sixth Circuit is the only federal appellate court to consider the reimbursement of delivery-related expenses under the FLSA. Still, Defendants accuse the Sixth Circuit of "confus[ing] this issue." Defs.' Mot. for Partial SJ at 14 n.5. This Court disagrees. *Parker* offers persuasive, on-point guidance that far outweighs the unreported, out-of-district cases that Defendants offer in rebuttal. *Id.* (first citing *Blose v. Jarinc, Ltd.*, No. 1:18-CV-02184, 2020 WL 5513383, at *2 (D. Colo. Sept. 14, 2020); then citing *Kennedy v. Mountainside Pizza, Inc.*, No. 19-CV-01199, 2020 WL 5076756, at *4 (D. Colo. Aug. 26, 2020); and then citing *Rodriguez v. GC Pizza LLC*, No. 4:20-CV-3106, 2022 WL 4368353, at *5 (D. Neb. Sept. 21, 2022)).

4

non-negotiable. "[T]he Act is Occam's Razor: it says that an employee is entitled to the minimum wage specified therein—period." *Id.* at 1013. Relying on a reasonable approximation of expenses conflicts with this mandate. "[W]hen determining whether a minimum wage employee has been paid her minimum wages—a 'reasonable approximation' that amounts to an underpayment of an employee's cost of providing tools most certainly would result in a violation of the Act." *Id.* at 1015. The *Parker* court also rejected many of the arguments Defendants now raise. In particular, the Sixth Circuit was unpersuaded that a "daisy chain of regulations" overcomes the FLSA's mandate that each employee receives the minimum wage "to the penny." *Id.* at 1016.[3] Plaintiff asks the Court to follow *Parker*. Pl.'s Mot. for Partial SJ at 4.

Upon careful review of the record, the relevant law, and the FLSA's history, the Court finds that Defendants cannot rely on a "reasonable approximation" of delivery-related expenses. The Court walks through each of Defendants' alternative authorities, namely the FLSA's provisions and attendant regulations, to explain why they are unpersuasive.

A. <u>The FLSA's text and implementing regulations do not support the use of a "reasonable approximation" standard.</u>

  i. **Section 203(m) does not address the reimbursement of delivery-related expenses.**

Defendants begin their analysis with the FLSA's definition of facilities. *See* 29 U.S.C. § 203(m). Facilities encompass items such as board and lodging that an employer provides to a

---

[3] Defendants make the strained and erroneous argument that *Parker* did not prohibit employers from approximating vehicle expenses where they pay the bare minimum wage. Defs.' Resp. to Pl.'s Mot. for SJ at 12. Instead, Defendants read *Parker* as finding that "employers bear the risk of creating a potential minimum wage violation if their approximation is too low." *Id. Parker* held that the FLSA "entitles a minimum-wage employee to reimbursement of his actual costs incurred on his employer's behalf." *Parker*, 95 F.4th at 1018. While it is true that Defendants could use an approximation that overcompensates employees for their costs, that would require them to know what their employees' actual costs are. Defendants cannot escape the conclusion that tracking actual costs is a necessary condition for compliance in the minimum-wage context. *Id.* at 1016 ("§ 206(a)(1)(C) specifies—to the penny—the minimum wage that an employer must pay 'each' of its employees. An employer must therefore pay each employee *at least that amount*, not a 'reasonable approximation' thereof." (emphasis added)).

5

worker as part of their employment, but that primarily benefit the employee.  In calculating an employee's wage, an employer may include "the reasonable cost as determined by the administrator" of furnishing these facilities.  *See* 29 U.S.C. § 203(m).  Defendants seek to extend § 203(m)'s language to costs which primarily benefit the employer.  On Defendants' reading, § 203 implies that they may "make reasonable payments for complex expenses."  Defs.' Reply at 7.

Defendants' proposed importation of § 203(m) into minimum wage law contradicts the law's plain text and decades of precedent.  First, and most obviously, is the fact that Defendants have not "furnished" Plaintiffs with anything.  Indeed, that is part of the problem; Plaintiffs have been obliged to furnish their vehicles for the benefit of Defendants' business.  In that scenario, § 203(m) cannot be applied.  *See Williams v. Jacksonville Term. Co.*, 118 F.2d 324, 327 (5th Cir. 1941) (finding that items "which the employer keeps for use in his own business" cannot be included in the hourly rate).  If there were any doubt as to that result, § 203(m)'s implementing regulation quiets it.  *See* 29 C.F.R. § 531.5(d)(1).  That provision, § 531.5(d)(1), explicitly states that an employer may only use a "reasonable approximation" if the facility primarily benefits the employee.  "The cost of furnishing facilities found by the administrator to be *primarily for the benefit or convenience of the employer will not be recognized as reasonable* and may not therefore be included in computing wages."  *Id.* (emphasis added).  This regulation forbids the scheme Defendants attempt to enact, as it "prevents employers from exploiting § 203(m) to shift business expenses to employees."  *Ramos-Barrientos v. Bland*, 661 F.3d 587, 595–96 (11th Cir. 2011); *Soler v. G. & U., Inc.*, 833 F.2d 1104, 1109 (2d Cir. 1987) (holding that expenses primarily benefiting the employer "will not be recognized as reasonable and will not be an allowable inclusion in an employee's wage" under § 203(m)).

Second, even for costs that do fall within § 203(m)'s scope, the "reasonable cost" cannot

6

be "more than the actual cost to the employer of the board, lodging, or other facilities." 29 C.F.R. § 531.3(c). This bars employers from manipulating the reasonable cost calculation to receive a windfall to the detriment of their employees. For instance, if an employer relies on the fair value of providing a facility, the fair value must be equal to or lower than the amount the employer actually pays for the housing." *Balbed v. Eden Park Guest House, LLC*, 881 F.3d 285, 290 (4th Cir. 2018). This limitation undermines Defendants' assertion that an approximation is appropriate so long as it is "reasonable." For minimum wage employees, that assumption always creates a risk of underpayment. *Lopez v. Fun Eats & Drinks, LLC*, No. 3:18-cv-1091, 2021 WL 3502361, at *6 (N.D. Tex. July 16, 2021) ("[B]ecause there is no dispute that Defendant paid Plaintiffs a direct wage of $2.13—the minimum wage for tipped employees—any deduction, no matter how small, would lower Plaintiffs' direct wage below the minimum wage."). Accordingly, since § 203(m) prohibits employers from using a reasonable approximation to their profit in the facilities context, the Court will not permit them in the minimum wage context. Lastly, the fact that § 203(m) is "[t]he only statutory exception to the requirement that wages be paid free and clear," suggests that Congress never intended to extend reasonable approximations to costs that benefit the employer. *Brennan v. Veterans Cleaning Serv., Inc.*, 482 F.2d 1362, 1369 (5th Cir. 1973); *Shultz v. Hinjosa*, 432 F.2d 259, 267 (5th Cir. 1970) ("[T]he only exception to the requirement of the payment of wages at the minimum rate in dollars and cents is provided in Section 3(m) of the Act."); *Arriaga v. Fla. Pac. Farms*, 305 F.2d 1228, 1235 (11th Cir. 2002) (same).

The Court concludes that § 203(m) does not concern employers' reimbursement of expenses under 29 C.F.R. § 531.35 and that importing it into that provision would contravene the plain text of 29 C.F.R. § 531.5(d)(1).

7

### ii. The overtime provisions of the FLSA do not authorize Defendants to use a reasonable approximation of vehicle expenses.

Defendants next point to the FLSA's overtime provisions, which define an employee's "regular rate" of pay as "all renumeration for employment" paid to an employee. 29 U.S.C. § 207(e). "The regular rate at which an employee is paid for 'straight time'—or the first forty hours in a week—is integral to the issue of overtime payment under the FLSA. It is a "rate per hour" that "is determined by dividing [the] total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.109. The regular rate excludes "reasonable payments for traveling expenses, or other expenses, incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer." § 207(e)(2). In turn, § 207(h) excludes any payments made under § 207(e) from the computation of wages. 29 U.S.C. § 207(h). Defendants conclude that because "reasonable payments" cannot be credited toward the regular rate of pay, "reasonable payments for expenses are treated the same for both minimum wage and overtime purposes." Defs.' Mot. for Partial SJ at 5.

Again, Defendants misapprehend the FLSA's text. What § 207(e) and (h) articulate is that an employee's regular rate, for purposes of both overtime and the minimum wage, does not include reimbursements. "Calculation of the correct 'regular rate' is the linchpin of the FLSA overtime requirement. The term is significant because under 29 U.S.C. § 207(a)(1), an employee who works overtime is entitled to be paid at a rate not less than one and one-half times the *regular rate* at which he is employed." *O'Brien v. Town of Agawam*, 350 F.3d 279, 294 (1st Cir. 2003). The "key point" is whether the payment is "compensation for work." *Flores v. City of San Gabriel*, 824 F.3d 890, 899 (9th Cir. 2016). In separating compensation for work from other forms of renumeration, the FLSA prevents an employee's regular rate being inconsistent from one pay period to the next.

Employers are also unable to offset their liability under § 207 by pointing to some other benefit the employee enjoyed, e.g. a gift or reimbursement. *Id.*

But complying with § 207(e) does not prevent a minimum wage violation from occurring. The Sixth Circuit underscored that "one can do everything that § 207(e) and (h) prescribe— namely, exclude a reasonable-approximation reimbursement from the computation of an employee's regular rate of pay and from her wages alike—and still conclude that the reimbursement effects an unlawful kickback to the employer to the extent that it falls short of the costs that a minimum-wage employee actually incurs on her employer's behalf." *Parker*, 95 F.4th at 1016. Consider an employee whose hourly rate is significantly higher than the minimum wage, such as twenty-five dollars an hour. The employer reimburses that employee one-hundred dollars as a reasonable approximation of their travel expenses. That one hundred dollars will be excluded from their overtime rate, set at "not less than one and one-half times the rate established by agreement." § 207(a)(1). The employee could have a cause of action under the overtime provision if the employer paid them less than $37.50 per hour for overtime work. However, unless that $100 is a grossly inaccurate representation of their travel expenses (which would separately violate § 207(e) because it would not be reasonable), there would be no minimum wage violation.

Now imagine that the employee receives only $7.25 per hour. Their travel expenses amount to one hundred and five dollars. Despite the reasonably approximated reimbursement, they have not been paid their wages "free and clear" because they were required to "kick-back" a portion of their paycheck to fund the employer's business. The employer has now violated § 206 and 29 C.F.R. § 531.35. Accordingly, the Court finds no merit to the argument that § 207(e) and (h) can be used to reduce an employees' wages below the minimum. *Cf. Baker v. Barnard Constr. Co.*, 146 F.3d 1214, 1218 (10th Cir. 1998) (declining to "adopt Defendants' interpretation since it

9

would exaggerate the effect of section 207(e)(2) exemptions and would substantially undermine the purposes of the FLSA by creating loopholes susceptible to significant abuse")

> **iii.    Section 778.217 does not authorized Defendants to use a reasonable approximation of vehicle expenses.**

Defendants then argue that the Reimbursement Regulation, which allows employers to use the actual or a reasonable approximate of "traveling expenses" for an employee "who is traveling 'over the road' on his employer's business," suggests that Congress endorsed employers' using a reasonable approximation of delivery costs. Defs.' Mot. for Partial SJ at 8 (citing 29 C.F.R. § 778.217(b)(3)). Other courts have expressed doubt over the relevance of the overtime and reimbursement provisions to the minimum wage calculation. "It is unclear if Section 778.217 applies in this context because it addresses overtime calculations—not minimum wage—that are excluded as part of the employee's regular rate." *Lofton v. EYM Pizza of Ill.*, 725 F. Supp. 3d 857, 863 (N.D. Ill. 2024). Even if the Reimbursement Regulation has some relevance to minimum wage law, its terms do not aid the Defendants here. The Reimbursement Regulations differentiate "travel expenses" from "tools of the trade." § 778.217(b)(1), (b)(3). For the latter, employers have only one option—to reimburse employees for the "actual amount" expended by an employee. § 778.217(b)(1). *Parker* observed that § 778.217 "does not even apply [the reasonable-approximation rule] to *reimbursement for tools*." 95 F.4th at 1015; *see also Lofton*, 725 F. Supp. 3d at 863 ("Section 778.217's language addresses 'travelling over the road' and 'living expenses away from home,' which courts have interpreted differently in the food delivery driver context."). The Court has already found that delivery vehicles are properly categorized as "tools," not travel expenses. Defendants' theory would illogically extend "a rule that the Department chose not to apply—even in the overtime context—to the type of reimbursement at issue here." *Parker* at 1015. The Court declines to make that leap here.

### iv. Prior district court opinions are unpersuasive considering the FLSA's plain text and *Parker*.

Lastly, Defendants emphasize that the "vast majority of federal courts to have considered the issue" have held that "employers may reimburse employees based on a reasonable approximation of their expenses and are not limited to actual costs or the IRS Rate." Defs.' Mot. for SJ at 14. Defendants then cite three unreported district court opinions that preceded *Parker* to substantiate their point. Although Defendants are correct that most district courts previously endorsed the "reasonable approximation" approach, they were certainly not unanimous. *Compare Wass v. NPC Int'l, Inc.*, 688 F. Supp. 2d 1282, 1286 (D. Kan. 2010) (finding that employers may use a reasonable approximation of delivery related expenses, *with Waters*, 538 F. Supp. 3d at 800 (finding that employers must either track employees' "actual expenses" or pay the IRS reimbursement rate). And the courts that agreed with Defendants typically rested their decision on premises that the Court has now rejected. For instance, courts equated delivery expenses with travel expenses and, following from that presumption, assumed that § 778.217 allows employers to use a "reasonable approximation." *See, e.g., Wass*, 688 F. Supp. 2d at 1286; *Sullivan v. PJ United, Inc.*, 7:13-cv-01275-LSC, 2017 WL 10575860, (N.D. Ala. Oct. 16, 2017).

More importantly, however, is the Court's determination that *Parker* (the only on-point decision from an appellate court) echoes the sentiment that this Court has found itself ingeminating—that an employer's obligation to pay wages mandated by the FLSA is "absolute." *Parker*, 95 F.4th at 1016 (quoting *Caserta v. Home Lines Agency, Inc.*, 273 F.2d 943, 946 (2d Cir. 1959)). Defendants resist this conclusion on practical grounds. They urge that vehicle expenses are "inherently difficult, if not impossible, to determine—or even control." Defs.' Mot. for Partial SJ at 2. While the Court recognizes the complexity of measuring these costs, ease of accounting is not what the FLSA concerns itself with, guaranteeing a basic wage is. *Carrera*, 604 U.S. at 45.

11

And couching this dispute in terms of pragmatism obfuscates the issue at the heart of Plaintiff's suit: whether Defendants can siphon off a portion of their employees' wages to fund their business. The answer to that question is a resounding no. *See Williams*, 118 F.2d at 327 (holding that covering the cost of items an employer "keeps for his use in his own business . . . is to come not from the wages of the [employees], but from the income of the business"); *Shultz*, 432 F.2d at 261.

The Court is likewise unsympathetic to Defendants' concern that tracking vehicle expenses is inherently impossible because the "driver-employee, and not the employer, is in possession of any relevant records." Defs.' Mot. for Partial SJ at 14. There is nothing "inherent" about this information gap; it is the result of Defendants deliberate decision to outsource their costs. *Parker*, 95 F.4th at 1016 ("[T]he employers themselves created this situation."). Defendants are the ones who opted to rely on personal vehicles rather than a company-owned fleet. Defendants are the ones who, after making that choice, declined to track delivery lengths, collect gas receipts, or request records of vehicle upkeep. Indeed, it seems Defendants made a singular calculation—that shifting vehicle expenses to their workers is cheaper than maintaining a private fleet—and left the rest for their employees to figure out. Though obligating employees to use their personal vehicles for work is a fine business decision, it is not a decision that shields Defendants from their duty to ensure that each employee receives the minimum wage. That obligation is absolute, and no amount of creative statutory interpretation can make it otherwise.[4]

Of course, meticulously tracking delivery-related expenses is not Defendants' only option. They may determine it is more efficient to pay their employees more than the bare minimum wage,

---

[4] Defendants, like the defendants in *Parker*, point to a 2020 Opinion Letter from the Department of Labor to support their reasonable approximation argument. *See* Defs.' Mot. for SJ at 12–13. This Court agrees with the Sixth Circuit's finding that the 2020 letter "never grapples with the situation that plaintiffs allege to be present here: that the employer's approximation (reasonable or not) of a minimum wage employee's costs fall short of the actual costs she incurred on her employer's behalf." *Parker*, 95 F.4th at 1016. The 2020 letter is therefore not entitled to *Skidmore* deference, nor does it hold any authoritative weight.

default to the IRS reimbursement rate, increase their per-delivery reimbursement across the board, or switch to a company-owned fleet. Ultimately, how to comply with law is left to an employer's discretion, but *whether* to comply is not. The Court therefore holds that Defendants are required to pay their employees the minimum wage "in full" and cannot use a reasonable approximation of expenses which is lower than the actual costs. *Parker*, 95 F.4th at 1016.

    II.    Employers Must Keep Sufficient Records of Reimbursements to Demonstrate that Employees Were Properly Compensated.

The second issue addressed in the parties' motions is whether Defendants had a duty to keep records of delivery expenses. To prevail on an FLSA claim, the employee bears the burden of proving he performed work for which he was not properly compensated. *See Brown v. ScriptPro, LLC*, 700 F.3d 1222, 1230 (10th Cir. 2012). In tandem, covered employers must "make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him." *Perez v. ZL Rest. Corp.*, 81 F. Supp. 3d 1062, 1073 (D.N.M. 2014) (quoting 29 U.S.C. § 211(c)).[5] If employers do not observe this duty, proving an FLSA violation can be incredibly difficult. The Supreme Court thus created a burden-shifting framework to prevent employees from being penalized for their employer's failure to keep adequate records. *Moran v. Al Basit LLC*, 788 F.3d 201, 205 (6th Cir. 2015) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (2014)).

An employee carries his burden by proving that he has in fact performed work for which he was improperly compensated and producing sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. "Upon such a showing, the burden shifts the employer to produce evidence of the precise amount of work performed or to negate the

---

[5] Defendants accuse Plaintiff of relying on "some mysterious unwritten wage law" that "obligated BAM to maintain records of Plaintiff's actual vehicle expenses." Defs.' Resp. to Pl.'s Mot. for SJ at 8. The law is neither "mysterious" nor "unwritten"; it is 29 U.S.C. § 211.

13

reasonableness of the inference drawn from the employee's evidence. If the employer does not rebut the employee's evidence, then damages may be awarded even though the result approximates the work's value. An employer cannot complain that damages lack the precision that would have been possible if the employer had kept the records required by law." *Donovan v. Simmons Petroleum Corp.*, 752 F.2d 83, 85–86 (10th Cir. 1983) (citing *Anderson*, 328 U.S. at 687–88) (internal quotation marks and punctuation omitted); *Scalia v. Paragon Contractors Corp.*, 957 F.3d 1156, 1163 (10th Cir. 2020).

A. <u>Employers are legally obligated to maintain proof of sufficient reimbursement of delivery-related expenses under Section 211 of the FLSA.</u>

Defendants concur that *Anderson* adopted a burden-shifting framework but argue it is inapplicable because the plaintiff in *Anderson* sought recovery for unpaid overtime wages. "Unlike vehicle expenses, time records evidencing hours worked indisputably must be maintained by the employer." Defs.' Reply at 7. Defendants dismiss any alleged lack of records as a "red herring" because there "is no requirement to track employees' personal vehicle expenses." Defs.' Mot. for Partial SJ at 16.

The Court agrees with the premise that Defendants are not strictly required to preserve employee expense records. However, it rejects Defendants' reasoning as to why that is the case. Asking whether Defendants must maintain records of vehicle expenses confuses the analysis. Section 211 states that employers must keep records of "wages," including the total wages paid each period. 29 U.S.C. § 211(c); § 29 C.F.R. § 516.2. Section 531.35 makes clear that an employee's wage includes any amounts deducted for the benefit of the employer. Thus, like all other deductions, Defendants must maintain records of expenses to demonstrate that they paid employees the minimum wage. *Water*, 538 F. Supp. at 795 ("Because employee-incurred expenses affect 'total wages,' [§ 211] also requires employers to maintain records of delivery drivers' vehicle

14

expenses."); *Hatmaker v. PJ Ohio*, Case No. 3:17-c-v146, 2019 WL 5725043, at *7 (S.D. Ohio Nov. 5, 2019); *Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468, 476 (11th Cir. 1982). Here, Defendants opted to "reasonably approximate" expenses and pay the bare minimum wage. Their records are "inadequate" if they do not account for actual costs because Defendants are unable to prove that Plaintiffs received the wage they are entitled to. The only possible exception to this rule would be if Defendants opted to use the IRS rate, which some courts have held to be a presumptively legal reimbursement rate. Since Defendants concede that they did not reimburse delivery drivers at the IRS rate, they had a duty under § 211 to keep detailed records that would "justify another reimbursement rate." *Cornish v. Deli Mgmt., Inc.*, Civil Action No. WMN-16-672, 2016 WL 5934077, at *3 (D. Md. Oct. 12, 2016).

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' motion for partial summary judgment, Doc. 264, is **DENIED**. Plaintiff's motion for partial summary judgment, Doc. 265, is **GRANTED** as to the proposed legal standard for vehicle reimbursement expenses and **DENIED** as to discovery-related proposals. The Court will defer lifting the discovery stay until it rules on Plaintiff's newly filed motion to amend the complaint.

**IT IS SO ORDERED.**

_____
**SARAH M. DAVENPORT**
**UNITED STATES DISTRICT JUDGE**