**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

DEBORAH WEST,
on behalf of herself and
others similarly situated,
       Plaintiffs,

v.                                               No. 1:22-cv-00209-SMD-JMR

BAM! Pizza Management, Inc., et al.,

       Defendants.

**ORDER DENYING DEFENDANTS' MOTION FOR
<u>INTERLOCUTORY APPEAL</u>**

     **THIS MATTER** is before the Court on Defendants' motion for interlocutory appeal.  Doc. 317 ("Mot. for Interlocutory App.").  Plaintiffs responded (Doc. 318 ("Pls.' Resp.")) and Defendants replied (Doc. 319 ("Defs.' Reply")).  Having reviewed the parties' filings, the record, and the relevant law, the Court **DENIES** Defendants' motion for interlocutory appeal.

**BACKGROUND**

     On January 6, 2026, this Court denied Defendants' motion for summary judgment regarding the standard for vehicle expense reimbursement.  *See* Doc. 316 ("Order").  The Court found that under the Fair Labor Standards Act ("FLSA"), Defendants must reimburse their pizza delivery drivers' vehicle expenses "to the penny."  *Id.* at 13.  In doing so, the Court rejected Defendants' proposition that it can instead use a reasonable approximation of these expenses.  The Court relied on the Sixth Circuit's decision in *Parker v. Battle Creek Pizza*, 95 F.4th 1009, (6th Cir. 2004)—the only appellate decision addressing this issue—in reaching its conclusion.  The Court also found that Defendants must keep sufficient records to prove they paid their employees the minimum wage and that, if they failed to do so, it is appropriate to use the burden-shifting framework developed in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946).  *Id.* at 14.

Defendants challenge both findings and ask the Court to certify the following issues for appeal: (1) the proper standard for calculating delivery drivers' vehicle expenses; and (2) which party bears the burden of maintaining records of those expenses.  Mot. for Interlocutory App. at 2.

## LEGAL STANDARD

District courts have "first line discretion to allow interlocutory appeals."  *Swint v. Chambers Cnty.*, 514 U.S. 35, 47 (1995).  To warrant interlocutory appeal under § 1292(b), the moving party must meet all three of the following factors: (1) the issue must involve a controlling question of law; (2) as to which there is substantial ground for difference of opinion; and (3) answering that question would materially advance the ultimate termination of the litigation.  28 U.S.C. § 1292(b); *Anderson Living Tr. v. WPX Energy Prod., LLC*, 904 F.3d 1135, 1139 (10th Cir. 2018).

Although § 1292(b) provides a path to appellate review before the final disposition of a case, it is employed "sparingly."  *Camacho v. Puerto Rico Ports Auth.*, 369 F.3d 570, 573 (1st Cir. 2004).  Interlocutory appeals "tend to disrupt and delay the underlying proceedings," *Carpenter v. Boeing Co.*, 456 F.3d 1183, 1189 (10th Cir. 2006), and can have a "debilitating effect on judicial administration," *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 170 (1974).  These concerns are no less pressing in § 1292(b) appeals.  *See Koehler v. Bank of Bermuda, Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996); *Utah ex rel. Utah State Dep't of Health v. Kennecott Corp.*, 14 F.3d 1489, 1495 (10th Cir. 1994).  Section 1292(b) is "not intended to make denials of summary judgment routinely appealable."  *Ahrenholz v. Bd. of Trustees of Univ. of Ill.*, 219 F.3d 674, 676 (7th Cir. 2000).  Rather, courts permit § 1292(b) appeals in those "extraordinary cases" where "extended and expensive proceedings probably can be avoided by immediate final decision of controlling questions encountered early in the action."  *Id.* (quoting S. Rep. No. 2434, 85th Cong., 2d Sess. 1 (1958));

*see also Koehler*, 101 F.3d at 865 (explaining that § 1292(b) was intended as a "rare exception to the final judgment rule that generally prohibits piecemeal appeals").

The Court finds that interlocutory appeal is not appropriate in this case. Defendants have met their burden as to the first factor but have failed to demonstrate that a substantial ground for difference of opinion exists on either issue or that an appeal would materially advance the termination of this litigation. The Court denies Defendants' request for interlocutory appeal.

**DISCUSSION**

I.      Defendants Seek to Certify a Controlling Question of Law.

A "question of law" is one which involves a "question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine." *Ahrenholz*, 219 F.3d at 676. If the court must "delve beyond the surface of the record" and engage in factual analysis to resolve the appeal, it is not a "question of law." *Dorato v. Smith*, 163 F. Supp. 3d 837, 879 (D.N.M. 2015) (citing *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004)). For the question to be controlling, its answer must "materially affect the outcome of the case." *In re City of Memphis*, 293 F.3d 345, 351 (6th Cir. 2002). Here, the parties agree that the Court's order involved controlling questions of law and did not depend on factual considerations. The first factor is therefore met.

II.      Substantial Ground for Difference of Opinion

Defendants argue that there "is plainly a substantial ground for difference of opinion." Mot. for Interlocutory App. at 7. A substantial ground for difference of opinion exists if: (1) a trial court rules in a manner contrary to the rulings of all courts of appeals which have reached the issue; (2) the circuits are in dispute on the questions and the court of appeals has not spoken on the point; (3) complicated questions arise under foreign law (not relevant here); or (4) novel and difficult

questions of first impression are presented. *See Dorato*, 163 F. Supp. 3d at 880 (citing 2 Fed. Proc., L. Ed. § 3:217); *Couch v. Telescope, Inc.*, 611 F.3d 629 (9th Cir. 2010) (same).  The Court finds that Defendants have not met the second factor; the questions presented do not fall within any of the scenarios articulated in *Couch*, and Defendants have not presented persuasive authority to support their position, nor have they addressed the central findings underpinning the Court's order.

    A.  <u>Defendants have not shown a substantial ground for difference of opinion on the question of vehicle expense reimbursements.</u>

Defendants are aware that there is no circuit court split on the question presented here. Nevertheless, they aver that an intra-circuit division among district courts "plainly satisfies the standard."  Defs.' Reply at 5.  Defendants cite *Chamberlain v. Crown Asset Mgmt.*, 622 F. Supp. 3d 1068, 1072 (D. Utah 2022) and *Kammerer v. Univ. of Kansas*. No. 24-CV-2182, 2024 WL 5135969, at *3–4 (D. Kan. Dec. 17, 2024) to substantiate their position.  Neither of those cases deviated from *Couch*'s standard.  *Kammerer* correctly noted that § 1292(b) asks whether the district court's ruling "appears contrary to the rulings of all courts of appeals which have reached the issue [or] if the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point." *Kammerer*, 2024 WL 5135969, at *3.  Though the court acknowledged that conflicting opinions within the Tenth Circuit and the District of Kansas supported its finding of a substantial dispute, that discord did not *substitute* for a circuit split.  To the contrary, *Kammerer* involved a question on which the Sixth and Eleventh circuits had split from the Third, Fifth, and Eighth. *Id.* at *4.  *Chamberlain* is likewise inapposite.  There, the court was faced with a novel question which no circuit court had ever resolved (concerning how Utah law interacts with the Petition Clause).  622 F. Supp. 3d at 1072.  Judges within the district had begun splintering on its answer over the past year. *Id.*  The lack of guidance paired with the novelty of the issue warranted interlocutory appeal. *Id.* ("The court finds that this is a novel issue . . .").

The circumstances that arose in *Chamberlain* and *Kammerer* are absent here.  The question is not novel, there are no conflicting opinions within the District of New Mexico or between the circuit courts, and the Court followed appellate precedent to a tee.  *Cf. Pub. Int. Rsch. Grp. v. Hercules, Inc.*, 830 F. Supp. 1549, 1556 (D.N.J. 1993) (certifying question for interlocutory appeal where court was "the first one to squarely recognize that [it] . . . lack[ed] jurisdiction over violations not included in the plaintiff's notice letter").  The Court declines Defendants' invitation to "follow *Chamberlain* and *Kammerer* and recognize that an intra-district or intra-circuit split likewise satisfies § 1292(b)" and thus depart from the standard announced in *Couch* and adopted in this district.  Defs.' Reply at 5; *see Couch*, 611 F.3d at 629; *Dorato*, 163 F. Supp. at 880 (adopting *Couch*); *XTO Energy, Inc. v. ATD, LLC*, 189 F. Supp. 3d 1174, 1195 (D.N.M 2016) (same); *Diaz v. King*, Civ. No. 14-1086, 2016 WL 8925344, at *3 (D.N.M. Jan. 13, 2016) (same); *Thyme v. Verizon Wireless*, Civ. No. 16-66, 2017 WL 3397383, at *3 (D.N.M. Mar. 16, 2017) (same).

The Court next finds that the cases Defendants cite to dispute *Parker* do not create a substantial ground for difference of opinion.  The Court limits its consideration of Defendants' cases to those from within the Tenth Circuit since Defendants are most adamant about the importance of an intra-circuit split.  Mot. for Interlocutory App. at 6; Defs.' Reply at 5.  All of Defendants' cases, save *Wass v. NPC Int'l*, 688 F. Supp. 2d 1282 (D. Kan. 2010), are unreported, issued pre-*Parker*, and from outside this District.  More importantly, these cases do little to resolve the fallacies in Defendants' original argument.  Staring with *Smith v. Pizza Hut*, that case did not rule on the standard for vehicle reimbursement under the FLSA.  It merely affirmed that, to defeat a motion to dismiss, "an employee may claim that his wage rate was reduced below the minimum wage because the employer failed to make a reasonable approximation of his expenses in formulating its reimbursement policy."  *Smith v. Pizza Hut*, Civil Action No. 09-cv-01632, 2011

WL 2791331, at *4 (D. Colo. July 14, 2011). *Darrow*, *Blose*, and *Koral* intimated that employers may use a reasonable approximation without any accompanying analysis. *See Darrow v. WKRP Mgmt.*, Civil Action No. 09-cv-01613, 2011 WL 2174496, at *5 (D. Colo. June 3, 2011); *Blose v. Jarinc, Ltd.*, Civil Action No. 1:18-cv-02184, 2020 WL 5513383, at *2 (D. Colo. Sept. 14, 2020); *Koral v. Inflated Dough*, Civil Action No. 13-cv-02216, 2014 WL 4904400, at *3 (D. Colo. Sept. 29, 2014). And Defendants' remaining cases—*Kennedy* and *Wass*—rely on the same reasoning that this Court already dismissed as untenable; they conclude that personal vehicles used for deliveries are "tools of the trade" while ignoring that there is "a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the act." 29 C.F.R. § 531.35; *Kennedy v. Mountainside Pizza, Inc.*, No. 19-cv-01199, 2020 WL 5076756, at *2 (D. Colo. Sept. 29, 2014); *Wass*, 688 F. Supp. 2d at 1285–86 (citing 29 C.F.R. § 778.217); see also 29 C.F.R. § 778.217(b)(1) (stating that an employee's regular rate excludes reimbursement for "the *actual amount* expended by an employee in purchasing supplies, tools, materials, cell phone plans, or equipment on behalf of his employer" (emphasis added)). The Court discussed the inconsistency between the tools of the trade determination and the regulations historically applied in the underlying order. *See* Order at 11 ("[T]he courts that agreed with Defendants typically rested their decision on premises that the Court has now rejected."). Defendants do not take the opportunity to reconcile this discrepancy in their motion for interlocutory appeal. They do, however, cite several cases affirming that delivery vehicles are tools of the trade. Mot. for Interlocutory App. at 6 (citing, e.g., *Lofton v. EYM Pizza of Ill., LLC*, 725 F. Supp. 3d 857, 861–62 (N.D. Ill. 2024); *Benton v. Deli Mgmt, Inc.*, 396 F. Supp. 3d 1261, 1273 (N.D. Ga. 2019); *Hoffman v. Deja Vu Pizza LLC*, No. 1:22-CV-00006, 2024

6

WL 3582363, at *9 (D.N.D. June 6, 2024); *Bordeau v. V & J Emp. Servs., Inc.*, No. 117CV00188, 2018 WL 2041617, at *7 (N.D.N.Y. Mar. 27, 2018)).

Still, Defendants could fulfill the second factor if they offered, independent of precedent, a strong counterargument to the Court's reasoning. *Couch*, 611 F.3d at 634 (explaining that a substantial ground for difference of opinion exists when the movant articulates a strong legal argument "in opposition to the challenged ruling"); *Dorato*, 163 F. Supp. 3d at 880 ("It is the duty of the district judge faced with a motion for certification to analyze the strength of the arguments in opposition to the challenged ruling."). But Defendants do not attempt to fill the gaps *Kennedy* and *Wass* left. Defendants instead echo the arguments made in their motion for summary judgment without addressing the reasons they failed in the first instance. Defendants again equate reimbursement for delivery expenses with reimbursement for travel expenses; they ignore the tools of the trade provision. Mot. for Interlocutory App. at 4. Defendants recapitulate that it is impractical for employers to maintain records of vehicle expenses; they brush past the Court's finding that practicality is (1) not the FLSA's concern and (2) a problem of their own creation. Dep't of Labor, Field Operations Handbook § 30c15(b) (2000) ("The IRS standard business mileage rate may be used in lieu of *actual costs* for FLSA purposes." (emphasis added)). If there is a persuasive argument that vehicles are not tools of the trade, or that the travel expenses provision should apply even if they are, Defendants do not make it. *Cf. Parker*, 95 F.4th at 1018 ("In this case, we have neither an ambiguity nor even an interpretation to which we could possibly defer.").

The Court reiterates that Defendants must demonstrate that extraordinary circumstances exist such that interlocutory appeal is warranted. *Kennecott Corp*, 14 F.3d at 1495. The Court concluded that *Parker* announced what the FLSA's text makes obvious—an employer must pay an

employee for the actual amount expended on tools of the trade.  The Order carefully considered each statutory and regulatory provision Defendants relied on.  Now, in asking for the exceptional remedy of interlocutory appeal, Defendants shirk their duty to engage with the ratiocinations of their position and present a strong alternative to the Court's conclusions.  The conclusory statement—that there is "plainly a substantial ground for difference of opinion"—and a string cite of cases with minimal precedential weight does not suffice.  Mot. for Interlocutory App. at 7. Defendants have not shown a substantial ground for difference of opinion on the question of vehicle reimbursement expenses.  *Couch*, 611 F.3d at 633 ("[T]he party pursuing the interlocutory appeal bears the burden of so demonstrating."); *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1264 (11th Cir. 2004).

      B.  <u>Defendants have not shown a substantial ground for difference of opinion as to the record-keeping requirements of the FLSA.</u>

Defendants' motion offers scant explanation as to why there is a substantial ground for difference of opinion regarding employers' recordkeeping duties under 29 U.S.C. § 211. Defendants state that the Court "expanded *Parker*'s recordkeeping ruling beyond *Parker*'s scope." Mot. for Interlocutory App. at 5.  That claim is erroneous on two fronts: (1) *Parker* does not include a recordkeeping holding and (2) the Court did not cite *Parker* in its section on recordkeeping.  *See* Order at 13–15.  *Parker* limited its ruling to the vehicle reimbursement standard, does not discuss § 211, and contains only dicta on how an employer might comply with the FLSA.  At most, *Parker* remarked that the court "[did] not fault the defendants for any failure of recordkeeping."  95 F.4th at 1019.  This Court has likewise not found Defendants liable for any failure of recordkeeping. The Order affirmed Defendants' undisputed duty to pay the minimum wage and concluded that, to fulfill this obligation, "Defendants must maintain records of expenses to demonstrate that they paid employees the minimum wage."  Order at 14.

This principle abides even under the reasonable approximation standard. An employer subject to the FLSA must "make, keep, and preserve" records of "[employees] and of the wages, hours, and other conditions and practices of employment." *Sec'y United States Dep't of Lab. v. Nursing Home Care Mgmt. Inc.*, 128 F.4th 146, 157 (3d Cir. 2025) (citing 29 U.S.C. § 211(c)); *Micone v. Levering Reg'l Health Care Ctr.*, 132 F.4th 1074, 1081 (8th Cir. 2025) ("The FLSA requires employers to maintain accurate records, and this obligation cannot be delegated to employees." (emphasis added)). For this reason, the expenses an employee incurs while performing deliveries for his employer must be accounted for. Otherwise, an employee receiving the minimum wage becomes a matter of sheer luck. *Zellagui v. MCD Pizza, Inc.*, 59 F. Supp. 3d 712, 716 (E.D. Pa. 2014) (same); *Waters v. Pizza to You, LLC*, 538 F. Supp. 3d 785, 793 (S.D. Ohio 2021) ("The Fair Labor Standards Act's remedial goals are defeated if employees have no way of knowing whether they are being paid properly."); *Lofton*, 725 F. Supp. 3d at 865 ("Here, Defendants made a *choice* to 'reasonably approximate,' and their records are 'inadequate' because they do not account for actual costs."); Dep't of Labor, Field Operations Handbook § 30c15(b) (2000) (explaining that an employer may use the IRS standard business mileage rate "in lieu of actual costs and associated recordkeeping").

Nevertheless, Defendants urge, as they did in their initial motion for summary judgment, that it is the employees who possess vehicle records, not employers. Defendants cite a handful of out of district cases to argue that vehicle expense records do not fall within § 211's scope.[1]

---

[1] Defendants put forth *Gifford v. Dr Pizza, Inc.*, No. 2:22-CV-00707, 2025 WL 2661488, at *4 (D. Utah Sept. 17, 2025) as "expressly reject[ing] the argument the employer was required to maintain records of drivers' personal vehicle expenses." Mot. for Interlocutory App. at 7–8. *Gifford*'s text does not sustain this conclusion. In *Gifford*, the court granted summary judgment against the plaintiffs because they could not, after the completion of discovery, produce "even a reasonably approximate amount of their vehicle expenses to demonstrate that their wages fell below the minimum wage requirement." 2025 WL 2661488, at *4. The court noted that this inadequacy was fatal to plaintiffs' claim since "it is Plaintiffs who would know how much money they expended." *Id.* at *5. The *Gifford* defendants alleged failure to maintain accurate vehicle records did not excuse plaintiffs from providing "some approximation or evidence of mileage and vehicle costs." *Id.* *Gifford* did not discuss employer liability under § 211(c). It simply

9

Defendants do not address *Anderson*, which provides the seminal framework for burden-shifting under the FLSA, the text of § 211, offer an alternative framework, or grapple with any of the findings made in the Court's order. Most noticeable is Defendants' omission as to how, without expense records, they can guarantee their employees a minimum wage or even make an approximation. *Helix Energy Sols. Grp., Inc. v. Hewitt*, 598 U.S. 39, 44 (2023) (stating that the FLSA "guarantee[s] a minimum wage"). Fully realized, Defendants' proposal is as follows: (1) an employer selects a random reimbursement rate[2]; (2) employees carefully record every one of their vehicle expenses in case they need to prove liability; (3) the employer never requests those records nor maintains its own log; (4) employers assume without knowing that employees are receiving the minimum wage; and (5) whether that is true rests peculiarly in their employees' ken. The Court does not find an arrangement where only the employees know if they are receiving the minimum wage to be a compelling or sound interpretation of the FLSA. *See* Order at 14; *Barrentine v. Arkansas-Best Freight Sys.*, 450 U.S. 728, 739 (1981) ("[T]he FLSA was designed to give specific minimum protections to individual workers and to ensure that each employee covered by the Act would receive '[a] fair day's pay for a fair day's work' and would be protected from the evil of 'overwork' as well as 'underpay.'"). Defendants have not established a substantial ground for a difference of opinion on the recordkeeping question.

---

adhered to *Anderson*'s requirement that FLSA plaintiffs mount a prima facie case of a violation before the burden shifts to the employer to rebut that showing. *See Anderson*¸ 328 U.S. at 687–88. Defendants do not explain how *Gifford* counsels against, much less defeats, the Supreme Court's holding in *Anderson*.

[2] The Court understands that Defendants resist this characterization and maintain that their rate is a "reasonable approximation." Defs.' Reply at 2. However, the Court finds that assertion to be irreconcilable with Defendants' eschewal of a record-keeping obligation. A reimbursement rate decided sans data is not an approximation, it is a guess. *Compare Approximation*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("A number, amount, weight, or quantity that is not exact but is nearly correct."); *Approximation*, OXFORD ENGLISH DICTIONARY ("A coming or getting near to identity in quantity, quality, or degree; an approach to a correct estimate or conception of anything concrete. The result of such a process."), *with Guess,* OXFORD ENGLISH DICTIONARY ("To form an opinion or hypothesis respecting (some unknown state of facts), either at random or from indications admittedly uncertain; to conjecture.").

III.    Interlocutory Appeal Would Not Materially Advance the Termination of This Litigation.

Whatever debates could be had over whether Defendants meet the second factor, they conclusively fail on the third.  To secure a § 1292(b) appeal, the movant must establish that interlocutory appeal would materially advance the termination of this litigation.  This factor is met if the "court's decision on the interlocutory appeal could 'abbreviate [the district court proceedings] significantly,'" *Silverthorne Seismic, L.L.C. v. Sterling Seismic Servs.*, 125 F.4th 593, 601 (5th Cir. 2025), meaning it could eliminate the need for trial, eliminate complex issues so as to simplify trial, or eliminate issues to make discovery easier and less costly.  *XTO Energy*, 189 F. Supp. 3d at 1195.

The first two scenarios are irrelevant here.  Appeal will not eliminate trial since, even if a reasonable approximation standard is applied, Plaintiffs' claims remain viable.[3]  *Cf. Reese v. BP Exploration Inc.*, 643 F.3d 681 (9th Cir. 2011) (affirming that interlocutory appeal would materially advance litigation where it could remove a defendant and all of plaintiff's control claims from the case).  Nor will appeal simplify the issues presented at trial.  Either way the central questions focus on how to calculate vehicle expenses and whether Defendants adequately covered them.  If anything, a reasonable approximation standard may be more confusing for a jury than an actual cost standard since it requires the jury to consider what is "reasonable."

Defendants thus cast their hopes on the final option—that appeal could significantly reduce the scope of discovery.  Defendants posit that "[i]f the Tenth Circuit reverses or modifies either holding, the scope, cost and necessity of further proceedings would be fundamentally altered, if

---

[3] Defendants submit that interlocutory appeal could eliminate proceedings "altogether."  They do not expound upon this statement, and the Court cannot see any reason Plaintiffs would not try their claims under a reasonable approximation standard, as numerous other plaintiffs have done.  *See, e.g.*, *Zellagui*, 59 F. Supp. 3d at 716; *Waters*, 538 F. Supp. 3d at 793; *Lofton*, 725 F. Supp. 3d at 865.

11

not eliminated altogether." Mot. for Interlocutory App. at 10. In their reply, Defendants cite the motion for interlocutory appeal Plaintiffs' current counsel filed in *Bradford v. Team Pizza Inc.*, 568 F. Supp. 3d 877 (S.D. Ohio 2021), one of the underlying *Parker* cases. The *Bradford* plaintiffs asked the Sixth Circuit to resolve the parties' dispute over the vehicle reimbursement standard via interlocutory appeal; defendants advocated for a reasonable approximation, whereas plaintiffs advocated for the IRS rate. The *Bradford* plaintiff's motion highlighted that "if Plaintiff's views are adopted on appeal, discovery would be focused narrowly on Defendants' wage records . . . if Plaintiff is not permitted to appeal this decision, discovery will balloon to potentially encompass burdensome opt-in discovery, third-party discovery, and experts and expert discovery." Defs.' Reply at 7–8.

Defendants argue that this quote is "instructive" because "it recognized that the governing reimbursement standard fundamentally changes the scope and cost of litigation." *Id.* at 8. Defendants venture that "the fact that the plaintiffs in *Bradford* advanced an IRS-rate default theory does not alter the central point: the reimbursement standard is a threshold, potentially dispositive[4] legal issue that defines the structure of the case." *Id.* at 10. But the IRS-rate does alter the central point. The difference in discovery is quite significant when the IRS reimbursement rate is used. The *Bradford* plaintiffs' theory was that if they could prove Defendants had not tracked actual expenses, they were entitled to the IRS rate. Thus, if the Sixth Circuit adopted that standard, plaintiffs only needed to show that the employer had kept inadequate records. If they did, damages would be a simple matter of taking the difference between the employer's rate and the IRS's.

That is not the choice presented here. The reasonable approximation and the actual cost standard both demand that Plaintiffs provide evidence of employees' costs to demonstrate that the

---

[4] Again, Defendants do not explain why a reasonable approximation standard would terminate this litigation.

reimbursement rate was insufficient.  Building this prima facie case will necessitate discovery into Defendants' wage records, data on miles driven and deliveries completed, Plaintiffs' maintenance expenses, gas prices and so forth.  Importantly, this data is essential for resolving Plaintiffs' state unjust enrichment claims and state minimum wage claims regardless of the FLSA claims.  *See, e.g.,* Colo. Dep't of Labor & Employment, Interpretive Notice & Informal Op. #16 at 4 (July 15, 2025) (noting that employers must reimburse employees for the added cost from work use "such as wear-and-tear, damage, or maintenance from using a personal vehicle for work deliveries").

Though Defendants fear the "extraordinary burden" of "extensive discovery . . . retaining experts, engaging in motion practice, and preparing for and attending trial, only for any resulting judgment to be appealed after the fact," that burden manifests either way.  Mot. for Interlocutory App. at 3.  Discovery will proceed, in broad strokes, as such: Class members will fill out written discovery requests, named Plaintiffs will likely be deposed, Plaintiffs will seek various records from Defendants, and Defendants will seek various records from Defendants.  After this information is collected, the parties will calculate drivers' costs.  The parties may disagree over which expenses should be included in a driver's costs, e.g., whether a gifted car is excluded from an employee's costs.  The calculations will likely approximate Plaintiffs' true costs, even under an actual cost standard, because it seems that neither party tracked actual expenses.  And, importantly, the parties are expected to reach the same number under either standard.  If Defendants can use a reasonable approximation of expenses, Plaintiffs' incentive is still to collect as much information as possible to prove that the reimbursement rate was insufficient.  Defendants' goal is to disprove this theory by excluding costs and showing that their reimbursement rate covered employees' expenses.  To that end, the parties may hire experts to opine on how vehicle expenses are calculated.  *See, e.g.*, *Lofton*, 725 F. Supp. 3d at 864 (finding that vigorous dispute over expert's

13

methodology of evaluating vehicle reimbursement expenses constituted a material factual dispute and precluded summary judgment).   Of course, if discovery reveals that Defendants' reimbursement rate covered these expenses, they may prevail on summary judgment.

In summary, the present case sits on parallel tracks whether a reasonable approximation or actual expense standard is used. *In re City of Memphis*, 293 F.3d at 351 ("When litigation will be conducted in substantially the same manner regardless of [the court's] decision, the appeal cannot be said to materially advance the ultimate termination of the litigation.").   Defendants have failed to establish that this case is one "in which extended and expensive proceedings probably can be avoided by immediate final decision of controlling questions encountered early in the action." *Kennecott Corp.*, 14 F.3d at 1495.   Appeal will only serve to delay proceedings and increase the risk that evidence will be lost (a particularly acute risk in this case since it has been going on for over four years).   *Lewicki v. Emerson*, 103 F.4th 472, 474 (7th Cir. 2024); *Shannon v. Gen. Elec. Co.*, 186 F.3d 186, 195 (2d Cir. 1999) ("[D]elay by one party increases the likelihood that evidence in support of the other party's position will be lost and that discovery and trial will be made more difficult.").

**CONCLUSION**

**IT IS THEREFORE ORDERED** that Defendants' motion for interlocutory appeal (Doc. 317) is **DENIED**.

_____

**SARAH M. DAVENPORT**
**UNITED STATES DISTRICT JUDGE**

14
